1   Stanley E. Goldich (CA Bar No. 92659)
    PACHULSKI STANG ZIEHL & JONES LLP
2   10100 Santa Monica Blvd., 11th Floor
    Los Angeles, California  90067-4100
3   Telephone: 310/277-6910
    Facsimile:  310/201-0760
4   Email:  sgoldich@pszjlaw.com

5   Attorneys for Larry and Joy Redman,
    Alleged Debtors

6

7

8               **UNITED STATES BANKRUPTCY COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10                  **LOS ANGELES DIVISION**

11  In re:                              Case No.: 2:08-bk-21925-ER

12  Redman, Lawrence Eugene and Redman, Joy Ann,    Chapter 11

13          Alleged Debtors            **OPPOSITION OF LARRY AND JOY
                                        REDMAN TO FB HOLDINGS, LLC'S
14                                      MOTION TO DISMISS
                                        INVOLUNTARY CASE PURSUANT
15                                      TO §§ 303 AND 305**

16                                      Date:     June 24, 2009
                                        Time:     11:00 a.m.
17                                      Place:    Courtroom 1568
                                                  255 East Temple Street
18                                                Los Angeles, CA  90012
                                        Judge:    Honorable Ernest M. Robles
19

20                                      **[Supporting Declarations of Stanley E.
                                        Goldich and Larry Redman filed
21                                      concurrently herewith]**

22

23  **TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE,**

24  **THE OFFICE OF THE UNITED STATES TRUSTEE, ALL ATTORNEYS OF RECORD,**

25  **AND ALL PARTIES REQUESTING SPECIAL NOTICE:**

26  ///

27  ///

28  ///

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ........................................................................................1

II. FACTUAL BACKGROUND ........................................................................................4

III. ARGUMENT ..............................................................................................................10

A.    FB Holdings Lacks Standing To Seek Dismissal of the Involuntary Case Under
      Section 303(j) For Want of Prosecution ................................................................10

B.    There Has Been No "Want of Prosecution" ...........................................................10

C.    The Involuntary Case Was Not Filed in Bad Faith................................................11

D.    Dismissal of the Involuntary Case Pursuant to Section 305(a) is Not in the Best Interests
      of Creditors ............................................................................................................13

IV.    CONCLUSION ........................................................................................................14

TABLE OF AUTHORITIES

**Cases**

Federal Trade Comm'n v. American Inst. For Research & Development
    219 B.R. 639 (D. Mass. 1998) ................................................................. 10

In re Jr. Food Mart of Arkansas, Inc., 234 B.R. 420 (Bankr. E.D Va. 1999) ............................ 10

In re Mi La Sui, et al.
    380 B.R. 546 (Bankr. C.D. Ca. 2007)................................................. 11, 13

In re Molen Drilling Co., Inc.
    68 B.R. 840 (Bankr. D. Mont. 1987) ........................................... 11

In re Taylor & Assoc., L.P.
    191 B.R. 374, 380 (Bankr. E.D. Tenn. 1996) ................................ 10

In re Teletronics Servs.
    1980 Bankr. LEXIS 5207 *1, 89 (Bankr. E.D. N.Y. Apr. 30 1980)................ 11

Wechsler v. Macke Int'l Trade, Inc., (In re Macke Int'l Trade Inc.)
    370 B.R. 236 (9th Cir. BAP 2007)............................................. 13

Lawrence Eugene Redman ("Larry Redman", "Mr. Redman" or "Redman") and Joy Redman (collectively, the "Redmans"), the alleged debtors in the above referenced Involuntary Bankruptcy Case (the "Involuntary Case"), by and through their undersigned counsel, hereby file this Opposition (the "Opposition") to FB Holdings, LLC's ("FB Holdings") Motion to Dismiss Involuntary Case Pursuant to §§ 303 and 305 (the "Motion to Dismiss" or "Motion").  In support of this Opposition, the Redmans state as follows:

## I.

## PRELIMINARY STATEMENT

FB Holding's Motion to Dismiss is wholly without merit.  There are and continue to be valid and legitimate purposes for the herein Involuntary Case which was not filed in bad faith.  The background circumstances and reasons for the Involuntary Case were also fully disclosed to this Court and parties-in-interest nearly ten months ago in a "Stipulation to Extend Time to Answer and Stay Adjudication of the Involuntary Petition" (the "Stipulation") by and between the Redmans and the four Petitioners filed on August 22, 2008, shortly after the Involuntary Petition was filed.  As stated in the Stipulation, the precipitating reason for the Involuntary Case was an April 29 attachment of PFF Bank & Trust against Mr. Redman and a lien recorded on Mr. Redman's Long Beach residence on May 6, 2008.  If the Involuntary Case had not been filed, pending workout negotiations between Mr. Redman and numerous lenders with guarantee claims against the Redmans totaling well in excess of $100 million would have been substantially undermined and PFF would have obtained a disproportionate advantage over other creditors of the Redmans.

The allegation in the Motion of some improper collusion is patently absurd.  Compass FB Corp, which acted as two of the four Petitioners was the servicing agent for two loans involving loans close to $20 million and alleged deficiency claims over $16 million as of July 31, 2008 for guarantees of Mr. Redman and his business partner Richard Ashby.  Compass had filed two separate state court actions in August and September 2007 against Mr. Redman and Richard Ashby for Breach of Guaranty and was the only lender party other than PFF and IndyMac Bank which had commenced state court actions against Mr. Redman relating to guarantee claims.  During ongoing settlement discussions with Compass initiated by the Redmans in June 2008 in conjunction with

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

negotiations with other lenders who had not yet filed suit, counsel for Compass communicated concerns with the PFF attachment and getting it resolved before the 90 day preference period passed. A third Petitioning Creditor, Beaumont Partners, the representative of Integrated Financial Associates, Inc. ("IFA"), asserted a deficiency claim against Mr. Redman of approximately $9.7 million with respect to a guarantee of an approximately $11.7 million loan as of July 2, 2008 secured by real property foreclosed on by IFA on July 2, 2008 with a credit bid of $2 million.  As disclosed in the Stipulation, Mr. Redman settled IFA's approximately $9.7 million claim prior to the Involuntary Case, however payment of the settlement amount was not yet due and was also subject to certain reinstatement rights.

The total estimated deficiency claim amounts of Compass and IFA are approximately five times greater that the alleged guarantee claims of FB Holdings.  Other lenders including IndyMac Ventures (the successor to IndyMac Bank) and IMH, which have loan guarantee claims totaling an estimated $55 million as of February 28, 2009 -- dwarfing the claims of FB Holdings -- have also supported the status quo in the Involuntary Case to provide an opportunity for Mr. Redman to continue settlement negotiations.

This Involuntary Case was not filed or used as a litigation tactic against lender parties or to avoid disclosure of information to creditors and there has been no failure to comply with orders of the court.  Mr. Redman has not prevented lenders from foreclosing on their real property collateral and has proactively pursued resolution of guarantee claims against him, both before and after the Involuntary Case.  Mr. Redman also provided detailed updated personal financial information to lenders under confidentiality agreements, including to FB Holdings and its predecessor First Bank.

The Involuntary Filing was a last resort to facilitate ongoing settlement negotiations and not a negotiating or delay tactic directed at FB Holdings or other creditors to gain an advantage.  Mr. Redman repeatedly attempted to settle with PFF or obtain PFF's agreement to a tolling of its attachment to avoid the necessity for a bankruptcy filing and additional litigation, cost and delay in pending workout negotiations with multiple parties.  It was only due to Mr. Redman's inability to reach a settlement with PFF or obtain PFF's agreement to a tolling of its attachment that the Involuntary Case was filed.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Despite substantial hurdles summarized in the Stipulation and Status Reports filed with this Court -- including FDIC takeovers of banks, sales of banks and loans to new entities during the course of negotiations and District Court litigation of Compass and its putative successor Silar Advisors with direct lenders -- the Redmans have in fact succeeded in making substantial progress to resolve the lender guarantee claims since the Involuntary Case was commenced.  The Redmans have consummated settlements with four lender parties in addition to IFA, subject to payment of settlement amounts due under two (2) of the settlements and reinstatement rights if settlement payments made are avoided.  The settlements include a recent agreement with U.S. Bank, the successor to PFF, which was fully executed on June 2, 2009 with payment due the earlier of 6 months or the time of the sale of the Redmans' ranch, subject to a modified timeframe and U.S. Bank's agreement to support a chapter 11 plan which provides for payment of the settlement amount in the event an order for relief is entered in the Involuntary Case prior to the payment date  The PFF attachment will not be resolved until payment of the settlement amount to U.S. Bank and in the event the Involuntary Case is dismissed and the settlement payment has not been made U.S. Bank required a right to void the settlement.

The Redmans also just reached a sixth settlement with IMH, their largest creditor, involving a loan balance close to $40 million and an estimated deficiency claim presently close to $30 million. And the Redmans also had recent settlement meetings with IndyMac Ventures and Silar.  These negotiations are ongoing and the Redmans have had further preliminary discussions with Bank Midwest.  All of the lenders representatives are sophisticated parties represented by sophisticated counsel and none other than FB Holdings have complained of being disadvantaged by the Involuntary Case or alleged that dismissal of the Involuntary Case is in the best interest of creditors. To the contrary, most of the primary creditors have affirmatively supported the Redmans' ongoing efforts to reach consensual resolutions outside of bankruptcy.

The necessity for the Involuntary Case due to the PFF attachment remains.  However, while the Redmans still prefer to avoid the necessity of a chapter 11 proceeding, the Redmans also desire to expeditiously and globally resolve all of the lender guarantee claims.  In light of the substantial progress in workout negotiations, the Redmans have determined that if settlements are not reached

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

with remaining lenders within a reasonable period of time no longer than several months they will

consent to an order for relief and seek to implement settlements and address remaining lender

guarantee claims in a chapter 11 plan.  Ironically, it is FB Holdings which never even responded to a

settlement proposal of the Redmans four months ago and whose counsel has not responded to emails

or returned numerous phone calls which has failed to negotiate in good faith.

## II.

## FACTUAL BACKGROUND

1.    For over the past 30 years Mr. Redman and his business partner, Richard Ashby

("Ashby" or "Mr. Ashby") have operated and been principals of home building real estate entities,

including, *inter alia*, Fiesta Development, Inc. ("Fiesta"), R& R Land Investors, LLC, Ten Ninety,

Ltd., and Fiesta Terra Vista Development, LLC, and Fiesta Terra Vista Development II, LLC

(collectively, with Ashby Financial Company, Inc. the "Borrower Entities").  Mr Ashby is a

principal of certain other home building real estate entities, including Ashby Financial Company,

Inc. ("AFC") which Mr. Redman does not own or operate.  The development activities and projects

of the Borrower Entities are located in California in Orange, San Bernardino and Riverside Counties.

2.    Mr. Redman and Mr. Ashby, and in some cases the wives of Mr. Redman and

Mr. Ashby or their living trusts, guaranteed a number of the loans of the Borrower Entities (the

"Guaranteed Loans").[1].

3.    As with homebuilders throughout the United States the real estate assets of the

homebuilding entities of Mr. Redman and Mr. Ashby began to precipitously decline in 2007.

4.    On August 20, 2007 Compass FP Corp. ("Compass") filed a Complaint for Breach of

Guaranty against Ashby and Redman in the Superior Court, County of Orange, Case

No. 07CC09105 involving an alleged outstanding indebtedness of $8,882,819.00 as of June 1, 2007.

5.    On September 12, 2007, Compass filed a Complaint for Breach of Guarantee Re:

Fiesta Development Loan against Ashby and Redman in the Superior Court of California, County of

Orange, Case No. 07CC09823 involving an alleged outstanding indebtedness of $7,272,663.72 as of

---

[1]   The Guaranteed Loans and the estimated deficiency amounts of the Guaranteed Loans as of December 31, 2008 totaling in excess of $128 million are set forth on Exhibit 1 to the Declaration of Daniel Limon filed in the herein Involuntary Case on May 18, 2009.

August 1, 2007.

6.      Beginning in early 2008 it was becoming increasingly apparent to Mr. Redman that the real estate assets securing the loans of the Borrower Entities were worth far less than the loan amounts due and that Mr. Redman's guarantee exposure far exceeded his ability to pay amounts allegedly owed.

7.      On January 11, 2008, PFF Bank & Trust ("PFF") filed a state court action in the City of Riverside, titled <u>PFF Bank & Trust v. Fiesta Development, Inc., et al.</u>, Case No. RIC489557. (the "PFF State Court Action") relating to a $2 million line of credit of PFF to Fiesta guaranteed by Ashby and Redman.  On April 29 the state court granted PFF writs of attachment and on May 6 PFF recorded a lien in the County of Los Angeles against the Redmans' Long Beach residence.

8.      On April 1, 2008, IndyMac Bank F.S.B. ("IndyMac Bank") filed a Verified Complaint for Damages for Breach of Guaranties against Ashby and Redman in the Superior Court, County of Los Angeles, Northeast District, Case No. GCO40585 relating to enforcement of guarantees of Ashby and Redman on 3 loans to certain of the Borrower Entities involving total alleged outstanding loan obligations of approximately $34.65 million as of March 20, 2008.  On May 7, 2008, IndyMac Bank commenced a second state court action in Los Angeles Superior Court, Northeast District, Case No. GC0400782, seeking a writ of possession for stock pledged as collateral for the subject loans.

9.      Mr. Redman's counsel herein, Pachulski Stang Ziehl & Jones LLP ("PSZJ") represented Redman, Ashby, Fiesta and other real estate entities of Redman and Ashby in various negotiations and litigation matters, however in approximately April 2008  PSZJ withdrew from representing Ashby in workout negotiations and during the next several months also withdrew from representing Ashby, Fiesta and other real estate entities of Redman and Ashby, including in the pending actions of PFF, Compass, and IndyMac Bank.[2]

10.     Beginning in April 2008, Mr. Redman began compiling updated and detailed financial information for global workout negotiations for Mr. Redman and his wife with respect to the obligations under the Guaranteed Loans (the "Redman Guaranties").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[2]  Formal substitutions in pending state court actions were not finalized until August and September 2008 due to delays with Ashby in getting the substitutions done with new counsel.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

11.    During the period the Redmans' financial information was being prepared for workout negotiations, there were settlement discussions between Redman and PFF with respect to the guarantee claims asserted by PFF against Mr. Redman.  These included PFF's writ of attachment against the Redmans' Long Beach residence with respect to the $2 million line of credit and two other loans of PFF totaling approximately $16 million also guaranteed by Mr. Redman and the Redmans' living trust.  The total estimated deficiency claim of the 3 loans was in excess of $10 million at that time.

12.    Beginning in early June, 2008, following preparation of complete draft Statements and Schedules and a Liquidation Analysis as of May 31, 2008, Mr. Redman and his counsel initiated global out-of-court workout negotiations with a number of lenders relating to the Guaranteed Loans and the Redman Guaranties, including First Bank, the predecessor to FB Holdings. Copies of the draft Statements and Schedules and Liquidation Analysis as of May 31, 2008 were provided in conjunction with discussions and negotiations subject to Confidentiality Agreements.  The estimated Guaranteed Loans totaled approximately $160 million with estimated deficiency claims in excess of $115 million as a result of precipitous declines in the value of the real estate securing the loans.

13.    The stated goals of the global workout negotiations set forth in letters to the lenders concerning the Redman Guaranties were (i) to avoid costly and potentially needless litigation and collection efforts which will deplete available assets and ultimate recoveries, (ii) to provide each lender with a greater recovery or overall benefit than would be obtained in the event of a chapter 11 filing of Mr. Redman, and (iii) to enable Mr. Redman, who is elderly and has no material source of income other than his real estate related interests and social security payments, to retain some of his non-exempt assets for the support of himself and his family.  At the time Mr. Redman began workout negotiations only three of the lenders, Compass, PFF and IndyMac had commenced actions against Mr. Redman on the guarantees.

14.    In early June 2008, it appeared a tentative settlement of all of the guarantee claims of PFF had been reached between Redman and PFF[3], however the deal fell apart following a proposed purchase of PFF by FBOP Corp. at the time senior management and/or loan committee approval of

---

[3]    Specifically, counsel for Mr. Redman confirmed agreement to a settlement amount that counsel for PFF indicated would be acceptable, but needed approval by senior management.

PFF was being sought.

15. On July 9, 2008, Mr. Redman finalized a settlement with IFA (the "IFA Settlement") relating to IFA's guarantee claim against Mr. Redman involving a loan in the approximate amount of $11.7 million as of July 2, 2008 and a deficiency claim of $9.7 million based on IFA's foreclosure on the real property collateral with a credit bid of $2 million. Under the terms of the IFA Settlement, payment of the settlement amount was not due until 120 days after mutual execution and the Settlement Agreement and Release was subject to reinstatement if within 90 days following payment a bankruptcy proceeding was initiated and an action was filed against IFA to compel return or disgorgement of any material portion of the settlement payment.

16. Due to unsuccessful efforts to reach a settlement with PFF or obtain a tolling of the attachment, PSZJ discussed or raised with a number of lenders, including IFA and counsel for Compass, IMH and First Private Bank[4], filing of an Involuntary Petition to prevent the PFF lien from perfecting and providing additional time for workout negotiations.[5] Compass had expressed concerns a number of times about the PFF attachment and what Mr. Redman was doing to prevent it from perfecting and permitting PFF an advantage over other lenders during the course of settlement discussions with Compass in June and July 2008.

17. On August 4, 2008, Petitioners IFA, Compass and Marcie Signorelli, an employee of Mr. Redman (collectively, the "Petitioners") filed the Involuntary Case

18. On August 22, 2008 the Redmans and Petitioners filed the Stipulation with the Court seeking an extension of time for the Redmans to answer the Involuntary Petition and a stay of adjudication of the Involuntary Cases. On August 29, 2009 this Court entered an Order approving the Stipulation.

19. On December 16, 2008, the Redmans filed a Status Report Regarding Workout Negotiations (the "First Status Report") setting forth the status of settlements and workout

[4] First Private Bank ("FPB") is a different lender than First Bank. As set forth in the Redmans' Second Status Report FPB sold its Guaranteed Loan to Diversified Pacific Opportunity Fund ("Diversified") around the time a tentative settlement had been reached and the Redmans subsequently entered into a settlement with Diversified executed on March 31, 2009.
[5] Due to conflict issues arising with counsel for IndyMac Bank after the FDIC takeover, PSZJ did not discuss filing of an involuntary bankruptcy with counsel for IndyMac, however, shortly before or the time the Involuntary Case was commenced, the IndyMac loan officer communicated that he would have requested authorization for IndyMac Bank to be a petitioning creditor if there had been adequate advance notice.

negotiations with respect to the Redman Guaranties. A true and correct copy of the First Status Report is attached hereto as **Exhibit A** and incorporated herein by reference.

20.    On December 18, 2008 this Court held a status hearing on the Involuntary and set a continued status hearing on May 21, 2009 and required the Redmans' filing of a further status report on May 8, 2009.

21.    During the next 6 months between December 18, 2008 and May 8, 2009, the Redmans continued to actively pursue settlements and resolution of the Redman Guaranties and no lenders expressed any concerns regarding ongoing efforts of the Redmans to consensually settle the Redman Guarantees or with the continuation of the Involuntary Case.

22.    On February 13, 2009, per a recent request for additional information by counsel for First Bank/FB Holdings, PSZJ provided information and documents relating to finalized settlements with other lenders and an updated Deficiency Analysis. PSZJ also presented a revised settlement proposal of the Redmans to First Bank. No response to the settlement proposal was ever received other than a February 28, 2009 email from counsel for First Bank/FB Holdings that he had not heard back from the bank, but would check early the next week. There was never any further communication from counsel for First Bank/FB Holdings despite repeated follow-up inquiries by counsel for Redman.

23.    On May 8, 2009, the Redmans filed a further Status Report Regarding Workout Negotiations and Request for Setting of a Further Status Conference Hearing (the "Second Status Report"), setting forth a further update regarding settlements and workout negotiations with respect to the Redman Guaranties and requesting scheduling of a further status conference. A true and correct copy of the Second Status Report is attached hereto as **Exhibit B** and incorporated herein by reference.

24.    On May 8, 2009, FB Holdings filed a Unilateral Status Report alleging that a state court action filed by FB Holdings in September 2008 "is stayed as a result of this bankruptcy case." For over the past nine months FB Holdings never previously raised that the Involuntary was preventing it from seeking relief in its pending state court action and in fact the Involuntary Case does not stay the FB Holdings state court action which was filed after the Involuntary and is against

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

other parties and pursuing relief against other guarantors. In addition, for the past four months, FB Holdings has failed to respond to a settlement proposal of the Redmans made on February 13 in conjunction with provision of additional information requested by counsel for FB Holdings concerning other settlements and counsel for FB Holdings has not even responded to emails or returned numerous phone calls.[6]

25.    On or about May 15, 2009, FB Holdings filed its Motion to Dismiss.

26.    On May 18, 2009, the Redmans filed a Declaration of Daniel Limon Re Guaranty and Deficiency Claims in Support of Request for Further Status Conference Hearing ("the Limon Declaration") attaching as an Exhibit a schedule of the Guaranteed Loans and estimated deficiency claims with respect to the Redman Guaranties as of December 31, 2008. A true and correct copy of the Limon Declaration is attached hereto as **Exhibit C** and incorporated herein by reference.

27.    The Court held a continued Status Conference Hearing in the Involuntary Case on May 21, 2009. The Redmans and all of the creditors appearing in Court and on the phone agreed to the Court's tentative ruling further continuing the Status Conference Hearing to July 16, 2009. Subsequent to the May 21 Status Conference Hearing the Redmans had further settlement meetings with Silar, IndyMac Ventures and IMH. The discussions and negotiations with IndyMac Ventures and Silar are ongoing.

28.    On June 2, 2009, a settlement (the "PFF Settlement") between the Redmans and U.S. Bank, the successor to PFF, was finalized. The Redmans payment to PFF under the PFF Settlement is due the earlier of 6 months or the time of the sale of the Redmans' ranch, subject to a modified timeframe and U.S. Bank's agreement to support a chapter 11 plan which provides for payment of the settlement amount in the event an order for relief is entered in the Involuntary Case prior to the payment date  The PFF attachment will not be resolved until payment of the settlement amount to U.S. Bank and in the event the Involuntary Case is dismissed and the settlement payment has not been made U.S. Bank required a right to void the settlement.

29.    On June 8, 2009, the Redmans and IMH agreed to a settlement of IMH's guarantee claims against the Redmans which is in the process of being documented. With the IMH settlement,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[6]   Counsel for FB Holdings has never been available to take many phone calls of counsel for the Redmans.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the Redmans will have settled with five lender parties since the Involuntary Case, subject to payment of settlement amounts over time due under the Diversified, U.S. Bank and IMH settlements and clawback/reinstatement rights if settlement payments made are avoided (or in the case of U.S Bank if the Involuntary Case is dismissed).  Including the prior settlement with IFA, the guarantee claims which have been settled involve estimated deficiency claims in excess of $60 million.

30.    Despite substantial hurdles summarized in the Stipulation and Status Reports filed with this Court -- including FDIC takeovers of banks, sales of banks and loans to new entities during the course of negotiations and District Court litigation of Compass and its putative successor Silar Advisors with direct lenders -- the Redmans have in fact succeeded in making substantial progress to resolve the lender guarantee claims since the Involuntary Cases were commenced.

## III.

## ARGUMENT

### A.    FB Holdings Lacks Standing To Seek Dismissal of the Involuntary Case Under Section 303(j) For Want of Prosecution

As a threshold matter, authority cited in the Motion to Dismiss flies in the face of the argument of FB Holdings that it has standing to seek dismissal of the Involuntary Case under Bankruptcy Code Section 303(j)(3) or otherwise "for want of prosecution".  As set forth in In re Jr. Food Mart of Arkansas, Inc., 234 B.R. 420, 421 (Bankr. E.D Va. 1999):  "The Bankruptcy Code and Rules unambiguously provide that, other than in the partnership situation, only the debtor named in the involuntary petition may "contest" the petition.  That is, only the debtor may file a responsive pleading and utilize section 303(j) of the Bankruptcy Code as grounds for dismissal." (citing Federal Trade Comm'n v. American Inst. For Research & Development, 219 B.R. 639 (D. Mass. 1998) and In re Taylor & Assoc., L.P., 191 B.R. 374, 380 (Bankr. E.D. Tenn. 1996). ("general rule that a nonpetitioning creditor has no standing to oppose an involuntary petition").

### B.    There Has Been No "Want of Prosecution"

Even if FB Holdings had standing, there has been no undue delay by the Alleged Debtors or the Petitioning Creditors or a failure to comply with orders of the Court.  The Stipulation filed by the Redmans and the Petitioners at the outset of this Involuntary set forth the reasons for the Involuntary

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   Case and the request for a stay of adjudication of the Involuntary Case.  The Court granted the

2   Stipulation and other than FB Holdings, none of the other creditors of the Debtors have objected to

3   the relief granted by the Court. The fact that five (5) additional settlements have been agreed to since

4   the Involuntary Case was commenced, including with IMH, the largest creditors of the Redmans,

5   and U.S. Bank, one of the larger creditors and the only creditor which had obtained an attachment

6   against the Redmans' assets, belies the contention of FB Holdings of a lack of prosecution.  All of

7   the cases cited by FB Holdings are entirely inapposite, including circumstances involving  failures to

8   file required papers or meet court ordered deadlines, serial filings and the like[7].

9   **C.**      **The Involuntary Case Was Not Filed in Bad Faith**

10          FB Holdings contention that the Involuntary Case was filed in bad faith is entirely baseless.

11          First, there is a presumption of good faith in favor of the petitioning creditor.  In re Mi La

12   Sui, et al., 380 B.R. 546, 557 (Bankr. C.D. Ca. 2007);  In re Molen Drilling Co., Inc., 68 B.R. 840,

13   843 (Bankr. D. Mont. 1987).  The circumstances of this case do not overcome this presumption, and

14   in fact strongly support it.

15          Second, the reasons for the Involuntary Filing were set forth in a Stipulation filed with the

16   Court on August 22 of last year and included preventing a writ of attachment from perfecting and

17   permitting an opportunity for pending workout negotiations with lenders with respect to the Redman

18   Guaranties.  FB Holdings belated assertion of bad faith over nine (9) months after the Involuntary

19   Case was commenced is untimely and wholly without merit.  In addition to the Petitioners, no other

20   creditors of the Debtors have alleged any bad faith or attempt of the Petitioners or the Redmans to

21   obtain a disproportionate advantage.  This includes creditors with guarantee claims two to five times

22   larger than FB Holdings and all three (3) of the creditors with pending state court actions against Mr.

23   Redman at the time the Involuntary Case was commenced.

24          Third, the allegation in the Motion of some improper collusion is patently absurd.  Compass,

25   which acted as two of the four Petitioners, was the servicing agent for two loans involving loans

26   close to $20 million and alleged deficiency claims over $16 million as of July 31, 2008 for

27

28   [7]  In re Teletronics Servs., 1980 Bankr. LEXIS 5207 *1, 89 (Bankr. E.D. N.Y. Apr. 30 1980) cited and quoted in the
     Motion to Dismiss at  page 14 involved a motion to dismiss a petition under Chapter XI based on detailed findings of the
     failure of the debtor to carry out its duties.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

guarantees of Mr. Redman and his business partner Richard Ashby.  Compass had filed two separate state court actions in August and September 2007 against Mr. Redman and Richard Ashby for Breach of Guaranty and was the only lender party other than PFF and IndyMac Bank which had commenced state court actions against Mr. Redman relating to guarantee claims.  During ongoing settlement discussions with Compass initiated by the Redmans in June 2008 in conjunction with negotiations with other lenders who had not yet filed suit, counsel for Compass communicated concerns with the PFF attachment and getting it resolved before the 90 day preference period passed.  A third Petitioning Creditor, Beaumont Partners, the representative of Integrated Financial Associates, Inc. ("IFA"), asserted a deficiency claim against Mr. Redman of approximately $9.7 million with respect to a guarantee of an approximately $11.7 million loan as of July 2, 2008 secured by real property foreclosed on by IFA on July 2, 2008 with a credit bid of $2 million.  As disclosed in the Stipulation, Mr. Redman settled IFA's approximately $9.7 million claim prior to the Involuntary Case, however payment of the settlement amount was not yet due and was also subject to certain reinstatement rights.

This Involuntary Case was not filed or used as a litigation tactic against lender parties or to avoid disclosure of information to creditors and there has been no failure to comply with orders of the court.  Mr. Redman has not prevented lenders from foreclosing on their real property collateral and has proactively pursued resolution of guarantee claims against him, both before and after the Involuntary Case.  Mr. Redman also provided detailed updated personal financial information to lenders under confidentiality agreements, including to FB Holdings and its predecessor First Bank..  Lenders also had prior personal financial statements of Mr. Redman which had been provided in conjunction with the loans and guarantees.

The Involuntary Filing was a last resort to facilitate ongoing settlement negotiations and not a delay or negotiation tactic directed at FB Holdings or other creditors to gain an advantage.  Through counsel, Mr. Redman repeatedly attempted to settle with PFF or obtain PFF's agreement to a tolling of its attachment to avoid the necessity for a bankruptcy filing and additional litigation, cost and delay in pending workout negotiations with multiple parties.  It was only due to Mr. Redman's inability to reach a settlement with PFF or obtain PFF's agreement to a tolling of its attachment that

the Involuntary Case was filed.

The circumstances in In re Mi La Sui, et al. cited in the Motion to Dismiss involved multiple voluntary and involuntary bankruptcy filings by the debtor and petitioning creditor "to take disproportionate advantage of the secured creditors by imposing the automatic stay  in order to give the petitioning creditor time and leverage to negotiate the payoff of that lien for less than is owed" Mi La Sui, supra, 380 B.R. at 556.  These factual circumstances are entirely inapposite to the circumstances of the herein Involuntary Case which was plainly filed to protect against PFF obtaining a disproportionate advantage and was not even directed at dealings, disputes or pending litigation between the Redmans and FB Holdings.

**D.    Dismissal of the Involuntary Case Pursuant to Section 305(a) is Not in the Best Interests of Creditors**

As with FB Holdings other arguments, there is no factual or legal basis for the "extraordinary remedy" of dismissal of the Involuntary Case under Bankruptcy Code Section 305(a).  Contrary to the circumstances of Wechsler v. Macke Int'l Trade, Inc., (In re Macke Int'l Trade Inc.), 370 B.R. 236, 247 (9th Cir. BAP 2007) cited by FB Holdings in the Motion to Dismiss, this Involuntary Case in fact does not involve a two party dispute, absence of a bankruptcy purpose and forum shopping. The total estimated deficiency claim amounts of Petitioners Compass and IFA are approximately five times greater that the alleged guarantee claims of FB Holdings.  In addition, other lenders including IndyMac Ventures and IMH, which have loan guarantee claims totaling an estimated $55 million as of February 28, 2009 -- dwarfing the claims of FB Holdings -- have also supported the maintenance of the status quo and continuation of the Involuntary Case to provide an opportunity for Mr. Redman to continue settlement negotiations.  Mr Redman and IMH also just successfully reached a settlement of IMH's guarantee claim subject to documentation of a final settlement agreement.  The Redmans efforts and workout negotiations are in the mutual interests of creditors generally and the Redmans and dismissal of the Involuntary Case under Section 305 is not warranted.

# IV.

## <u>CONCLUSION</u>

For the reasons set forth above, the Redmans respectfully request that the Court deny the Motion to Dismiss and grant such other and further relief as is just and proper.

Dated:    June 10, 2009                PACHULSKI STANG ZIEHL & JONES LLP


                                        By    */s/ Stanley E. Goldich*
                                              Stanley E. Goldich (CA Bar No. 92659)
                                              Attorney for Larry and Joy Redman,
                                              Alleged Debtors

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT A

FILE COPY

1  Richard M. Pachulski (CA Bar No. 90073)
   Stanley E. Goldich (CA Bar No. 92659)
2  Pachulski Stang Ziehl & Jones LLP
   10100 Santa Monica Boulevard, 11th Floor
3  Los Angeles, California  90067-4100
   Telephone:  310/277-6910
4  Facsimile:  310/201-0760

5  Attorneys for Alleged Debtors

6

7

8                    UNITED STATES BANKRUPTCY COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                       LOS ANGELES DIVISION

11

12  In re:                               Case No.: 2:08-21925-ER

13  Redman, Lawrence Eugene and Redman, Joy Ann,    Involuntary Bankruptcy Case

14              Alleged Debtors.         **REDMANS' STATUS REPORT
                                         REGARMING WORKOUT
15                                       NEGOTIATIONS**

16                                       Date:  December 8, 2008
                                         Time:  11:00 a.m.
17                                       Pace:  Courtroom

18

19       **TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY**

20  **JUDGE:**

21       Lawrence Eugene Redman ("Larry Redman" or "Mr. Redman") and Joy Redman

22  (collectively, the "Redmans"), the alleged debtors in the above referenced Involuntary Bankruptcy

23  Case hereby submit the following Status Report Regarding Workout Negotiations.

24

25  A.   <u>Settlements</u>

26       Since the time of the prior Status Conference on October 8, the Redmans moved forward

27  with resolution of 4 of the guarantee disputes as follows:  (1) The Redmans paid Integrated Financial

28  Services, Inc. ("IFA" or Beaumont") the agreed settlement amount 120 days after mutual execution

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

of the Settlement Agreement and Release entered into on July 9, 2008; (2) and (3) the Redmans

consummated separate settlements with Gray1, the assignee of a loan of Central Pacific Bank, and

Central Pacific Bank with respect to a line of credit that was not sold to Gray1; and (4) the Redmans

are in the process of finalizing a settlement agreement with First Private Bank. All of the settlements

involve mutual releases, subject to various clawback and other provisons in the event of a

subsequent attack or challenge of the settlements.

**B.**    Status of Outstanding Workout Negotiations

The Redmans remain extremely anxious to move forward with resolution of approximately

6-8 remaining potential guarantee claims. However, due to financial and other circumstances of

various of the lender parties or agents, negotiations have been delayed with several of the lenders.

Specifically, these include the following: (1) A representative of the FDIC/IndyMac Bank recently

communicated they are still not in a position to negotiate a resolution of the IndyMac guarantee

claims; (2) IMH is still first addressing issues with respect to the real property collateral; (3) The

mortgage and loan servicing rights of Compass FP Corp ("Compass"), the loan servicer for two

loans for which it acted as 2 of the 4 Petitioning Creditors in this Involuntary, were foreclosed on in

October 2008 by Silar Advisors ("Silar"). Silar reportedly reached a tentative class action

settlement, subject to documentation and approval, with a Receiver appointed to represent the

interests of thousands of direct lenders in a Nevada District Court action involving numerous loans

(including the two Compass loans relating to this Involuntary). As the class action settlement may

involve a change in control of interests and servicing rights, it is not known at this time whether any

settlement can move forward until the settlement is approved on a preliminary or final basis; (4) On

or about November 21, 2008, the FDIC seized PFF Bank & Trust ("PFF"), and sold PFF to U.S.

Bank, terminating the prior sale to FBOP that had aborted the prior tentative settlement between the

Redmans and PFF; and (5) Counsel for First Bank are proceeding with an action against the

Borrower and have not returned phone calls from the Redmans' counsel to discuss settlement of

alleged clams with respect to the Redmans' guarantee. One or two other potential guarantee claims

may also need to be addressed, however, the present focus is on the remaining claims above.

1    The Redmans will continue to attempt to resolve remaining disputes as circumstances permit

2    and are hopeful that many if not all of the remaining guarantee claims can be addressed in the next

3    90-120 days, particularly the IMH, IndyMac and Compass claims which comprise the large majority

4    of remaining guarantee claims..Additionally, the Redmans' counsel were informed this week by

5    counsel for U.S Bank, who had represented PFF and its potential successor FBOP in the prior

6    settlement negotiations, that the prior settlement proposal discussed by counsel will be presented to

7    U.S. Bank.

8

**C.    Liquidation of Assets**

9

10    Pending settlements and ongoing legal fees and other expenses are depleting the Redmans'

11    available cash.  The Redmans are actively marketing their Santa Barbara Ranch, which is very costly

12    to maintain and is anticipated to be the primary source of payment for remaining settlements.  The

13    Redmans are also continuing to pursue sale of certain personal property assets, including antiques

14    and collector automobiles, which may raise cash to help fund settlements of some of the remaining

15    disputes.

16    Dated:    December 16, 2008                 PACHULSKI STANG ZIEHL & JONES LLP

17

18                                                         By

19                                                                 Richard M. Pachulski
                                                                 Stanley E. Goldich
                                                                 Attorneys for Alleged Debtors

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2      STATE OF CALIFORNIA          )
                                    )
3      COUNTY OF LOS ANGELES        )

4

5          I, Myra Kulick, am employed in the city and county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 10100 Santa Monica Blvd., 11th Floor, Los Angeles, California  90067-4100.

6

7          On December 16, 2008, I caused to be served the ***REDMANS' STATUS REPORT REGARDING WORKOUT NEGOTIATIONS*** in this action by placing a true and correct copy of said document(s) in sealed envelopes addressed as follows:

8          *Please see attached Service List*

9

10     ☑ (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

11

12

13     ☐ (BY EMAIL) I caused to be served the above-described document by email to the parties indicated on the attached service list at the indicated email address.

14

15     ☐ (BY NOTICE OF ELECTRONIC FILING) I caused to be served the above-described document by means of electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, for parties and/or counsel who are registered ECF Users.

16

17     ☐ (BY FAX) I caused to be transmitted the above-described document by facsimile machine to the fax number(s) as shown.  The transmission was reported as complete and without error.  (Service by Facsimile Transmission to those parties on the attached List with fax numbers indicated.)

18

19

20     ☐ (BY PERSONAL SERVICE) By causing to be delivered by hand to the offices of the addressee(s).

21     ☐ (BY OVERNIGHT DELIVERY) By sending by                    to the addressee(s) as indicated on the attached list.

22

23         I declare that I am employed in the office of a member of the bar of this Court at whose direction was made.

24         Executed on December 16, 2008, at Los Angeles, California.

25

26

27                                Myra Kulick

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

## Service List

2

3   **U.S. Trustee**
    Ernst & Young Plaza
    725 S. Figueroa Street, 26th Floor
4   Los Angeles, CA 90017

5   **Counsel to Petitioners Beaumont Partners,**
    **L.P., a Nevada L.P.; Compass FP Corp.,**
6   **a Delaware corporation; and**
    **Marcella Signorelli, an individual**
7   David B. Golubchick, Esq.
    Levene, Neale, Bender, Rankin & Brill
8   10250 Constellation Blvd., Suite 1700
    Los Angeles, CA 90067

9
    **Counsel to Petitioner Compass FP**
10  **Corp., a Delaware corporation**
    Ori Katz
11  Steven Winick
    Sheppard Mullin Richter & Hampton
12  Four Embarcadero Center, 17th Floor
    San Francisco, CA 94111

13
    **Counsel to First Bank**
14  Steven Casselberry
    Michelman & Robinson
15  4 Hutton Centre Dr Ste 300
    Santa Ana, CA, 92707

16
    **Counsel to IMH**
17  Alisa C. Lacey
    Stinson Morrison Hecker LLP
18  1850 North Central Avenue, Suite 2100
    Phoenix, AZ 85004

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT B

1    Richard M. Pachulski (CA Bar No. 90073)
     Stanley E. Goldich (CA Bar No. 92659)
2    Pachulski Stang Ziehl & Jones LLP
     10100 Santa Monica Boulevard, 11th Floor
3    Los Angeles, California  90067-4100
     Telephone: 310/277-6910
4    Facsimile: 310/201-0760

5    Attorneys for Alleged Debtors

6

7

8                     UNITED STATES BANKRUPTCY COURT          **E-FILED**

9                     CENTRAL DISTRICT OF CALIFORNIA          MAY − 8 2009

10                        LOS ANGELES DIVISION
                                                             DOCKET NO. 21

11

12   In re:                                   Case No.: 2:08-21925-ER

13   Redman, Lawrence Eugene and Redman, Joy Ann,    Involuntary Bankruptcy Case

14                           Alleged Debtors.   **REDMANS' STATUS REPORT
                                                 REGARDING WORKOUT
15                                               NEGOTIATIONS AND REQUEST FOR
                                                 SETTING OF FURTHER STATUS
                                                 CONFERENCE HEARING**
16

17                                             Date:   May 21, 2009
                                               Time:   11:00 a.m.
18                                             Place:  Courtroom 1568
                                                       Edward R. Roybal Federal Bldg.
19                                                     255 East Temple Street
                                                       Los Angeles, CA  90012
20                                             Judge: Honorable Ernest M. Robles

21        **TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY**

22   **JUDGE:**

23

24        Lawrence Eugene Redman ("Larry Redman" or "Mr. Redman") and Joy Redman

25   (collectively, the "Redmans"), the alleged debtors in the above referenced Involuntary Bankruptcy

26   Case, hereby submit the following Status Report Regarding Workout Negotiations and request the

27   setting of a further Status Conference Hearing in approximately 4-6 months to provide an

28   opportunity for further workout negotiations and settlements described below.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  ## A.    Further Settlements

2  Since the time of the prior Status Conference on December 8, 2008, the Redmans have

3  continued to make progress in resolving guarantee claims, notwithstanding further delays due to

4  sales of loans, financial circumstances of some of the lenders, and unrelated litigation discussed

5  further below.

6  Due to First Private Bank's sale of a loan portfolio, including the subject loan to the

7  Redmans, the tentative settlement previously reached by the Redmans with First Private Bank did

8  not occur.  However, the Redmans succeeded in negotiating a new settlement with the buyer of the

9  loan, Diversified Pacific Opportunity Fund which was executed by the parties on March 31, 2009.

10  The Redmans also recently reached a settlement with U.S. Bank, the purchaser of PFF Bank & Trust

11  which is in the process of being documented.  It is anticipated that the Settlement Agreement with

12  U.S. Bank will be finalized and executed prior to the May 21 Status Hearing.  With these

13  settlements, 5 of the approximately 10 guarantee claims will have been resolved, subject to the

14  Redmans payment of amounts due as provided in the settlements and certain provisions relating to

15  clawbacks and support for a chapter 11 Plan in the event of a chapter 11 by the Redmans.

16  In response to requests of lenders, updated summaries of deficiency amounts and pending

17  and finalized settlements have been provided to several of the lenders, including OneWest Bank/

18  IndyMac Ventures LLC, the purchaser of  IndyMac Bank, and First Bank, two of the remaining

19  lenders where no settlement has yet been reached.  The information given is subject to agreements

20  that the information is being provided solely for settlement purposes and is confidential except to the

21  extent of any disclosures of the Redmans to the Court.  Payments due under settlements are being

22  secured in assets of the Redmans in conjunction with ongoing sale and marketing efforts relating to

23  the Redmans' ranch and certain personal property and the Redmans are proposing similar or

24  alternative arrangements with remaining parties.

25  ## B.    Status of Outstanding Workout Negotiations

26  In addition to the further settlements described above, there has also been progress with

27  several of the remaining lenders.  The status with other lenders is as follows:

28  • IndyMac Venture LLC:  After delay due to the sale of IndyMac Bank to OneWest Bank

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   and following the sale, counsel for the successor entity, IndyMac Venture LLC recently

2   communicated that IndyMac Venture is ready to resume settlement discussions relating

3   to the IndyMac loans and guarantee claims.  Some alternative settlement proposals were

4   made by the Redmans that the parties will be discussing and the Redmans will be

5   providing further updated financial information requested by IndyMac Venture.

6   •   Compass/Silar: There have been some preliminary discussions with Silar Advisors

7   ("Silar").  At a hearing on January 20, 2009, the District Court denied preliminary

8   approval of a proposed global class action settlement between Silar and direct lenders

9   which was opposed by a large majority of the direct lenders and set a trial on non-jury

10   issues to be heard on October 6, 2009.  There has been extensive ongoing litigation in

11   the District Court action and the District Court recently issued an Order relating to Silar's

12   Motion for Substitution under the District Court preliminary injunction order.  A copy of

13   the Order is attached hereto as **Exhibit A**.  Counsel for Silar indicated they may be

14   seeking clarification of the Order, but believe they can resume negotiations with the

15   Redmans relating to the guarantee claims on the Compass loans, and if a settlement is

16   reached submit it to the direct lenders for approval during the pendency of the ongoing

17   litigation and trial scheduled in the District Court action.  A form of Confidentiality

18   Agreement with Silar needs to be worked out which permits Silar to share relevant

19   information with direct lenders who may not be subject to the agreement while providing

20   confidentiality protections for the Redmans personal financial information.

21   •   IMH: Mr. Redman recently had further preliminary discussions with principals of IMH

22   relating to the loans, real property collateral and resolution of guarantee claims.  Further

23   follow up with counsel and resumption of workout negotiations was discussed.

24   •   Bank Midwest: There have been further limited informal discussions between Mr.

25   Redman and Bank Midwest and further discussions will be pursued, however there is no

26   specific timetable at this time.

27   •   First Bank: At the request of counsel for First Bank, subject to the agreement governing

28   confidentiality and settlement discussions, updated information regarding loans and

1    deficiency claims and other settlements was provided to counsel for First Bank on

2    February 13, 2009.  A new settlement proposal was also made by the Redmans at that

3    time.  Since February 13, counsel for First Bank has not responded to numerous emails

4    and calls requesting a response from counsel for First Bank other than a February 28

5    email stating that counsel had not heard back from the bank and would check the

6    following week.  The prior offer of the Redmans has expired by its terms, however the

7    Redmans remain receptive to further negotiations and continue to await a good faith

8    settlement proposal of First Bank whose alleged guarantee claim is well less than 5% of

9    the total claims.

10   **C.    Request for Continuance**

11       Based on the status of current settlement and workout negotiations, the Redmans request

12   scheduling of a further Status Conference Hearing in 4-6 months to provide a further opportunity to

13   reach settlements with most or all of the remaining lenders prior to that time.  It is not certain if

14   additional time will be needed, however, it is anticipated that further consensual settlements will be

15   reached during this period.

16   Dated:    May 8, 2009                    PACHULSKI STANG ZIEHL & JONES LLP

17

18                            By    */s/ Stanley E. Goldich*
                                  Richard M. Pachulski

19                                  Stanley E. Goldich
                                  Attorneys for Alleged Debtors

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT A

1

2

3

4                          **UNITED STATES DISTRICT COURT**

5                                **DISTRICT OF NEVADA**

6

7    In re:                                    )
                                               )    Case No.: 2:07-cv-00892-RCJ-GWF
     USA COMMERCIAL MORTGAGE                   )
8    COMPANY,                                  )
                                               )                **ORDER**
9                    Debtor.                   )
                                               )
10   3685 SAN FERNANDO LENDERS, LLC, *et al.*, )
                                               )
11                   Plaintiffs,               )
                                               )
12        vs.                                  )
                                               )
13   COMPASS USA SPE, LLC, *et al.*,           )
                                               )
14                   Defendants.               )
                                               )
15   COMPASS USA SPE, LLC, *et al.*,           )
                                               )
16                   Counterclaimants,         )
                                               )
17        vs.                                  )
                                               )
18   3685 SAN FERNANDO LENDERS, LLC, *et al.*, )
                                               )
19                   Counterdefendants.        )
                                               )
20
                                  **INTRODUCTION**
21
         Before the Court is Silar Advisors, LP, Silar Special Opportunities Fund, LP, and Asset
22
     Resolution LLC's Motion to (1) Substitute Asset Resolution, LLC as Assignee by Virtue of
23
     Foreclosure of Compass USA Servicing Rights Under the Loan Agreements with Respect to the
24
     Contractual Servicing Rights and (2) Substitute Asset Resolution as Assignee by Virtue of
25

1  Foreclosure of Compass USA with Respect to the Preliminary Injunction by Intervenor Asset

2  Resolution (#908).  Attorney Betty Shumener filed opposition on behalf of CCM Pathfinder

3  Pompano Bay, LLC and CCM Gramercy, LLC, #918, and Lisa Rasmussen similarly filed on behalf

4  of Cangelosi, Castillo, Chaudhry, Eller, Graham, Hess, Knoles, Kriss, Lafayette, Lucas, Maraden,

5  Mortensen, Newman, Schoonover, Simon, Tengan, Westbrook, and Zawacki, #923.

6                                   **BACKGROUND**

7        Silar and Asset Recovery filed a motion to substitute Asset Resolution with respect to the

8  preliminary injunction in place.  (#908).  Specifically, the Motion is to (1) substitute Asset

9  Resolution, LLC, as assignee by virtue of foreclosure of Compass USA SPE, LLC's servicing rights

10 under the loan servicing agreements with respect to the contractual servicing rights and (2) substitute

11 Asset Resolution LLC, as assignee by virtue of foreclosure of Compass USA SPE, LLC, with respect

12 to the preliminary injunction.  *Id.*  Asset requests that it be substituted in for Compass as to the

13 contractual assignments, not tort claims, against the Direct Lenders pursuant to Rule 25(c).  *Id.* at

14 3.  It also requests that it be protected by the Preliminary Injunction Order.  *Id.*

15       Asset Resolution argues that the Loan Service Agreements provide that either lender interests

16 or servicing rights can be freely assigned and that such assignment would be binding on the

17 successors to the rights under the contract, and that Asset Resolution has been assigned those rights.

18 *Id.* at 4.  It cites to the Preliminary Injunction Order as one that both protects and limits its rights, and

19 that as the LSAs do not limit the right of assignment, the Order should remain in place, maintaining

20 a needed balance.  *Id.*

21       Asset Resolution presents to the Court that the transaction between Compass SPE and Silar

22 was a loan secured by the collateral of the purchased assets, although the agreement was called

23 "Master Repurchase Agreement."  *Id.* at 6.  It maintains that the purchased assets were not

24 transferred to Silar at the closing, nor were they returned to Compass when it "repurchased" them.

25 *Id.*  Instead, Silar became Compass's lender and was secured by the purchased assets.  *Id.*  Asset

1 points out that many of the LSA specifically address free assignment of the agreements, and that
2 many of them have already been assigned in the bankruptcy proceeding. *Id.* at 7.

3    Asset Resolution argues that the Preliminary Injunction Order protects both itself and the
4 Direct Lenders, and notes that Silar, its parent company, has been bound by it since its filing. (#908
5 at 9–12). It also states that its foreclosure on Compass changed nothing about the need for the Order,
6 and it has been servicing the loans on the same terms as Compass was since the foreclosure. *Id.* at
7 14.  An additional reason for the need to maintain the Preliminary Injunction is the alleged
8 interference by the LPG and other direct lenders. *Id.* at 16.

9    The Rasmussen Lenders and CCM Lenders filed Opposition to the Motion for Substitution.
10 They agree on many of the above facts, but add several. (#918, #923).  Rasmussen Lenders filed
11 their own opposition, but also joined in CCM Lender's Opposition.  (#926).  They argue that even
12 if the agreement between Silar and Compass permitted Silar to take over loan servicing, no
13 agreement exists between the Direct Lenders and Silar to permit such an action, and that such
14 permission or agreement is necessary.  (#918 at 6).  Under their argument, Compass violated its
15 fiduciary duty toward them when it entered into the Master Repurchase Agreement and sold its
16 interest in the assets purchased at the bankruptcy proceeding. *Id.* at 6. They maintain that Compass,
17 Silar, and Asset Resolution then went on to breach the LSAs in a series of wrongful financial actions
18 involving the default interest and Waterfall issues. *Id.* at 7–8.  Additionally, Compass, Silar, and
19 Asset Resolution allegedly continued their course of wrongful actions by attempting to retain monies
20 earned from proceeds of property sales. *Id.* at 9.  In total, the Direct Lenders alleged that factually
21 speaking, Compass abandoned its duties under the LSAs and Silar has wrongfully taken control of
22 the Direct Lenders' assets by inserting Asset Resolution in Compass' place. *Id.*

23
24
25

1    **DISCUSSION**

2    I.    **Substitution of Asset Resolution**

3          A.    **Federal Rule of Civil Procedure 25(c) and the Ninth Circuit on assignment of**

4                **contractual rights.**

5          Federal Rule of Civil Procedure 25(c) states the standard for substitution of parties regarding

6    the transfer of interest. It provides that "[i]f an interest is transferred, the action may be continued

7    by or against the original party unless the court, on motion, orders the transferee to be substituted

8    in the action or joined with the original party." Fed. R. Civ. P. 25(c). The Ninth Circuit has not

9    written extensively on the application of this rule and has only issued one decision discussion the

10   rule in the context of creditors and successors in interest: *Educational Credit Management*

11   *Corporation v. Bernal*, 207 F.3d 595 (9th Cir. 2000). In that case, the court discusses the rule by

12   way of reference to a Fifth Circuit holding and Wright & Miller's Federal Practice. It cites the Fifth

13   Circuit by stating that "Rule 25(c) is not designed to create new relationships among parties to a suit

14   but is designed to allow the action to continue unabated when an interest in the lawsuit changes

15   hands." *Id.* at 598 (citing *Collateral Control Corp. v. Deal*, 638 F.2d 1362, 1364 (5th Cir. 1981)).

16   From Wright & Miller, it reiterates that

17          The most significant feature of Rule 25(c) is that it does not require that anything be done
            after an interest has been transferred. The action may be continued by or against the original
18          party, and the judgment will be binding on his successor in interest even though he is not
            named. An order of joinder is merely a discretionary determination by the trial court that the
19          transferee's presence would facilitate the conduct of the litigation.

20   7C Charles Alan Wright, *et al.*, Federal Practice and Procedure § 1958 (2d ed. 1986). The decision

21   to allow substitution is left to the district court's discretion. *In re Bernal*, 207 F.3d at 598; *see, e.g.*,

22   *Dodd v. Pioche Mines Consol., Inc.*, 308 F.2d 673, 674 (9th Cir. 1962) (the decision is

23   discretionary); *Sun-Maid Raisin Growers v. California Packing Corp.*, 273 F.2d 282, 284 (9th Cir.

24   1959) (same).

25

1         The First Circuit addresses substitution under Rule 25(c) in great detail in its holding for

2 *Explosives Corporation of America v. Garlam Enterprises Corporation*, 817 F.2d 894, 904–06 (1st

3 Cir. 1987). In that case, the circuit reversed the order of the district court on the motion for

4 substitution and ordered that the counter-defendant's successor company could indeed be substituted

5 as defendant for a breach of contract counterclaim. *Id.* at 907. In discussing Rule 25(c) and

6 substitution, the circuit stated that the basic question of liability for damages turned on the

7 relationship between the counter-defendant, Explo, and its successor company, Rockor. *Id.* at 905.

8 The parties did not dispute the facts, but the district court opined that Rockor was a separate entity

9 from Explo and that it did not assume Explo's liabilities. *Id.* The circuit directed its focus instead

10 on the relationship between Rockor and Explo and the role Rockor played in the litigation. *Id.* It

11 held that Rockor was liable, and therefore could be substituted for Explo for the following reasons:

12 (1) from the beginning it was a controlling shareholder of Explo; (2) it succeeded to Explo-Excoa's

13 interests in the lawsuit; (3) when Explo dissolved and merged with Excoa, Rockor became the only

14 real party in interest; (4) it controlled and financed the litigation; and (5) it was bound under contract

15 between Explo and plaintiff Garlam as Explo's successor and holding company. *Id.*

16         The relationship between Silar and Compass presents a similar situation to the one in

17 *Explosives Corporation*. Although Silar was not *per se* a "controlling shareholder" of Compass, it

18 did finance its bid that was accepted by the bankruptcy court in this proceeding. It has subsequently

19 intervened in the matter and is attempting to take control of Compass's interests in the lawsuit. It

20 foreclosed on Compass last fall and since that time has acted to service the loans through Asset

21 Resolution, LLC. Since the time of its foreclosure, it has controlled the litigation in lieu of Compass.

22         The Direct Lenders argue in their opposition against the substitution of both Silar and Asset

23 Resolution. They also fail to address the standard and interpretations of Rule 25 ( c).

24

25

1        The Court uses its discretion to acknowledge the substitution of Asset Resolution, without

2  approving the assignment from Compass, as the determination of that issue goes to the merits of the

3  case.

4        **B.    Direct Lenders' Arguments Against Substitution of Either Entity**

5        The Direct Lenders argue forcefully against the substitution of either entity for the following

6  reasons: (1) the LSAs are non-assignable personal services contracts and Silar cannot take over

7  without consent; (2) even if the LSAs were not personal services contracts, the powers of attorney

8  granted by the Direct Lenders and the fiduciary duty between Compass and them cannot be assigned

9  without consent; (3) the Direct Lenders have already terminated Compass as their agent; and (4) Silar

10  has a conflict of interest because it has admitted its duty is to its own investors, and not the Direct

11  Lenders. (#918 at 11–18). The Direct Lenders state that under Nevada law, personal services

12  contracts cannot be assigned absent consent. *See Estate of Greenberg v. Skurski*, 95 Nev. 736, 739

13  (1979). They also recited Nevada Revised Statute § 645B.330 (2005) which states that a mortgage

14  broker/agent must act on behalf of direct lenders pursuant to a valid power of attorney, approved by

15  the State of Nevada. (#923 at 4). Under their argument, no valid power of attorney can be used by

16  Silar or Asset Resolution because the statute places specific restrictions on the powers of attorney

17  that were previously executed for the benefit of USACM. *Id.* at 6. The Direct Lenders profess to

18  have no trust in Asset Resolution because it has not exhibited the skill or knowledge to service the

19  loans, and it too may abandon them at the first sign of trouble. (#918 at 15). Compass was allegedly

20  terminated when it abandoned its duties and they revoked its right to act as their servicer. *Id.* at 18.

21  And finally, apparently Silar has expressed its duty to its investors and abjured a fiduciary duty to

22  the Direct Lenders. *Id.* at 19.

23        Silar and Asset Resolution refute the statements of the Direct Lenders. (#928). They argue

24  that LSAs are not personal service contracts; the power of attorney arguments are inapplicable to

25  Asset and barred by the entry of the confirmation and sale order; LSAs do not create a fiduciary

<div align="center">Page 6 of 9</div>

1  relationship; the LSAs have not been terminated; and that Asset Resolution does not have a conflict
2  of interest because it has investors. *Id.* at 10–16.

3       The question of Compass's termination has not been resolved as it requires the determination
4  of factual issues. Regarding Silar's apparent conflict of interest, Silar is not precluded from
5  performing its obligations under the LSAs because of the existence of its investors. To the extent
6  that Silar itself would state that the obligation to its investors trumps that of the LSAs, the Court
7  would question a potential conflict of interest. Silar professes that "[t]here is no inconsistency
8  between meeting dual obligations [referring to both LSAs and investors]." (#928 at 16). The
9  remaining questions regard the nature of the Loan Service Agreements and the need for consent to
10 assign them along with the question of power of attorney.

11      The power of attorney question looks at whether or not Asset Resolution or Silar can service
12 the loans without a separate power of attorney form from the Direct Lenders, and if the previously
13 executed powers of attorney between USACM and the Lenders can be assigned to Asset Resolution
14 without their consent under Nevada law. The statute cited to by the Lenders refers to "mortgage
15 brokers," a category in which neither Silar nor Asset Resolution fall. Similarly, neither of these
16 entities are located in Nevada, another provision of the statute. The maturation of 43 out of 60 loans
17 does not preclude the transfer from USACM to Compass, and subsequently to Silar/Asset Resolution
18 because of the entry of the Confirmation and Sale Order as the lender's interest has not yet been
19 liquidated.

20      The LSAs are not personal services contracts. The agreements are commercial, and not based
21 on the provision of individualized services. *H. Salt of S. Cal., Inc. v. Yu*, 1993 WL 306153, at *1
22 (9th Cir. 1993) (holding where services in a contract are "routine and fungible" and not requiring
23 "rare genius and extraordinary skill," it is not a personal services contract).

24      The Restatement Second of Contracts in its chapter on remedies, discusses contracts for
25 personal service or supervision. Its comment to the section addresses the determination of a personal

1    service contract which takes into account the "importance of trust and confidence in the relation
2    between the parties, the difficulty of judging the quality of the performance rendered and the length
3    of time required for performance." Restatement (Second) of Contracts § 367 cmt. b. (1981). No
4    Nevada caselaw suggests that loan service agreements rise to the level of the intimate relation of a
5    personal services contract. Although the loan terms vary in this case, and have been categorized
6    according to their similarities and differences by the Receiver in his report, loan servicing is not a
7    unique relationship, akin to that of an athlete or singer. *See id.* The Court finds that the contracts
8    are commercial in nature and not to be considered personal services contracts.

9    **II.    Extension of Preliminary Injunction**

10          The Direct Lenders argue that as the transfers of the LSAs, the Powers of Attorney, and
11   the fiduciary relationship between Compass and the Lenders to Silar is void, Asset Resolution and
12   Silar are not entitled to the protections of the Preliminary Injunction Order. (#918 at 19). They also
13   state that the Order harms the Lenders because it allows Compass to "continue haphazardly servicing
14   the Loans." *Id.* at 20. Their final argument is that the CCM Lenders have requested a receiver to
15   preserve and protect their assets, and that a preliminary injunction be issued against Compass/Silar
16   in their seeking to interfere with this future receiver's duties. *Id.* That motion is scheduled to be
17   heard Monday, April 13, 2009, and is not before the Court at this time.

18          Without the Order, the status quo would be disrupted with the collateral properties at issue;
19   the preserved funds vulnerable; and Asset Resolution's work to service the defaulted loans would
20   be disrupted. The vacating of the Order would not benefit any of the parties involved and would not
21   serve any valid purpose. Accordingly, it is not vacated and extends to protect all parties, including
22   Asset Resolution.

23

24

25

Page 8 of 9

1

## CONCLUSION

2      IT IS HEREBY ORDERED that Silar/Asset Resolution's Motion for Substitution is

3   acknowledged, but the alleged assignment of the contractual servicing rights is not approved.

4   (#908).

5      Dated: April 20, 2009

6

7

8      Robert C. Jones
       United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

In Re:  Redman, Lawrence Eugene and Redman, Joy Ann,        Case No. 2:08-21925-ER

Alleged Debtors        Involuntary Bankruptcy Case

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.

Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

10100 Santa Monica Boulevard, 11th Floor, Los Angeles, CA  90067

The foregoing document described **REDMANS' STATUS REPORT REGARDING WORKOUT NEGOTIATIONS AND REQUEST FOR SETTING OF FURTHER STATUS CONFERENCE HEARING** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐    Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On __**May 8, 2009,**__     I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

Honorable Ernest M. Robles
United States Bankruptcy Court
255 East Temple Street
Edward R. Roybal Federal Building
Los Angeles, CA  90012-3300

☒    Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 8, 2009 | Nancy H. Brown | /s/ Nancy H. Brown |
|---|---|---|
| Date | Type Name | Signature |

In Re: Redman, Lawrence Eugene and Redman, Joy Ann,           Case No. 2:08-21925-ER
                                          Alleged Debtors      Involuntary Bankruptcy Case

1

2                            **Service List**

3

4    **U.S. Trustee**                        **Counsel to Petitioner Compass FP
     Ernst & Young Plaza                     Corp., a Delaware corporation**
5    725 S. Figueroa Street, 26th Floor      Ori Katz, Esq.
     Los Angeles, CA 90017                   Steven Winick, Esq.
6                                            Sheppard Mullin Richter & Hampton
     **Counsel to Petitioners Beaumont Partners,**   Four Embarcadero Center, 17th Floor
7    **L.P., a Nevada L.P.; Compass FP Corp.,**      San Francisco, CA 94111
     **a Delaware corporation; and**
     **Marcella Signorelli, an individual**
8    David B. Golubchick, Esq.              **Counsel to First Bank**
     Levene, Neale, Bender, Rankin & Brill  Steven Casselberry, Esq.
9    10250 Constellation Blvd., Suite 1700  Michelman & Robinson
     Los Angeles, CA 90067                  4 Hutton Centre Dr Ste 300
10                                          Santa Ana, CA, 92707

11

12                        **Request for Special Notice**

13   Counsel to US Bank – Special Assets      Counsel for Diversified Pacific Opportunity Fund
     Randye B. Soref, Esq.                    Lance N. Jurich, Esq.
14   J. Alexandra Rhim, Esq.                  Loeb & Loeb LLP
     Buchalter Nemer, a PC                    10100 Santa Monica Blvd.
15   1000 Wilshire Blvd., Suite 1500          Suite 2200
     Los Angeles, CA 90017-2457               Los Angeles, CA 90067-4120
16
     Counsel for OneWest Bank/IndyMac Ventures LLC
17   David R. Krause-Leemon, Esq.             Counsel to First Bank
     John A. Moe, II, Esq.                    Steven Casselberry, Esq.
18   Luce, Forward, Hamilton & Scripps LLP    David J. Williams, Esq.
     601 S. Figueroa, Suite 3900             Michelman & Robinson, LLP
19   Los Angeles, CA 90017                    4 Hutton Centre Suite 300
                                              Santa Ana, CA 92707
20   Counsel to Wells Fargo Bank
     Marc Andrews                             Counsel for IMH Secured Loan Fund
21   Office of the General Counsel            Alisa C. Lacey, Esq.
     Wells Fargo & Co.                        Stinson Morrison Hecker LLP
22   21680 Gateway Center Drive               1850 N. Central Ave., Ste. 2100
     Suite 280                                Phoenix, AZ 85004-4584
23   Diamond Bar, CA 91765-2435
     (WFB 173122064-6171/SM)                  Counsel for Silar Advisors
24                                            Katherine M. Windler
                                              Bryan Cave, LLP
25                                            120 Broadway, Suite 300
                                              Santa Monica, CA 90401-2386
26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

73571-001\DOCS_LA:201839.1

## Miscellaneous:

<u>2:08-bk-21925-ER Lawrence Eugene Redman and Joy Ann Redman</u>
Type: bk                          Chapter: 11 i                    Office: 2 (Los Angeles)
Assets: y                         Judge: ER

### U.S. Bankruptcy Court

### Central District Of California

Notice of Electronic Filing

The following transaction was received from Stanley E Goldrich entered on 5/8/2009 at 4:58 PM PDT
and filed on 5/8/2009
**Case Name:**        Lawrence Eugene Redman and Joy Ann Redman
**Case Number:**      2:08-bk-21925-ER
**Document Number:** 21

**Docket Text:**
Status report *Redmans' Status Report Regarding Workout Negotiations and Request for Setting of
Further Status Conference Hearing* Filed by Joint Debtor Joy Ann Redman, Debtor Lawrence Eugene
Redman (RE: related document(s)Hearing Held (Bk Motion), [18] Status report). (Attachments: # (1)
Exhibit A) (Goldrich, Stanley)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\TEMP\Desktop\Redmans' Status Report re Workout
Negotiations, etc.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=5/8/2009] [FileNumber=25475700-0
] [574d76c447de1495512dd0d0bce9a83d1c29bf69008f98e1afd40d6982b61591945
7da31bf69a24f848617f7066fef5d45dcd68427e07309f5d76f487285bb43]]
**Document description:**Exhibit A
**Original filename:**C:\Documents and Settings\TEMP\Desktop\Exhibit A and POS.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=5/8/2009] [FileNumber=25475700-1
] [58fd938b92795d9441ef1aa4daf28c10201f603e46e6042d6cd886fefb0c2094c93
c96363788d9f89e1336ed1c01d58391d23ed1b8f2944b46b8954d1c3d339f]]

**2:08-bk-21925-ER Notice will be electronically mailed to:**

Marc Andrews on behalf of Creditor Wells Fargo Bank, National Association
sandra.g.mcmasters@wellsfargo.com

Stanley E Goldrich on behalf of Debtor Lawrence Redman
sgoldich@pszjlaw.com

David B Golubchik on behalf of Petitioning Creditor Integrated Financial Associates Inc
dbg@lnbrb.com

Sheri Kanesaka on behalf of Creditor First Bank
skanesaka@mrllp.com

Ron Maroko on behalf of U.S. Trustee United States Trustee (LA)
ron.maroko@usdoj.gov

Leonard M Shulman on behalf of Interested Party Courtesy NEF
lshulman@shbllp.com

Randye B. Soref on behalf of Creditor PFF BANK & TRUST
rsoref@buchalter.com, IFS_filing@buchalter.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

David J Williams on behalf of Creditor First Bank
dwilliams@mrllp.com

Katherine M Windler on behalf of Creditor Asset Resolution, LLC
katherine.windler@bryancave.com

**2:08-bk-21925-ER Notice will not be electronically mailed to:**

GE Money Bank
c/o Recovery Management Systems Corp
Ramesh Singh
25 SE 2nd Avenue Suite 1120
Miami, FL 33131-1605

Richard Pachulski on behalf of Debtor Lawrence Redman
10100 Santa Monica Bl Ste 1100
Los Angeles, CA 90067-4003

Steven H Winick on behalf of Petitioning Creditor Compass FP Corp
Four Embarcadero Ctr 17th Fl
San Francisco, CA 94111

# **EXHIBIT C**

1  Richard M. Pachulski (CA Bar No. 90073)
   Stanley E. Goldich (CA Bar No. 92659)
2  Pachulski Stang Ziehl & Jones LLP
3  10100 Santa Monica Boulevard, 11th Floor
   Los Angeles, California  90067-4100
4  Telephone: 310/277-6910
   Facsimile: 310/201-0760
5
6  Attorneys for Alleged Debtors

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10              LOS ANGELES DIVISION

11

| 12 | In re: | Case No.:  2:08-21925-ER |
| 13 | Redman, Lawrence Eugene and Redman, Joy Ann, | Involuntary Bankruptcy Case |
| 14 | Alleged Debtors. | **DECLARATION OF DANIEL LIMON RE GUARANTY AND DEFICIENCY CLAIMS IN SUPPORT OF REQUEST FOR FURTHER STATUS CONFERENCE HEARING** |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | Date:   May 21, 2009 Time:  11:00 a.m. Place:  Courtroom 1568 |
| 19 | | Edward R. Roybal Federal Bldg. |
| 20 | | 255 East Temple Street Los Angeles, CA  90012 |
| 21 | | Judge: Honorable Ernest M. Robles |

22         **I, Daniel Limon, do declare and state as follows:**
23

24         1.      Since June, 2006 I have been employed as the acting chief financial officer, and chief
25  financial officer ("CFO"), of Fiesta Development, Inc. ("Fiesta").  Before joining Fiesta, I worked
26  for approximately 12 years reviewing and managing commercial real estate loans for various
27  commercial real estate banks in Southern California.  The matters stated herein are within my
28  personal knowledge and, if called as a witness, I could and would testify thereto.

*PACHULSKI STANG ZIEHL & JONES LLP*
*ATTORNEYS AT LAW*
*LOS ANGELES, CALIFORNIA*

2.      As part of my duties as CFO of Fiesta, I oversee both its financial operations and those of certain entities affiliated with Fiesta's principals, including: R&R Land Investors, LLC, Ten-Ninety, Ltd., R&D Land Investors, LLC, Ashby Financial Company, Inc., Fiesta Terra Vista Development, LLC, and Fiesta Terra Vista Development II, LLC (collectively with Fiesta, the "Borrower Entities").  As part of my duties, I am also familiar with the real estate development projects now and formerly owned by the Borrower Entities (collectively, "Projects") and with the practices of the Borrower Entities with respect to the preparation and maintenance of books and accounting records related to the Projects (collectively, "Project Books and Records").  The Project Books and Records were prepared in the regular course of business of the Borrower Entities as part of their regularly conducted business activities by or from information transmitted by persons with knowledge of the contents thereof.

3.      The Project Books and Records include records of loans made to the Borrower Entities, including the identities of the Projects, the Borrower Entities, and the Lenders therefor, as well as the balances due on such loans and the approximate values of the real estate secured by deeds of trust for such loans, the latter being based upon appraisals of the real property collateral performed by the relevant lenders and the Borrower Entities.  I have reviewed the Project Books and Records and have prepared a chart containing a summary of such information which is submitted herewith as Exhibit 1.

4.      Exhibit 1 contains the following information which is based upon my review of the Project Books and Records:  (a) first column: under the heading, "Project", the informal name of the Project; (b) second column: under the heading "Borrower/Entities", the name of the Borrower Entity which is the obligor under the loan for the Project; (c) third column: under the heading "Lender", the name of the lender on the Project; (d) fourth column: under the heading "Loan Balances As of 12/31/2008", the balance of principal and interest due under the Project loan as of December 31, 2008; (e) fifth column: under the heading "Estimated Value of Collateral/Foreclosure Bid", the estimated value of the real property collateral or, where foreclosure sales have occurred, the foreclosure bid; (f) sixth column:

1    under the heading "Estimated Deficiency Claim", the estimated amount of the Lender's

2    claim under the guarantees given for the loans listed under the second, third and fourth

3    columns.

4

5         I declare under penalty of perjury that the foregoing is true and correct.

6    Executed on May 18, 2009

7

8    _____
     DANIEL LIMON

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# __EXHIBIT 1__

# SUMMARY OF LOANS GUARANTEED BY LAWRENCE REDMAN,
## DEFICIENCY AMOUNTS AND SETTLEMENT PERCENTAGES AS OF 12/31/08

| PROJECT | BORROWER / ENTITIES | LENDER | LOAN BALANCES (1,2) AS OF 12/31/2008 | ESTIMATED VALUE OF COLLATERAL/ FORECLOSURE BID | ESTIMATED DEFICIENCY CLAIM |
|---|---|---|---|---|---|
| Coachella | R&R Land Investors | IMH | $ 37,714,292 | $ 9,070,000 | $ (28,644,292) |
| Kaiser / Quarry | Ten-Ninety, Ltd | Compass/Silar | $ 11,332,576 | $ 2,250,000 | $ (9,082,576) |
| ** Property was foreclosed on 2/13/08 and credit bid was $2,250,000 total for the two properties. | | | | | |
| Pierce | Fiesta Development | Compass/Silar | $ 9,717,261 | $ 682,500 | $ (9,034,761) |
| | | Total for Compass/Silar | $ 21,049,837 | $ 2,932,500 | $ (18,117,337) |
| MCR/Ballard | Fiesta Development | Diversified Pacific | $ 9,471,665 | $ 1,512,000 | $ (7,959,665) |
| Evergreen Estates and Line of Credit | Fiesta Development | PFF Bank | $ 18,495,655 | $ 6,839,460 | $ (11,656,195) |
| Beaumont | Fiesta Development | IFA | $ 12,581,579 | $ 2,000,000 | $ (10,581,579) |
| ** Property was foreclosed on 7/2/08 and credit bid was $2,000,000. | | | | | |
| Country View | Fiesta Development | Indymac Ventures, LLC | $ 4,794,370 | $ 3,825,000 | $ (969,370) |
| ADP Project | Fiesta, R&D, Ashby Fin. | Indymac Ventures, LLC | $ 29,764,303 | $ 4,291,000 | $ (25,473,303) |
| | | Total for Indymac Ventures, LLC | $ 34,558,673 | $ 8,116,000 | $ (26,442,673) |
| Cimarron Ridge | Fiesta Terra Vista | Bank Midwest | $ 24,436,391 | $ 10,160,000 | $ (14,276,391) |
| ** Property was foreclosed on 5/28/08 and credit bid was $10,160,000. | | | | | |
| Bundy Canyon | Fiesta Terra Vista II | First Bank/ FB Holdings | $ 7,579,787 | $ 1,700,000 | $ (5,879,787) |
| ** Property was foreclosed on 12/03/08 and credit bid was $1,700,000. | | | | | |
| Talavera | Ashby Financial Company | Gray1 CPB, LLC | $ 5,340,852 | $ 1,211,000 | $ (4,129,852) |
| Standby Letter of Credit | Ashby Financial Company | Central Pacific | $ 705,351 | $ - | $ (705,351) |
| | | **TOTALS** | $ 171,934,081 | $ 43,540,960 | $ (128,393,121) |

**NOTES:**

1) Loan balance amounts are estimated as of 12/31/08 for purposes of consistency, including loans of IFA and Central Pacific Bank where the full settlement payments were made prior thereto.  Updated balances are not available from all of the lenders.

2) There may be additional late fees and other charges not included in the loan balances.

3) This Schedule does not include approximately $1.3 million in bond obligations guaranteed by Mr. Redman. It is not known at this time whether there will be any liability to Mr. Redman on the bond guarantees.

| In re:<br>Redman, Lawrence Eugene and Redman, Joy Ann,<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER: 2:08-21925-ER |
| --- | --- |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 11th Floor, Los Angeles, CA  90067**

The foregoing document described ***DECLARATION OF DANIEL LIMON RE GUARANTY AND DEFICIENCY CLAIMS IN SUPPORT OF REQUEST FOR FURTHER STATUS CONFERENCE HEARING*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 18, 2009** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **May 18, 2009** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☒  Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 18, 2009** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

Honorable Ernest M. Robles
United States Bankruptcy Court
255 E. Temple Street, Suite 1560
Los Angeles, CA 90012

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 18, 2009 | Myra Kulick | /s/ Myra Kulick |
| --- | --- | --- |
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                          **F 9013-3.1**

| In re:<br>Redman, Lawrence Eugene and Redman, Joy Ann,<br><br>                              Debtor(s). | CHAPTER 11<br><br>CASE NUMBER: 2:08-21925-ER |
| --- | --- |

**2:08-bk-21925-ER Notice will be electronically mailed to:**

Marc Andrews on behalf of Creditor Wells Fargo Bank, National Association
sandra.g.mcmasters@wellsfargo.com

Stanley E Goldich on behalf of Debtor Lawrence Redman
sgoldich@pszjlaw.com

David B Golubchik on behalf of Petitioning Creditor Integrated Financial Associates Inc
dbg@lnbrb.com

Sheri Kanesaka on behalf of Creditor First Bank
skanesaka@mrllp.com

Ron Maroko on behalf of U.S. Trustee United States Trustee (LA)
ron.maroko@usdoj.gov

Leonard M Shulman on behalf of Interested Party Courtesy NEF
lshulman@shbllp.com

Randye B. Soref on behalf of Creditor PFF BANK & TRUST
rsoref@buchalter.com, IFS_filing@buchalter.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

David J Williams on behalf of Creditor First Bank
dwilliams@mrllp.com

Katherine M Windler on behalf of Creditor Asset Resolution, LLC
katherine.windler@bryancave.com

**Notice will be mailed to:**

**U.S. Trustee**
Ernst & Young Plaza
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017

**Counsel to Petitioners Beaumont Partners, L.P., a Nevada L.P.; Compass FP Corp.,a Delaware corporation; and Marcella Signorelli, an individual**
David B. Golubchick, Esq.
Levene, Neale, Bender, Rankin & Brill
10250 Constellation Blvd., Suite 1700
Los Angeles, CA 90067

**Counsel to Petitioner Compass FP Corp., a Delaware corporation**
Ori Katz
Steven Winick
Sheppard Mullin Richter & Hampton
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111

**Counsel to First Bank**
Steven Casselberry
Michelman & Robinson
4 Hutton Centre Dr Ste 300
Santa Ana, CA, 92707

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                    **F 9013-3.1**

**Counsel to IMH**
Alisa C. Lacey
Stinson Morrison Hecker LLP
1850 North Central Avenue, Suite 2100
Phoenix, AZ 85004

**Request for Special Notice**

Counsel to US Bank – Special Assets
Randye B. Soref, Esq.
J. Alexandra Rhim, Esq.
Buchalter Nemer, a PC
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA 90017-2457
*Email: rsoref@buchalter.com*
          *arhim@buchalter.com*

Counsel for IndyMac Venture LLC
David R. Krause-Leemon, Esq.
John A. Moe, II, Esq.
Luce, Forward, Hamilton & Scripps LLP
601 S. Figueroa, Suite 3900
Los Angeles, CA 90017
*Email: dkrause-leemon@luce.com*
          *jmoe@luce.com*

Counsel to First Bank
Steven Casselberry, Esq.
David J. Williams, Esq.
Michelman & Robinson, LLP
4 Hutton Centre Suite 300
Santa Ana, CA 92707
*Email: scasselberry@mdlp.com*

Counsel for IMH Secured Loan Fund
Alisa C. Lacey, Esq.
Stinson Morrison Hecker LLP
1850 N. Central Ave., Ste. 2100
Phoenix, AZ 85004-4584

Counsel for Silar Advisors
Katherine M. Windler
Bryan Cave, LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
*Email: katherine.windler@bryancave.com*

Counsel to Wells Fargo Bank
Marc Andrews
Office of the General Counsel
Wells Fargo & Co.
21680 Gateway Center Drive, Suite 280
Diamond Bar, CA 91765-2435
(WFB 173122064-6171/SM)

Counsel for Diversified Pacific Opportunity Fund
Lance N. Jurich, Esq.
Loeb & Loeb LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067-4120
*Email: ljurich@loeb.com*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                      **F 9013-3.1**

<table>
<tr><td>In re:<br>Redman, Lawrence Eugene and Redman, Joy Ann,<br><br>                                            Debtor(s).</td><td>CHAPTER 11<br><br>CASE NUMBER: 2:08-21925-ER</td></tr>
</table>

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 11ᵗʰ Floor, Los Angeles, CA  90067**

The foregoing document described ***OPPOSITION OF LARRY AND JOY REDMAN TO FB HOLDINGS, LLC'S MOTION TO DISMISS INVOLUNTARY CASE PURSUANT TO §§ 303 AND 305*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 10, 2009** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

                                                      ☒ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **June 10, 2009** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge* __*will be*__ *completed no later than 24 hours after the document is filed.*

                                                      ☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 10, 2009** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge* __*will be*__ *completed no later than 24 hours after the document is filed.*

Hand Delivery
Honorable Ernest M. Robles
United States Bankruptcy Court
255 E. Temple Street, Suite 1560
Los Angeles, CA 90012                                     ☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 10, 2009 | Myra Kulick | /s/ Myra Kulick |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
73571-001\DOCS_LA:203510.1

**F 9013-3.1**

| In re:<br>Redman, Lawrence Eugene and Redman, Joy Ann,<br><div align="right">Debtor(s).</div> | CHAPTER 11<br><br>CASE NUMBER: 2:08-21925-ER |
| --- | --- |

**2:08-bk-21925-ER Notice will be electronically mailed to:**

Marc Andrews on behalf of Creditor Wells Fargo Bank, National Association
sandra.g.mcmasters@wellsfargo.com

Stanley E Goldich on behalf of Debtor Lawrence Redman
sgoldich@pszjlaw.com

David B Golubchik on behalf of Petitioning Creditor Integrated Financial Associates Inc
dbg@lnbrb.com

Sheri Kanesaka on behalf of Creditor First Bank
skanesaka@mrllp.com

Ron Maroko on behalf of U.S. Trustee United States Trustee (LA)
ron.maroko@usdoj.gov

Leonard M Shulman on behalf of Interested Party Courtesy NEF
lshulman@shbllp.com

Randye B. Soref on behalf of Creditor PFF BANK & TRUST
rsoref@buchalter.com, IFS_filing@buchalter.com

Derrick Talerico on behalf of Creditor Diversified Pacific Opportunity Fund I, LLC
dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

David J Williams on behalf of Creditor First Bank
dwilliams@mrllp.com

Katherine M Windler on behalf of Creditor Asset Resolution, LLC
katherine.windler@bryancave.com

**Notice will be emailed to:**

Steven Casselberry, Esq.
*Email:  scasselberry@mrllp.com*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re:<br>Redman, Lawrence Eugene and Redman, Joy Ann,<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER: 2:08-21925-ER |
|---|---|

**Notice will be mailed to**:

**U.S. Trustee**
Ernst & Young Plaza
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017

**Counsel to Petitioners Beaumont Partners,
L.P., a Nevada L.P.; Compass FP Corp.,a**
Delaware corporation; and Marcella Signorelli, an
individual
David B. Golubchick, Esq.
Levene, Neale, Bender, Rankin & Brill
10250 Constellation Blvd., Suite 1700
Los Angeles, CA 90067

Counsel to Petitioner Compass FP Corp., a
Delaware corporation
Ori Katz
Steven Winick
Sheppard Mullin Richter & Hampton
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111

**Request for Special Notice**

Counsel to US Bank – Special Assets
Randye B. Soref, Esq.
J. Alexandra Rhim, Esq.
Buchalter Nemer, a PC
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA 90017-2457

Counsel for IndyMac Venture LLC
David R. Krause-Leemon, Esq.
John A. Moe, II, Esq.
Luce, Forward, Hamilton & Scripps LLP
601 S. Figueroa, Suite 3900
Los Angeles, CA 90017

Counsel to First Bank
Steven Casselberry, Esq.
David J. Williams, Esq.
Michelman & Robinson, LLP
4 Hutton Centre Suite 300
Santa Ana, CA 92707

Counsel for IMH Secured Loan Fund
Alisa C. Lacey, Esq.
Stinson Morrison Hecker LLP
1850 N. Central Ave., Ste. 2100
Phoenix, AZ 85004-4584

Counsel for Silar Advisors
Katherine M. Windler
Bryan Cave, LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

Counsel to Wells Fargo Bank
Marc Andrews
Office of the General Counsel
Wells Fargo & Co.
21680 Gateway Center Drive, Suite 280
Diamond Bar, CA 91765-2435
(WFB 173122064-6171/SM)

Counsel for Diversified Pacific Opportunity Fund
Lance N. Jurich, Esq.
Loeb & Loeb LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067-4120

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
73571-001\DOCS_LA:203510.1

**F 9013-3.1**