1 | Richard M. Pachulski (CA Bar No. 90073)
Stanley E. Goldich (CA Bar No. 92659)
2 | Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard, 11th Floor
3 | Los Angeles, California  90067-4100
Telephone: 310/277-6910
4 | Facsimile:  310/201-0760

5 | [Proposed] Attorneys for Debtors and Debtors in
Possession

6

7

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **LOS ANGELES DIVISION**

11 | In re:

12 | Lawrence Eugene Redman and Joy Ann Redman,

13 | Debtors.

Case No.:  2:08-21925-ER

Ch. 11

**DEBTORS' NOTICE OF MOTION AND MOTION SEEKING APPROVAL OF THE SETTLEMENT AGREEMENT WITH CHAPTER 11 TRUSTEE OF USA INVESTMENT PARTNERS, LLC; DECLARATION OF LAWRENCE E. REDMAN IN SUPPORT THEREOF**

[No Hearing Required per Local Bankruptcy Rule 9013-1(o)]

20 | **TO THE HONORABLE ERNEST ROBLES, UNITED STATES BANKRUPTCY JUDGE,**

21 | **ALL CREDITORS, PARTIES THAT HAVE FILED REQUESTS FOR SPECIAL NOTICE,**

22 | **AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

23 | **PLEASE TAKE NOTICE** that Lawrence Eugene Redman ("Redman") and Joy Ann

24 | Redman, debtors and debtors in possession (the "Debtors" or the "Redmans") in the above-captioned

25 | case (the "Case"), hereby move the Court (the "Motion"), pursuant to Rule 9019 of the Federal

26 | Rules of Bankruptcy Procedure ("Bankruptcy Rules"), for an order approving that certain Settlement

27 | Agreement And Release Of Claims (the "Settlement Agreement") by and between the Redmans (and

28 | other parties) on the one hand, and Lisa M. Poulin ("Poulin"), the chapter 11 trustee for USA

1    Investment Partners, LLC ("USAIP") on the other hand.

2        As described further in the Motion and Exhibits thereto, the Settlement Agreement does not

3    primarily involve Redman's individual interests except with respect to 1 of over 50 proofs of claims

4    against USAIP, involving the same basis as certain of the proofs of claims of other parties.  The

5    settlement primarily involves proofs of claims filed against USAIP by Fiesta Development, Inc.

6    ("Fiesta") and other homebuilding entities of Redman and his business partner Richard Ashby and

7    other parties with ownership interests in these entities and an adversary action of Poulin filed against

8    Richard Ashby, Deena Ashby, Fiesta and Ashby Financial.   Redman has a 60% interest in Jabral

9    Investments, LLC ("Jabral") which filed 7 of the proofs of claims against USAIP, however these

10   claims relate to claims involving loans where Jabral has no recourse liability or capital contribution

11   claims relating to the homebuilding entities which are now valueless.

12       Under the terms of the Settlement Agreement that has been approved by the USAIP

13   bankruptcy court, Redman's claim against USAIP in the approximate amount of $6.77 million as of

14   April 3, 2007 based on breaches of USAIP under the Capital Land Investors, LLC operating

15   agreement, misrepresentation, fraud and other grounds will be allowed in the amount of $3.0 million.

16   The Debtors believe this settlement is fair and reasonable under the circumstances and will avoid the

17   time, cost and expense of litigating Redman's claim against USAIP that likely would substantially

18   exceed any recovery of Redman against the USAIP estate.  Poulin and her counsel presently estimate

19   that the distribution to creditors of USAIP will be at most 1-2%.

20       **PLEASE TAKE FURTHER NOTICE** that the Motion is based on the attached

21   Memorandum of Points and Authorities and Declaration of Lawrence E. Redman, the arguments of

22   counsel, and any other admissible evidence properly brought before the Court.  In addition, the

23   Debtors request that the Court take judicial notice of all documents filed with the Court in this Case.

24       **PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9013-1(o)(1) requires

25   that any response to the Motion and request for hearing shall be filed with the Bankruptcy Court and

26   served upon the United States Trustee and counsel for the Debtors at the address appearing on the

27   upper-left hand corner of the caption page to this Motion within fourteen (14) days after the date of

28   service of the Motion**.**  Pursuant to Local Bankruptcy Rule 9013-1(h), the failure to timely file and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  serve written opposition may be deemed by the Court to be consent to the granting of the relief

2  requested in the Motion.

3       **WHEREFORE**, the Debtors respectfully request that the Court enter an order (a) approving

4  the Settlement Agreement; and (b) granting such other and further relief as is just and proper under

5  the circumstances.

6

7  Dated:    January 4, 2010          PACHULSKI STANG ZIEHL & JONES LLP

8                      By    */s/ Stanley E. Goldich*

9                               Richard M. Pachulski
                             Stanley E. Goldich

10                               [Proposed] Attorneys for Debtors and
                             Debtors in Possession

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

<div style="text-align:left; writing-mode: vertical;">PACHULSKI STANG ZIEHL & JONES LLP<br>ATTORNEYS AT LAW<br>LOS ANGELES, CALIFORNIA</div>

## MEMORANDUM OF POINTS AND AUTHORITIES

By this Motion, Lawrence Eugene Redman ("Redman") and Joy Ann Redman, debtors and debtors in possession (the "Debtors" or the "Redmans") in the above-captioned case (the "Case"), hereby move the Court (the "Motion"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), for an order approving that certain Settlement Agreement And Release Of Claims (the "Settlement Agreement") by and between the Redman (and other parties) on the one hand, and Lisa M. Poulin, the chapter 11 trustee ("Poulin") for USA Investment Partners, LLC ("USAIP") on the other hand.  For the reasons set forth below, including that there is an estimated payout of at most 1 2% in USAIP's chapter 11 case and therefore the cost and risk of litigation far outweigh the potential benefits, approval of the Settlement Agreement is in the best interests of the Debtors' estate (the "Estate").  A copy of the Settlement Agreement is attached hereto as **Exhibit A**.

## I.

## FACTS

### A.    Background re Redman's Homebuilding Businesses and Real Estate Entities

For over the past 30 years, Redman and his business partner, Richard Ashby ("Ashby" or "Richard Ashby") have operated and been principals of home building real estate entities, including, inter alia, Fiesta Development, Inc. ("Fiesta"), R& R Land Investors, LLC, Ten Ninety, Ltd. ("Ten-Ninety"), and Fiesta Terra Vista Development, LLC, and Fiesta Terra Vista Development II, LLC (collectively, with Ashby Financial Company, Inc. the "Borrower Entities"). Redman and Ashby each own a 50% interest in Fiesta and the Fiesta Terra entities. Richard Ashby is a principal of certain other home building real estate entities, including Ashby Financial Company, Inc. ("AFC"), Ashby Development Company, Inc., Ashby USA, LLC and Butterfield Development Company, LLC which Redman does not own or operate. The development activities and projects of the Borrower Entities are located in California in Orange, San Bernardino and Riverside Counties. Redman also has or had interests in other real estate entities, held thru Fiesta or Jabral Investments, LLC, that do not involve loans by Redman, including Buffalo Land Company, Inc. ("Buffalo Land"), Capital Land Investors, LLC ("Capital Land"), Oak Mesa Investors, LLC ("Oak Mesa") and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Random Developments, LLC ("Random Developments").[1]

2        Redman, Richard Ashby and William Ashby, Richard Ashby's brother, each hold a 1/3

3    beneficial interest in Ten-Ninety that owns a tax increment asset that is one of the two primary

4    remaining assets of Redman following the dramatic declines in the values of the real estate interests

5    of the Borrower Entities that rendered them valueless and resulted in loan deficiencies in the

6    estimated amount of approximately $130 million as of the August 4, 2008 Petition Date. Redman's

7    interest in Ten-Ninety is held thru a one-third (1/3) interest in Creative Communities, Inc., the

8    managing general partner of Ten-Ninety which also holds a 40% limited partnership interest, and his

9    ownership interest in General Specifics Corporation which holds a 20% limited partnership interest

10   in Ten-Ninety.

11        Redman and Ashby, and in some cases the wives of Redman and Ashby or their living trusts,

12   guaranteed a number of the loans of the Borrower Entities (the "Guaranteed Loans").

13        As with homebuilders throughout the United States the real estate assets of the homebuilding

14   entities of Redman and Ashby began to decline precipitously in 2007.

15        In December 2007, Poulin, the chapter 11 trustee of USAIP, filed a chapter 11 for Capital

16   Land in Nevada, Case No.: 07-18099-lbr, to provide an opportunity for additional efforts to market

17   and realize value from the sale of Capital Land's "Stoneridge Property", an approximately 687-acre

18   development project in Perris, California with planned development for approximately 2,200 lots

19   Following unsuccessful efforts of Capital Land and Poulin to market and sell the Stoneridge

20   Property due to the collapse of the real estate market, relief from stay was granted to the lender

21   Compass Financial which foreclosed on the Stoneridge Property rendering Capital Land and

22   Random valueless and the Capital Land bankruptcy was dismissed in July 2008.

23

24   ----

[1]   Fiesta owns a 50% interest in Buffalo Land and Random Developments and Jabral owns a 25% interest in
25   Capital Land Investors and Oak Mesa. USA Investment Partners, LLC, a chapter 11 debtor case in Nevada,
     Case No.: 07-11821-LBR, where Poulin is the chapter 11 Trustee, holds a 50% interest in each of the entities
26   and trusts of four (4) children of Richard Ashby each own 6.25% of Capital Land and Oak Mesa. Bankruptcy
     filings of Capital Land in December 2007 (filed by Poulin) and Oak Mesa and Buffalo Land in January 2008
27   were dismissed in June and July 2008 following extensive efforts of the entities and Poulin to market and sell
     the real properties of the entities that were not successful due to the collapse of the real estate market and
     granting of relief from stay to the lender Compass FP Corp. The underlying real estate assets of all of the
28   entities are now valueless.

In January 2008, Oak Mesa and Buffalo Land filed chapter 11 cases in Nevada, Case Nos:
BK-S-08-10397-LBR and BK-S-08-10398-LBR, to provide an opportunity for additional efforts to
market and realize value from the sale of the "Oak Mesa Property", approximately 1,500 acres in
Calimesa, California approved for up to 3,450 residential units.  Following unsuccessful efforts of
Oak Mesa, Buffalo Land and Poulin to market and sell the Oak Mesa Property due to the collapse of
the real estate market, relief from stay was granted to the lender Compass Financial based on a lack
of any equity rendering Oak Mesa and Buffalo Land valueless and the Oak Mesa and Buffalo Land
chapter 11 cases were dismissed in June 2008.

**B.**    **Involuntary Filing and Subsequent Negotiations and Events Regarding Loan
Guarantee Claims Against the Debtors**

As a result of the severe downturn in the homebuilding industry and the precipitous decline
in real estate values throughout the United States, beginning in 2007 and continuing into 2008, real
estate owned by Redman and his business partner Richard Ashby through their homebuilding
business entities suffered a dramatic decline in value that rendered their equity interests valueless
and resulted in large loan deficiencies. During the time period August 2007 - January 2008 lawsuits
on guarantees of Redman and Richard Ashby of certain loans and a line of credit of their business
entities that were in default were filed by Compass FP Corp ("Compass"), IndyMac Bank
("IndyMac") and PFF Bank & Trust ("PFF").

Beginning in April 2008, Redman began compiling updated personal financial information
for workout negotiations with respect to loan guarantees of the Redmans or their living trust
involving approximately 10 lender parties and estimated deficiencies in excess of $100 million,
including Compass, IndyMac and PFF. Beginning in May and June 2008, the Redmans initiated
global workout negotiations with a number of lenders relating to loans guaranteed by the Redmans
and/or their living trust.

On the August 4, 2008 (the "Petition Date"), four petitioning creditors (collectively, the
"Petitioning Creditors") filed an involuntary chapter 11 petition [Docket Number 1] (the
"Involuntary Petition") against the Debtors.

On August 22, 2008, the Redmans and Petitioning Creditors filed a stipulation with the Court

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  seeking an open extension of time for the Debtors to answer the Involuntary Petition and a stay of

2  adjudication of the involuntary case to provide a further opportunity for ongoing workout

3  negotiations with respect to approximately ten (10) guarantee claims.  [Docket Number 6][2].  On

4  August 29, 2008, this Court entered an Order approving the stipulation [Docket Number 10].

5  During the next fifteen (15) months after the Petition Date, the Redmans consummated a

6  prior settlement with one guarantee creditor (IFA) and entered into settlements with seven (7)

7  additional guarantee creditors with estimated deficiency claims as of the Petition Date totaling

8  approximately $85 million (including IFA) of the total guarantee claims of approximately $130

9  million.  Pursuant to the eight (8) settlements, $1.94 million was paid by the Redmans and additional

10  settlement payments in the principal amount of $2.3 million are still owed to three (3) of the settling

11  parties.  The Redmans intend to implement all of the settlements on a final basis in this Case.  The

12  Redmans also paid certain undisputed scheduled claims in the ordinary course of business as

13  permitted by 11 U.S.C. § 303(f).

14  Subsequent to the Involuntary Petition, the Court held status conferences on October 8, 2008,

15  December 12, 2008, and May 21, 2009 and required the Debtors to file Status Reports in order to

16  monitor the status of the Case and the Debtors' progress in negotiations to settle guarantee claims of

17  the lender parties.  On November 18, 2009, based on the consent of the Redmans, the Court entered

18  an Order for Relief in this Case [Docket No. 55].

19  No trustee, examiner, or committee has been appointed in this Case.  This is a core

20  proceeding pursuant to 28 U.S.C. § 157(b)(2).  The venue is proper pursuant to 28 U.S.C. §§ 1408

21  and 1409.

22  **C.      USAIP**

23  On April 4, 2007, certain parties filed an involuntary chapter 11 petition in the United States

24  Bankruptcy Court, District of Nevada, against USAIP, thereby commencing bankruptcy case number

25  07-11821-LBR (the "USAIP Bankruptcy Case").  Two days after the commencement of the USAIP

26  Bankruptcy Case, on April 6, 2007, the Court appointed Poulin as USAIP's interim chapter 11

27

28
_____

[2] Based on a sale of a portion of the guarantee claims of one lender party there are presently 11 scheduled creditors with guarantee claims, excluding Redman's guarantee of certain bonds involving a potential claim of approximately $3.6 million.

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law
Los Angeles, California

1    trustee.  Thereafter, on May 9, 2007, an order for relief was entered in the USAIP Bankruptcy Case,

2    with Trustee becoming USAIP's permanent chapter 11 trustee.

3    **D.    The Redman Proof of Claim**

4    On or about September 10, 2007, Redman filed proof of claim no. 90 in the USAIP

5    Bankruptcy Case for Redman's claim against USAIP in the approximate amount of $6.77 million as

6    of April 3, 2007 based on breaches of USAIP under the Capital Land operating agreement,

7    misrepresentation, fraud and other grounds (the "Proof of Claim").  A copy of the Proof of Claim is

8    attached hereto as **Exhibit B**.

9    **E.    Settlement Agreement**

10    In order to minimize the cost and expense of litigation, as well as the extensive time that

11    must be dedicated to litigating the Proof of Claim, and in view of the risk inherent in proceeding

12    with the litigation, Redman and the Trustee have engaged in settlement negotiations to resolve their

13    disputes. These settlement discussions, which have been at arms-length and in good faith, have

14    culminated in the Settlement Agreement.

15    The Settlement Agreement is between the Trustee, on the one hand, and Richard K. Ashby,

16    Deanna G. Ashby, Ashby Financial Company, Inc., the Richard Craig Ashby Irrevocable Trust, the

17    Deirdre Ashby Irrevocable Trust, the Bradley Ashby Irrevocable Trust, the Justin Ashby Irrevocable

18    Trust, Jabral Investments, LLC, Ashby Development Company, Inc., Butterfield Development

19    Company, Inc., Ashby USA, LLC, Fiesta Development Company, Inc., Random Developments,

20    LLC, the Lucas Family Trust, Ten-Ninety, Ltd. Oak Mesa Investors, LLC, and Redman on the other

21    hand.  The only portion of the Settlement Agreement relevant to Redman are the provisions relating

22    to the settlement of Redman's Proof of Claim.

23    The Settlement Agreement does not primarily involve Redman's individual interests except

24    with respect to 1 of over 50 proofs of claims against USAIP, involving the same basis as certain of

25    the proofs of claims of other parties.  The settlement primarily involves proofs of claims filed against

26    USAIP by Fiesta and other homebuilding entities of Redman and his business partner Richard Ashby

27    and other parties with ownership interests in these entities and an adversary action of Poulin filed

28    against Richard Ashby, Deena Ashby, Fiesta Development and Ashby Financial. Redman has a 60%

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    interest in Jabral which filed 7 of the proofs of claims against USAIP, however these claims relate to

2    claims involving loans where Jabral has no recourse liability or capital contribution claims relating

3    to the homebuilding entities which are now valueless.

4         As more fully set forth in the Proof of Claim, Redman's claim against USAIP is based on his

5    potential guarantee exposure with respect to a loan obligation in the principal amount of $4.15

6    million that is alleged to be an obligation of USAIP and misrepresentations and fraud with respect to

7    Redman's guarantee of the loan.

8         Poulin has alleged defenses to Redman's proof of claim, including that the same claim was

9    also asserted by other parties. In addition, Redman has defenses to his liability on the guarantee of

10   the subject loan, including, without limitation, misrepresentations and fraud relating thereto.

11        The relevant terms of the Settlement Agreement are summarized as follows[3]:

12        a.    Redman shall have an allowed general unsecured claim in the USAIP

13   Bankruptcy Case in the sum of $3,000,000, which allowed general unsecured claim shall be treated

14   and paid through a confirmed plan of reorganization consistent with all other allowed general

15   unsecured claims filed in the USAIP Bankruptcy Case.

16        b.    In return for Redman's $3,000,000 allowed general unsecured claim, Redman

17   forever releases and discharges any and all claims, causes of action, demands, liabilities, obligations,

18   rights, injuries, expenses, damages, and losses, whether known or unknown, contingent or non-

19   contingent, patent or latent, which Redman, now has, may now claim to have, or may hereinafter

20   claim to have against USAIP or Poulin, including their officers, directors, employees, agents,

21   attorneys, partners, members, representatives, shareholders, insurers, successors, and assigns.

22        The Debtors believe this settlement is fair and reasonable under the circumstances and will

23   avoid the time, cost and expense of litigating Redman's claim against USAIP that likely would

24   substantially exceed any recovery of Redman against the USAIP estate.  Poulin and her counsel

25   presently estimate that the distribution to creditors of USAIP will be at most 1-2%.

26

27

28

---

[3] The summary contained herein is a summary only, and if and to the extent there is any inconsistency between the summary and the Settlement Agreement, the terms of the latter govern.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**F.    Court Approval of the Settlement Agreement in the USAIP Bankruptcy**

On November 19, 2009, Poulin filed a motion (the "USAIP Settlement Motion") for court approval of the Settlement Agreement in the USAIP Bankruptcy.  At a hearing on December 18, 2009, the court approved the USAIP Settlement Motion.  The order approving the USAIP Settlement Motion was entered on January 4, 2010.  A copy of the USAIP Settlement Motion (without exhibits) is attached hereto as **Exhibit C**.

## II.

## ARGUMENT

**A.    Standard for Approval of Settlements**

Federal Rule of Bankruptcy Procedure 9019(a) provides,

> On motion by the trustee and after hearing on notice to creditors, the debtor and indenture trustees as provided in Rule 2002(a) and to such other entities as the court may designate, the court may approve a compromise or settlement.

> all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated.  Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.

*Id.*  The court further held in *TMT Trailer* that compromises reached during the course of insolvency proceedings must be "fair and reasonable."  390 U.S. at 424.  Significantly, the court stated that "[b]asic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation." *Id.*

In determining whether the proposed settlement is fair and equitable, two principles should guide this Court.  First, "[c]ompromises are favored in bankruptcy," 10 Lawrence P. King, *Collier on Bankruptcy*, ¶ 9019.01, at 9019-2 (15th ed. rev. 1997) (citing *In re Sassalos,* 160 B.R. 646, 653 (D. Ore. 1993)), and are "a normal part of the reorganization process." *Anderson*, 390 U.S. at 424, 88 S.Ct. at 1163 (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130, 60 S.Ct. 1, 14 (1939)); *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986) ("The law favors compromise and not litigation for its own sake…."); *Michael*, 183 B.R. at 232 (Bankr. D. Mont. 1995) ("[I]t is

1    also well established that the law favors compromise."); *Best Products*, 16 B.R. at 50; *Nellis v.*

2    *Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) (Court recognizes "the general rule that settlements are

3    favored….").

4        Second, settlements should be approved if they fall above the lowest point on the continuum

5    of reasonableness.  "[The] responsibility of the bankruptcy judge . . . is not to decide the numerous

6    questions of law and fact raised by the appellants but rather to canvass the issues and see whether the

7    settlement fall[s] below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699

8    F.2d 599, 608 (2d Cir. 1983); *In re Planned Protective Servs., Inc.,* 130 B.R. 94, 99 n.7 (Bankr. C.D.

9    Cal. 1991).  *See generally In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976) (Court should not conduct a

10    "mini-trial" on the merits of a proposed settlement).  Thus, the question is not whether a better

11    settlement might have been achieved or a better result reached if litigation pursued.  Instead, the

12    court should approve settlements that meet a minimal threshold of reasonableness. *Nellis*, 165 B.R.

13    at 123; *In re Tech. for Energy Corp.*, 56 B.R. 307, 311-312 (Bankr. E.D. Tenn. 1985); *In re Mobile*

14    *Air Drilling Co., Inc.*, 53 B.R. 605, 608 (Bankr. N.D. Ohio 1985); 10 *Collier on Bankruptcy*

15    ¶ 9019.02, at 9019-4.

16        The Ninth Circuit Court of Appeals has held that the determination of whether a proposed

17    settlement agreement meets the requisite standards of fairness, equity and reasonableness, is a

18    function of several factors:  (a) the probability of success in the litigation; (b)  the difficulties, if any,

19    to be encountered in the matter of collection; (c) complexity of the litigation involved, and the

20    expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of creditors

21    and a proper deference to their reasonable views.  *See Martin v. Kane (In re A&C Properties)*, 784

22    F.2d 1377, 1381 (9th Cir.), *cert. denied sub nom., Martin v. Robinson*, 479 U.S. 854 (1986); *accord*

23    *Woodson v. Fireman's Fund Insur. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988); *In re*

24    *MGS Marketing*, 111 B.R. 264, 267 (B.A.P. 9th Cir. 1990).

25    **B.    Application to the Settlement**

26        1.    Probability of Success in Litigation

27        By entering into the Settlement Agreement, the Debtors eliminate the risk of lengthy, costly

28    and unsuccessful litigation.  While the Debtors believe the Proof of Claim is valid, there is no

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

guarantee that the Debtors would be successful in litigating the Proof of Claim in the USAIP Bankruptcy Case.

2.    Difficulty of Collection

This second factor typically applies where a debtor asserts a claim against a third party and that party's collectibility is in issue.  USAIP is in a chapter 11 and is projecting at most a 1-2% payout for general unsecured claims.  Accordingly, the Debtors will collect only a small fraction of its allowed claim.

3.    Complexity, Expense and Burden of Litigation

This third factor clearly favors approval of the Settlement Agreement.  By entering into the Settlement Agreement, the Debtors will avoid any potential expense regarding litigation of the Proof of Claim, which is especially important given the potentially extensive costs of the litigation and the projected maximum payout of 1-2%.

4.    Interest of Creditors

The paramount interest of creditors generally "reflects not only the desire of creditors to obtain the maximum possible recovery but also their competing desire that recovery occur in the least amount of time." *In re Marples*, 266 B.R. 202, 207 :Bankr. D. Idaho 2001).  The Debtors contend that the probability of success is outweighed by the costs and inherent delays to be incurred in litigating the disputes resolved by the Settlement Agreement.  Given the cost of litigation and the difficulties of collection, the Debtors believe that the Settlement Agreement is in the best interests of the Estate, creditors and all parties in interest.  The Debtors believe that the terms of the Settlement Agreement are fair and reasonable, satisfy the standard promulgated by the Ninth Circuit governing compromise of controversies under Bankruptcy Rule 9019 and should be approved.

## III.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Debtors respectfully request that the Court enter an order (a) approving Settlement Agreement; and (b) granting such other and further relief as is just and proper under the circumstances.

Dated:    January 4, 2010                    PACHULSKI STANG ZIEHL & JONES LLP


                                        By    */s/ Stanley E. Goldich*
                                              Richard M. Pachulski
                                              Stanley E. Goldich
                                              [Proposed] Attorneys for Debtors and
                                              Debtors in Possession

1

## DECLARATION OF LAWRENCE E. REDMAN

2

I, Lawrence E. Redman, declare as follows:

3    1.    I am over the age of eighteen years and have personal knowledge of the facts set forth

4    herein and, if called upon as a witness, I could and would competently testify based on my personal

5    knowledge, and on information and belief where indicated, as to all of the matters stated herein.

6    2.    Joy Ann Redman ("Ms. Redman") and I are the debtors and debtors in possession in

7    this case (the "Debtors").  I am responsible for the Debtors' day-to-day operations, and business and

8    financial affairs.

9    3.    I make this declaration in support of the *Motion Seeking Approval of the Settlement*

10   *Agreement with Chapter 11 Trustee of USA Investment Partners, LLC* (the "Motion").  Capitalized

11   terms not otherwise defined herein shall have the meaning attributed to them in the Motion.

12   4.    During the fifteen (15) months after the August 4, 2008 Petition Date, Ms. Redman and

13   I consummated a prior settlement with one guarantee creditor (IFA) and entered into settlements

14   with seven (7) additional guarantee creditors with estimated deficiency claims as of the Petition Date

15   totaling approximately $85 million (including IFA) of the total guarantee claims of approximately

16   $130 million.  Pursuant to the eight (8) settlements, $1.94 million was paid by Ms. Redman and I,

17   and additional settlement payments in the principal amount of $2.3 million are still owed to three (3)

18   of the settling parties.  Ms. Redman and I intend to implement all of the settlements on a final basis

19   in this Case.  Ms. Redman and I also paid certain undisputed scheduled claims in the ordinary course

20   of business as permitted by 11 U. S. C. § 303(f).

21   5.    To date, no trustee, examiner, or committee has been appointed in this case.

22   6.    For over the past 30 years, my business partner, Richard Ashby ("Ashby" or "Richard

23   Ashby") and I have operated and been principals of home building real estate entities, including,

24   inter alia, Fiesta Development, Inc. ("Fiesta"), R& R Land Investors, LLC, Ten Ninety, Ltd. ("Ten-

25   Ninety"), and Fiesta Terra Vista Development, LLC, and Fiesta Terra Vista Development II, LLC

26   (collectively, with Ashby Financial Company, Inc. the "Borrower Entities").  Ashby and I each own

27   a 50% interest in Fiesta and the Fiesta Terra entities.  Richard Ashby is a principal of certain other

28   home building real estate entities, including Ashby Financial Company, Inc. ("AFC"), Ashby

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

14

Development Company, Inc., Ashby USA, LLC and Butterfield Development Company, LLC which I do not own or operate. The development activities and projects of the Borrower Entities are located in California in Orange, San Bernardino and Riverside Counties. Redman also has or had interests in other real estate entities, held through Fiesta or Jabral Investments, LLC, that do not involve loans by me, including Buffalo Land Company, Inc. ("Buffalo Land"), Capital Land Investors, LLC ("Capital Land"), Oak Mesa Investors, LLC ("Oak Mesa") and Random Developments, LLC ("Random Developments").

7.    Fiesta owns a 50% interest in Buffalo Land and Random Developments and Jabral owns a 25% interest in Capital Land Investors and Oak Mesa. USA Investment Partners, LLC ("USAIP"), a chapter 11 debtor case in Nevada, Case No.: 07-11821-LBR, where Lisa M. Poulin ("Poulin") is the chapter 11 Trustee, holds a 50% interest in each of the entities and trusts of four (4) children of Richard Ashby each own 6.25% of Capital Land and Oak Mesa. Bankruptcy filings of Capital Land in December 2007 (filed by Poulin) and Oak Mesa and Buffalo Land in January 2008 were dismissed in June and July 2008 following extensive efforts of the entities and Poulin to market and sell the real properties of the entities that were not successful due to the collapse of the real estate market and granting of relief from stay to the lender Compass FP Corp. The underlying real estate assets of all of the entities are now valueless.

8.    Richard Ashby and William Ashby, Richard Ashby's brother, and I each hold a 1/3 beneficial interest in Ten-Ninety that owns a tax increment asset that is one of my two primary remaining assets following the dramatic declines in the values of the real estate interests of the Borrower Entities that rendered them valueless and resulted in loan deficiencies in the estimated amount of approximately $130 million as of the August 4, 2008 Petition Date. My interest in Ten-Ninety is held through a one-third (1/3) interest in Creative Communities, Inc., the managing general partner of Ten-Ninety which also holds a 40% limited partnership interest, and his ownership interest in General Specifics Corporation which holds a 20% limited partnership interest in Ten-Ninety.

9.    Ashby and I, and in some cases our wives or our living trusts, guaranteed a number of the loans of the Borrower Entities (the "Guaranteed Loans").

15

10.    As with homebuilders throughout the United States the real estate assets of the homebuilding entities of Ashby and mine began to decline precipitously in 2007.

11.    In December 2007, Poulin, the chapter 11 trustee of USAIP, filed a chapter 11 for Capital Land in Nevada, Case No.: 07-18099-lbr, to provide an opportunity for additional efforts to market and realize value from the sale of Capital Land's "Stoneridge Property", an approximately 687-acre development project in Perris, California with planned development for approximately 2,200 lots.  Following unsuccessful efforts of Capital Land and Poulin to market and sell the Stoneridge Property due to the collapse of the real estate market, relief from stay was granted to the lender Compass Financial which foreclosed on the Stoneridge Property rendering Capital Land and Random valueless and the Capital Land bankruptcy was dismissed in July 2008.

12.    In January 2008, Oak Mesa and Buffalo Land filed chapter 11 cases in Nevada, Case Nos: BK-S-08-10397-LBR and BK-S-08-10398-LBR, to provide an opportunity for additional efforts to market and realize value from the sale of the "Oak Mesa Property", approximately 1,500 acres in Calimesa, California approved for up to 3,450 residential units.  Following unsuccessful efforts of Oak Mesa, Buffalo Land and Poulin to market and sell the Oak Mesa Property due to the collapse of the real estate market, relief from stay was granted to the lender Compass Financial based on a lack of any equity rendering Oak Mesa and Buffalo Land valueless and the Oak Mesa and Buffalo Land chapter 11 cases were dismissed in June 2008.

13.    As a result of the severe downturn in the homebuilding industry and the precipitous decline in real estate values throughout the United States, beginning in 2007 and continuing into 2008, real estate owned by my business partner Richard Ashby and me through our homebuilding business entities suffered a dramatic decline in value that rendered their equity interests valueless and resulted in large loan deficiencies.  During the time period August 2007 - January 2008 lawsuits on guarantees of Richard Ashby and me of certain loans and a line of credit of their business entities that were in default were filed by Compass FP Corp ("Compass"), IndyMac Bank ("IndyMac") and PFF Bank & Trust ("PFF").

14.    Beginning in April 2008, I began compiling updated personal financial information for workout negotiations with respect to loan guarantees of my wife and me or our living trust involving

16

1  approximately 10 lender parties and estimated deficiencies in excess of $100 million, including

2  Compass, IndyMac and PFF. Beginning in May and June 2008, my wife and I initiated global

3  workout negotiations with a number of lenders relating to loans guaranteed by us and/or their living

4  trust.

5        15.    On April 4, 2007, certain parties filed an involuntary chapter 11 petition in the United

6  States Bankruptcy Court, District of Nevada, against USAIP, thereby commencing bankruptcy case

7  number 07-11821-LBR (the "USAIP Bankruptcy Case"). Two days after the commencement of the

8  USAIP Bankruptcy Case, on April 6, 2007, the Court appointed Poulin as USAIP's interim chapter

9  11 trustee. Thereafter, on May 9, 2007, an order for relief was entered in the USAIP Bankruptcy

10  Case, with Poulin becoming USAIP's permanent chapter 11 trustee.

11        16.    On or about September 10, 2007, I filed proof of claim no. 90 in the USAIP

12  Bankruptcy Case for my claim against USAIP in the approximate amount of $6.77 million as of

13  April 3, 2007 based on breaches of USAIP under the Capital Land operating agreement,

14  misrepresentation, fraud and other grounds (the "Proof of Claim"). A copy of the Proof of Claim is

15  attached hereto as **Exhibit B**.

16        17.    In order to minimize the cost and expense of litigation, as well as the extensive time

17  that must be dedicated to litigating the Proof of Claim, and in view of the risk inherent in proceeding

18  with the litigation, Poulin and I have engaged in settlement negotiations to resolve our disputes.

19  These settlement discussions, which have been at arms-length and in good faith, have culminated in

20  the Settlement Agreement And Release Of Claims (the "Settlement Agreement"), a copy of which is

21  attached hereto as **Exhibit A**.

22        18.    As more fully set forth in the Proof of Claim, my claim against USAIP is based on my

23  potential guarantee exposure with respect to a loan obligation in the principal amount of $4.15

24  million that is alleged to be an obligation of USAIP and misrepresentations and fraud with respect to

25  my guarantee of the loan.

26        19.    Poulin has alleged defenses to my Proof of Claim, including that the same claim was

27  also asserted by other parties. In addition, Redman I have defenses to my liability on the guarantee

28  of the subject loan, including, without limitation, misrepresentations and fraud relating thereto.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    20.    Under the terms of the Settlement Agreement that has been approved by the USAIP

2    bankruptcy court, my claim against USAIP in the approximate amount of $6.77 million as of 4/3/07

3    based on breaches of USAIP under the Capital Land operating agreement, misrepresentation, fraud

4    and other grounds will be allowed in the amount of $3.0 million. I believe this settlement is fair and

5    reasonable under the circumstances and will avoid the time, cost and expense of litigating my claim

6    against USAIP that likely would substantially exceed any recovery of mine against the USAIP

7    estate. Poulin and her counsel presently estimate that the distribution to creditors of USAIP will be

8    at most 1-2%. Poulin's motion in the USAIP Bankruptcy Case to approve the Settlement Agreement

9    (without exhibits) is attached hereto as **Exhibit C**.

10    21.    The Settlement Agreement eliminates the risk of lengthy, costly and unsuccessful

11    litigation. While I believe the Proof of Claim is valid, there is no guarantee that I would be

12    successful in litigating the Proof of Claim in the USAIP Bankruptcy Case.

13    22.    The Settlement Agreement will avoid any potential expense regarding litigation of the

14    Proof of Claim, which is especially important given the potentially extensive costs of the litigation

15    and the projected 2% payout.

16    23.    The probability of success is outweighed by the costs and inherent delays to be

17    incurred in litigating the disputes resolved by the Settlement Agreement. Given the cost of litigation

18    and the difficulties of collection, I believe that the Settlement Agreement is in the best interests of

19    the estate, creditors and all parties in interest.

20    I declare under penalty of perjury under the laws of the United States of America that the

21    foregoing is true and correct.

22    Executed this 31st day of December, 2009, at Long Beach, California.

23

24    LAWRENCE EUGENE REDMAN

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

73571-002\DOCS_LA:213582.4                    18

# **EXHIBIT A**

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS (the "Agreement") is made and entered into by USA Investment Partners, LLC ("Debtor"), by and through Lisa M. Poulin ("Poulin"), the Chapter 11 trustee for Debtor, on the one hand, and Richard K. Ashby ("R. Ashby"), Deanna G. Ashby ("D. Ashby"), Fiesta Development Company, Inc. ("Fiesta Development"), Ashby Financial Company, Inc. ("Ashby Financial"), the Richard Craig Ashby Irrevocable Trust ("R. Ashby Trust"), the Deirdre Ashby Irrevocable Trust ("D. Ashby Trust"), the Bradley Ashby Irrevocable Trust ("B. Ashby Trust"), the Justin Ashby Irrevocable Trust ("J. Ashby Trust"), Jabral Investments, LLC ("Jabral Investments"), Ashby Development Company, Inc. ("Ashby Development"), Butterfield Development Company, Inc. ("Butterfield"), the Ashby USA Irrevocable Trust ("Ashby USA Trust"), Random Developments, LLC ("Random"), Lawrence E. Redman ("L. Redman"), the Lucas Family Trust (the "L. Family Trust"), Ten-Ninety, Ltd. ("Ten-Ninety"), and Oak Mesa Investors, LLC ("Oak Mesa") on the other. R. Ashby, D. Ashby, Fiesta, Ashby Financial, the R. Ashby Trust, the D. Ashby Trust, the J. Ashby Trust, the B. Ashby Trust, Jabral Investments, Ashby Development, Butterfield, the Ashby USA Trust, Fiesta Development, Random, L. Redman, the L. Family Trust, Ten-Ninety, and Oak Mesa may be referred to herein collectively as the "Fiesta Parties." The Fiesta Parties and Debtor may be referred to herein collectively as the "Parties" and individually as a "Party."

## I.
## RECITALS

**A.    The USAIP Bankruptcy Case.**

    **1.**    On April 4, 2007, USA Capital Diversified Trust Deed Fund, LLC, the USACM Liquidating Trust, and Alabruj Investments, LLC filed an involuntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") against Debtor, thereby commencing Bankruptcy Case No. BK-S-07-11821-LBR (the "USAIP Bankruptcy Case"), which case is pending before the United States Bankruptcy Court for the District of Nevada (the "Nevada Bankruptcy Court").

    **2.**    On April 6, 2007, the Nevada Bankruptcy Court appointed Poulin as the interim trustee in the USAIP Bankruptcy Case and on May 9, 2007, an order for relief was entered in the USAIP Bankruptcy Case, with Poulin remaining as the Chapter 11 trustee in the USAIP Bankruptcy Case.

**B.    The Fiesta Parties' Proofs Of Claim.**

    **1.    Proof of claim nos. 64, 73, 77, 81, and 85.**

        a.    On or about September 10, 2007, Jabral Investments filed proof of claim no. 64 ("Claim No. 64"), the R. Ashby Trust filed proof of claim no. 73 ("Claim No. 73"), the D. Ashby Trust filed proof of claim no. 77 ("Claim No. 77"), the B. Ashby Trust filed proof of claim no. 81 ("Claim No. 81"), and the J. Ashby Trust filed proof of claim no. 85 ("Claim No. 85," and

collectively with Claim Nos. 64, 73, 77, and 81, the "CLI Capital Contribution Claims").

b.    Claim No. 64 asserts a secured claim in the amount of $177,391.18, plus additional charges. Claim Nos. 73, 77, 81, and 85 each asserts a secured claim in the amount of $44,347.83, plus additional charges. The stated CLI Capital Contribution Claims are premised on Debtor's alleged obligation under Capital Land Investors, LLC's ("CLI") operating agreement to tender capital contributions. The CLI Capital Contribution Claims also assert that any money due under such claims is subject to recoupment and setoff against any distribution tendered by CLI on account of Debtor's membership interest in CLI.

c.    The CLI Capital Contribution Claims further state that additional unknown amounts are claimed for misrepresentation, fraud, non-disclosure, concealment, bad faith, fraudulent inducement, unjust enrichment, and/or violations of law by Debtor.

2.    **Proof of claim nos. 66, 74, 78, 82, and 86.**

a.    On or about September 10, 2007, Jabral Investments filed proof of claim no. 66 ("Claim No. 66"), the R. Ashby Trust filed proof of claim no. 74 ("Claim No. 74"), the D. Ashby Trust filed proof of claim no. 78 ("Claim No. 78"), the B. Ashby Trust filed proof of claim no. 82 ("Claim No. 82"), and the J. Ashby Trust filed proof of claim no. 86 ("Claim No. 86," and collectively with Claim Nos. 66, 74, 78, and 82, the "CLI Expense Payments Claims").

b.    Claim No. 66 asserts a secured claim in the amount of $93,000, plus additional charges. Claim Nos. 74, 78, 82, and 86 each assert a secured claim in the amount of $10,750.00, plus additional charges. The CLI Expense Payments Claims are premised on Debtor's alleged obligation under CLI's operating agreement to pay a portion of CLI's expenses. The CLI Expense Payments Claims also assert that any money due under such claims is subject to recoupment and setoff against any distribution tendered by CLI on account of Debtor's membership interest in CLI.

c.    The CLI Expense Payments Claims further state that additional unknown amounts are claimed for misrepresentation, fraud, non-disclosure, concealment, bad faith, fraudulent inducement, unjust enrichment, and/or violations of law by Debtor.

3.    **Proof of claim nos. 89, 90, 97, 98, and 112 through 116.**

a.    On or about September 10, 2007, R. Ashby filed proof of claim no. 89 ("Claim No. 89"), L. Redman filed proof of claim no. 90 ("Claim No. 90"), Ten-Ninety filed proof of claim no. 97 ("Claim No. 97"), the L. Family Trust filed proof of claim no. 98 ("Claim No. 98"), Jabral

Investments filed proof of claim no. 112 ("Claim No. 112"), the R. Ashby Trust filed proof of claim no. 113 ("Claim No. 113"), the D. Ashby Trust filed proof of claim no. 114 ("Claim No. 114"), the J. Ashby Trust filed proof of claim no. 115 ("Claim No. 115"), and the B. Ashby Trust filed proof of claim no. 116 ("Claim No. 116," and collectively with Claim Nos. 89, 90, 97, 98, 112, 113, 114, and 115, the "CLI $4,150,000 Promissory Note Claims").

b.   Each of the respective CLI $4,150,000 Promissory Note Claims asserts a secured claim in the amount of $6,759,605.57 for money loaned. The CLI $4,150,000 Promissory Note Claims are based on Debtor's alleged obligation under CLI's operating agreement to repay a promissory note in the principal amount of $4,150,000. The CLI $4,150,000 Promissory Note Claims also assert that any money due under such claims is subject to recoupment and setoff against any distribution tendered by CLI on account of Debtor's membership interest in CLI.

c.   The CLI $4,150,000 Promissory Note Claims further state that additional unknown amounts are claimed for misrepresentation, fraud, non-disclosure, concealment, bad faith, fraudulent inducement, unjust enrichment, and/or violations of law by Debtor.

**4.   Proofs of claim nos. 91 through 96.**

a.   On or about September 10, 2007, the R. Ashby Trust filed proof of claim no. 91 ("Claim No. 91"), the D. Ashby Trust filed proof of claim no. 92 ("Claim No. 92"), the J. Ashby Trust filed proof of claim no. 93 ("Claim No. 93"), the B. Ashby Trust filed proof of claim no. 94 ("Claim No. 94"), Random filed proof of claim no. 95 ("Claim No. 95"), and Fiesta Development filed proof of claim no. 96 ("Claim No. 96," and collectively with Claim Nos. 91, 92, 93, 94, and 95, the "CLI $10,000,000 Promissory Note Claims").

b.   Each of the respective CLI $10,000,000 Promissory Note Claims asserts a secured claim in the amount of $14,230,675.39 for money loaned. The CLI $10,000,000 Promissory Note Claims are premised on Debtor's alleged obligation under CLI's operating agreement to repay a promissory note due and owing by CLI in the principal amount of $10,000,000. The CLI $10,000,000 Promissory Note Claims also assert that any money due under the CLI $10,000,000 Promissory Note Claims are subject to recoupment and setoff against any distribution tendered by CLI on account of Debtor's membership interest in CLI.

c.   The CLI $10,000,000 Promissory Note Claims further state that additional unknown amounts are claimed for misrepresentation, fraud, non-disclosure, concealment, bad faith, fraudulent inducement, unjust enrichment, and/or violations of law by Debtor.

5.    **Proof of claim nos. 106 though 110.**

   a.    On or about September 10, 2007, Jabral Investments filed proof of claim no. 106 ("Claim No. 106"), the R. Ashby Trust filed proof of claim no. 107 ("Claim No. 107"), the J. Ashby Trust filed proof of claim no. 108 ("Claim No. 108"), the D. Ashby Trust filed proof of claim no. 109 ("Claim No. 109"), the B. Ashby Trust filed proof of claim no. 110 ("Claim No. 110," and collectively with Claim Nos. 106, 107, 108, and 109, the "Additional CLI $10,000,000 Promissory Note Claims").

   b.    Claim No. 106 asserts a secured claim in the amount of $7,115,337.71. Claim Nos. 107 through 110 each assert a secured claim in the amount of $1,778,834.42. The Additional CLI $10,000,000 Promissory Note Claims are premised on Debtor's alleged obligation under CLI's operating agreement to repay a promissory note due and owing by CLI in the principal amount of $10,000.    The Additional CLI $10,000,000 Promissory Note Claims also assert that any money due under such claims is subject to recoupment and setoff against any distribution tendered on account of Debtor's membership interest.

   c.    The Additional CLI $10,000,000 Promissory Note Claims further state that additional unknown amounts are claimed for misrepresentation, fraud, non-disclosure, concealment, bad faith, fraudulent inducement, unjust enrichment and/or violations of law by Debtor.

6.    **Proof of claim nos. 67, 75, 79, 83, and 87.**

   a.    On or about September 10, 2007, Jabral Investments filed proof of claim no. 67 ("Claim No. 67"), the R. Ashby Trust filed proof of claim no. 75 ("Claim No. 75"), the D. Ashby Trust filed proof of claim no. 79 ("Claim No. 79"), the B. Ashby Trust filed proof of claim no. 83 ("Claim No. 83"), and the J. Ashby Trust filed proof of claim no. 87 ("Claim No. 87," and collectively with Claim Nos. 67, 75, 79, and 83, the "Oak Mesa Capital Contribution Claims").

   b.    Claim No. 67 asserts a secured claim in the amount of $42,205.37, plus additional charges.  Claim Nos. 75, 79, 83, and 87 each assert a secured claim in the amount of $10,551.37, plus additional charges.  The Oak Mesa Capital Contribution Claims are premised on Debtor's alleged obligation under Oak Mesa's operating agreement to tender capital contributions. The Oak Mesa Capital Contribution Claims also assert that any money due under such claims is subject to recoupment and setoff against any distribution tendered by Oak Mesa on account of Debtor's membership interest in Oak Mesa.

   c.    The Oak Mesa Capital Contribution Claims further state that additional unknown amounts are claimed for misrepresentation, fraud, non-

disclosure, concealment, bad faith, fraudulent inducement, unjust enrichment, and/or violations of law by Debtor.

7.    **Proof of claim nos. 68, 76, 80, 84, and 88.**

    a.    On or about September 10, 2007, Jabral Investments filed proof of claim no. 68 ("Claim No. 68"), the R. Ashby Trust filed proof of claim no. 76 ("Claim No. 76"), the D. Ashby Trust filed proof of claim no. 80 ("Claim No. 80"), the B. Ashby Trust filed proof of claim no. 84 ("Claim No. 84"), and the J. Ashby Trust filed proof of claim no. 88 ("Claim No. 88," and collectively with Claim Nos. 68, 76, 80, and 84, the "Oak Mesa Expense Payments Claims").

    b.    Claim No. 68 asserts a secured claim in the amount of $40,000, plus additional charges. Claim Nos. 76, 80, 84, and 88 each assert a secured claim in the amount of $10,000, plus additional charges. The Oak Mesa Expense Payments Claims are premised on Debtor's alleged obligation under Oak Mesa's operating agreement to pay a portion of Oak Mesa's expenses. The Oak Mesa Expense Payments Claims also assert that any money due under such claims is subject to recoupment and setoff against any distribution tendered by Oak Mesa on account of Debtor's membership interest in Oak Mesa.

    c.    The Oak Mesa Expense Payments Claims further state that additional unknown amounts are claimed for misrepresentation, fraud, non-disclosure, concealment, bad faith, fraudulent inducement, unjust enrichment, and/or violations of law by Debtor.

8.    **Proof of claim nos. 101 though 105.**

    a.    On or about September 10, 2007, Jabral Investments filed proof of claim no. 101 ("Claim No. 101"), the R. Ashby Trust filed proof of claim no. 102 ("Claim No. 102"), the D. Ashby Trust filed proof of claim no. 103 ("Claim No. 103"), the J. Ashby Trust filed proof of claim no. 104 ("Claim No. 104") and the B. Ashby Trust filed proof of claim no. 105 ("Claim No. 105," and collectively with Claim Nos. 101, 102, 103, and 104, the "Oak Mesa "$20,500,00 Promissory Note Claims").

    b.    Claim No. 101 asserts a secured claim in the amount of $13,742,596.06, plus additional interest. Claim Nos. 102 through 105 each assert a secured claim of $3,435,649.01, plus additional interest. The Oak Mesa $20,500,00 Promissory Note Claims are premised on Debtor's alleged obligation under Oak Mesa's operating agreement to repay a promissory note due and owing by Oak Mesa in the principal amount of $20,500,000. The Oak Mesa $20,500,00 Promissory Note Claims also asserts that any money due under such claims is subject to recoupment and setoff against

any distribution tendered on account of Debtor's membership interest in Oak Mesa.

   c.    The Oak Mesa $20,500,00 Promissory Note Claims further states that additional unknown amounts are claimed for misrepresentation, fraud, non-disclosure, concealment, bad faith, fraudulent inducement, unjust enrichment, and/or violations of law by Debtor.

**9.**    **Proof of claim no. 99.**

   a.    On or about September 10, 2007, Ashby Development and Butterfield filed proof of claim no. 99 ("Claim No. 99") asserting a secured claim in the amount of $19,221,555.06.

   b.    Claim No. 99 is premised on Debtor's alleged breach of its alleged obligation under Ashby USA, LLC's ("Ashby USA") operating agreement. Claim No. 99 also asserts that any money due under Claim No. 99 is subject to recoupment and setoff against any distribution tendered by Ashby USA on account of Debtor's membership interest in Ashby USA.

   c.    Claim No. 99 states that additional unknown amounts are claimed for misrepresentation, fraud, non-disclosure, concealment, bad faith, fraudulent inducement, unjust enrichment, and/or violations of law by Debtor.

**10.**    **Proof of claim no. 100.**

   a.    On or about September 10, 2007, the Ashby USA Trust filed proof of claim no. 100 ("Claim No. 100"), asserting a secured claim in the amount of $2,090,035.

   b.    Claim No. 100 is premised on Debtor's alleged obligation under Ashby USA's operating agreement to tender capital contributions and to pay a portion of Ashby USA's expenses. Claim No. 100 also asserts that any money due under Claim No. 100 is subject to recoupment and setoff against any distribution tendered by Ashby USA on account of Debtor's membership interest in Ashby USA.

   c.    Claim No. 100 states that additional unknown amounts are claimed for misrepresentation, fraud, non-disclosure, concealment, bad faith, fraudulent inducement, unjust enrichment, and/or violations of law by Debtor.

11.   **Proof of claim no. 69.**

    a.   On or about September 12, 2007, Fiesta Development filed proof of claim no. 69 ("Claim No. 69") asserting a secured claim in the amount of $1,090,057.07.

    b.   Claim No. 69 is premised on Debtor's alleged obligation under Random's operating agreement to tender capital contributions. Claim No. 69 also asserts that any money due under Claim No. 69 is subject to recoupment and setoff against any distribution tendered by Random on account of Debtor's membership interest in Random.

    c.   Claim No. 69 states that additional unknown amounts are claimed for misrepresentation, fraud, non-disclosure, concealment, bad faith, fraudulent inducement, unjust enrichment, and/or violations of law by Debtor.

12.   **Proof of claim no. 70.**

    a.   On or about September 11, 2007, Fiesta Development filed proof of claim no. 70 ("Claim No. 70"), asserting a secured claim in the amount of $59,859.85.

    b.   Claim No. 70 is premised on Debtor's alleged obligation under Random's operating agreement to pay a portion of Random's expenses. Claim No. 70 also asserts that any money due under Claim No. 70 is subject to recoupment and setoff against any distribution tendered by Random on account of Debtor's membership interest in Random.

    c.   Claim No. 70 states that additional unknown amounts are claimed for misrepresentation, fraud, non-disclosure, concealment, bad faith, fraudulent inducement, unjust enrichment, and/or violations of law by Debtor.

13.   **Proof of Claim No. 71.**

    a.   On or about September 11, 2007, Fiesta Development filed proof of claim no. 71 ("Claim No. 71"), asserting a secured claim in the amount of $3,463,207.41.

    b.   Claim No. 71 is premised on Debtor's alleged obligation under Buffalo Land Development, LLC's ("Buffalo Development") operating agreement to tender capital contributions. Claim No. 71 also asserts that any money due under Claim No. 71 is subject to recoupment and setoff against any distribution tendered by Buffalo Development on account of Debtor's membership interest in Buffalo Development.

  c.  Claim No. 71 states that additional unknown amounts are claimed for misrepresentation, fraud, non-disclosure, concealment, bad faith, fraudulent inducement, unjust enrichment, and/or violations of law by Debtor.

**14.  Proof of claim no. 72.**

  a.  On or about September 11, 2007, Fiesta Development filed proof of claim no. 72 ("Claim No. 72"), asserting a secured claim in the amount of $257,411.32.

  b.  Claim No. 72 is premised on Debtor's alleged obligation under Buffalo Development's operating agreement to pay a portion of Buffalo Development's expenses. Claim No. 72 also asserts that any money due under Claim No. 72 is subject to recoupment and setoff against any distribution tendered by Buffalo Development on account of Debtor's membership interest in Buffalo Development.

  c.  Claim No. 72 states that additional unknown amounts are claimed for misrepresentation, fraud, non-disclosure, concealment, bad faith, fraudulent inducement, unjust enrichment, and/or violations of law by Debtor.

**15.  Proof of claim no. 111.**

  a.  On or about September 1, 2007, Oak Mesa filed proof of claim No. 111 ("Claim No. 111," and collectively with the CLI Capital Contribution Claims, the CLI Expense Payments Claims, the CLI $4,150,000 Promissory Note Claims, the CLI $10,000,000.00 Promissory Note Claims, the Additional CLI $10,000,000 Promissory Note Claims, the Oak Mesa Capital Contribution Claims, the Oak Mesa Expense Payments Claims, the Oak Mesa $20,500,00 Promissory Note Claims, Claim No. 69, Claim No. 70, Claim No. 71, Claim No. 72, Claim No. 99, and Claim No. 100, the "Proofs of Claims"), asserting a secured claim in the amount of $27,485,192.10.

  b.  Claim No. 111 is premised on Debtor's alleged obligation under Buffalo Development's operating agreement to repay a promissory note due and owing by Buffalo Development in the principal amount of $20,500,000. Claim No. 111 also asserts that any money due under such claims is subject to recoupment and setoff against any distribution tendered on account of Debtor's membership interest in Buffalo Development.

  c.  Claim No. 111 states that additional unknown amounts are claimed for misrepresentation, fraud, non-disclosure, concealment, bad faith, fraudulent inducement, unjust enrichment, and/or violations of law by Debtor.

### C.    The Ashby USA Note And Guarantee.

1.    On or about May 1, 2001, Debtor provided Ashby USA with a loan in the principal sum of $4,250,000 (the "Loan").

2.    As consideration for the Loan, on or about May 1, 2001, Ashby USA executed and delivered to Debtor that certain Promissory Note Secured By Deed Of Trust in the principal sum of $4,250,000, together with interest at the rate of fourteen and one half percent (14.5%) per annum from May 1, 2001, all due and payable on or before March 21, 2003 (the "Note").

3.    Concurrently with the execution of the Note, Ashby USA also executed that certain Deed Of Trust recorded on or about March 21, 2002 as Document No. 2002-0143547 in the Official Records of Riverside County, State of California (the "Deed Of Trust").

4.    On or about March 12, 2002, R. Ashby, Ashby Development, and Butterfield executed and delivered a guarantee to Debtor (the "Guarantee"), thereby guaranteeing repayment of the Loan. The Guarantee additionally provided for joint and several liability of R. Ashby, Ashby Development, and Butterfield for all of the obligations under the Guarantee.

5.    On or about September 30, 2005, Debtor, R. Ashby, Ashby USA, Ashby Development, and Butterfield entered into that certain First Amendment To Loan Documents (the "First Amended Note," and together with the Note, the "Amended Note"), which, among other things: (1) increased the amount of the Note from $4,250,000.00 to $9,186,227.01; (2) established the accrued interest on the Note as of September 30, 2006 as $2,394,024.66; (3) extended the maturity date of the Note from March 21, 2002 to December 31, 2007; and (4) reaffirmed that the Guarantee remained in full force and effect.

6.    Concurrently with the execution of the Amended Note, Ashby USA executed that certain First Amendment To Deed Of Trust (together with the Deed Of Trust, the "Amended Deed of Trust"), thereby amending the Deed Of Trust to increase the amount secured thereby from $4,250,000 to $9,186,227.01, plus all accrued and accruing interest and fees.

### D.    The Adversary Proceeding.

1.    On or about May 9, 2009, Poulin filed her complaint (the "Complaint") against R. Ashby, D. Ashby, Fiesta Development, and Ashby Financial (collectively, the "Adversary Defendants"), thereby commencing adversary proceeding No. 09-1129-LBR (the "Adversary Proceeding"), also pending before the Nevada Bankruptcy Court.

2.    Through the Complaint, Poulin alleged that during 2004 through 2007, Debtor paid the Adversary Defendants the aggregate sum of $1,392,250.67 (the "Payments"). Poulin has sought the avoidance and recovery of the Payments pursuant to 11

U.S.C. §§ 544, 547, 548, 550, and/or NRS 112.180, and has further sought damages in connection with unjust enrichment and money had and received causes of action (collectively, the "Adversary Claims").

3. The Adversary Defendants dispute the allegations set forth in the <u>Complaint</u> and has raised defenses to the Adversary Claims.

The Parties have concluded that litigation on the Proofs of Claim, the Guarantee, and the Adversary Proceeding through trial and potential appeal would be expensive and protracted, and that it would be desirable that their disputes be fully and finally settled in the manner and upon the terms and conditions set forth herein in order to avoid the expense of litigation and the uncertainty regarding certain disputed defenses.

## II.
## TERMS AND CONDITIONS

NOW, THEREFORE, in consideration of the covenants, promises, and releases set forth herein, the receipt and sufficiency of which is hereby acknowledged, and in full settlement of all such claims, the Parties hereby agree on behalf of themselves and any and all of their predecessors, successors, assigns, parents, insurers, and any other parties or persons claiming by, through, or under any of the Parties hereto, as follows:

A. On the Effective Date (as defined herein), L. Redman shall have an allowed general unsecured claim in the USAIP Bankruptcy Case in the sum of $3,000,000, which allowed general unsecured claim shall be treated and paid through a confirmed plan of reorganization consistent with all other allowed general unsecured claims filed in the USAIP Bankruptcy Case (the "L. Redman Allowed Claim").

B. On the Effective Date (as defined herein), the <u>Judgment</u> attached hereto as Exhibit "A" shall be submitted to and entered by the Nevada Bankruptcy Court against Ashby Development in the amount of $9,186,227.01 (the "Stipulated Judgment").

C. Upon the Effective Date (as defined herein), with the express reservation of all rights relating to the repayment of and/or collection on the Stipulated Judgment, Debtor hereby fully and completely releases and forever discharges the Fiesta Parties from any and all claims, causes of action, demands, liabilities, obligations, rights, injuries, expenses, damages, and losses, whether known or unknown, contingent or non-contingent, patent or latent, which Debtor now owns or holds, or at any time heretofore owned or held, or which it may otherwise have (past, present, and future).

D. Upon the Effective Date (as defined herein), with the express reservation of the L. Redman Allowed Claim, the Fiesta Parties hereby fully and completely release and forever discharge Poulin and Debtor and all of their officers, directors, employees, agents, attorneys, partners, members, representatives, shareholders, insurers, successors, and assigns from any and all claims, causes of action, demands, liabilities, obligations, rights, injuries, expenses, damages, and losses, whether known or unknown, contingent or non-

contingent, patent or latent, which the Fiesta Parties now own or hold, or at any time heretofore owned or held, or which they may otherwise have (past, present, and future).

E.    Upon Effective Date (as defined herein), the Proofs of Claim now or hereafter filed by the Fiesta Parties in the USAIP Bankruptcy Case seeking any monetary reimbursement, damages, or any other monetary compensation of any kind, and any non-monetary compensation of any kind are hereby withdrawn with prejudice. The Fiesta Parties forever release and discharge any and all claims, causes of action, demands, liabilities, obligations, rights, injuries, expenses, damages, and losses, whether known or unknown, contingent or non-contingent, patent or latent, which the Fiesta Parties, and each of them, now have, may now claim to have, or may hereinafter claim to have against Debtor and/or Poulin, including their officers, directors, employees, agents, attorneys, partners, members, representatives, shareholders, insurers, successors, and assigns.

F.    The releases set forth in this Agreement shall not alter any obligation owed by Ashby Development with regard to the Stipulated Judgment and/or Debtor's ability to pursue the collection on the Stipulated Judgment under applicable law.

G.    The releases set forth in this Agreement shall not alter any obligation or liability owed by Ashby USA on or in connection with the Note, the Amended Note, the Deed of Trust, and/or the Amended Deed of Trust.

H.    The releases set forth in this Agreement shall not alter L. Redman's rights provided under this Agreement with regard to the L. Redman Allowed Claim.

I.    Further, the releases shall not alter Debtor's membership interest in Ashby USA or its rights relating to or arising from such membership interest.

J.    As used herein, "Effective Date" means the first business day that is eleven (11) days after: (1) the entry of an order by the Nevada Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure authorizing Debtor to enter into the Agreement (the "USAIP Approval Order"); and (2) the entry of an order by the United States Bankruptcy Court for the Central District of California in Bankruptcy Case No. 2:08-21925-ER pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure authorizing L. Redman to enter into the Agreement (the "L. Redman Approval Order," and together with the USAIP Approval Order, the "Approval Orders").

K.    Poulin shall file a motion seeking the entry of the USAIP Approval Order on or before November 20, 2009, which motion shall be set for hearing on or before December 31, 2009.

L.    L. Redman shall file a motion seeking the entry of the L. Redman Approval Order on or before December 4, 2009, which motion shall be set for hearing on or before January 22, 2010.

M.    Within five (5) business days after the Effective Date, Poulin will submit to the Nevada Bankruptcy Court that certain Stipulation And Order To Dismiss Adversary Proceeding in

the form attached hereto as Exhibit "B," thereby resulting in the dismissal of the Adversary Proceeding.

N.   Within five (5) business days of the Effective Date, Poulin will submit to the Nevada Bankruptcy Court that certain <u>Notice Of Withdrawal Of Proofs Of Claim</u> in the form attached hereto as Exhibit "C," thereby further effectuating the withdrawal of the Proofs of Claim in the USAIP Bankruptcy Case with prejudice.

O.   Any notices in connection with this Agreement to each of the Parties shall be given by electronic correspondence and by certified mail to the following individuals:

For Lisa M. Poulin and/or USA Investment Partners, LLC:
c/o Gordon Silver
Attn: Talitha B. Gray, Esq.
3960 Howard Hughes Pkwy, Ninth Floor
Las Vegas, Nevada 89169
tgray@gordonsilver.com

For Lawrence E. Redman or Jabral Investments, LLC
c/o Pachulski Stang Ziehl & Jones LLP
Attn: Stanley E. Goldich, Esq.
10100 Santa Monica Blvd., 11th Flr.
Los Angeles, California 90067-4100
sgoldich@pszjlaw.com

with a copy to:

Lawrence E. Redman
269 Argonne Avenue
Long Beach, California 90803
lredman@fiestadev.com

For Richard K. Ashby, Deanna G. Ashby, Fiesta Development Company, Inc. Ashby Financial Company, Inc., the Richard Craig Ashby Irrevocable Trust, the Deirdre Ashby Irrevocable Trust, the Bradley Ashby Irrevocable Trust, the Justin Ashby Irrevocable Trust, Ashby Development Company, Inc., Butterfield Development Company, Inc., the Ashby USA Irrevocable Trust, Random Developments, LLC, the Lucas Family Trust, Ten-Ninety, Ltd., and/or Oak Mesa Investors, LLC
c/o Peter Olah
427 E. 17th Street #261
Costa Mesa, California 92677
petermolah@hotmail.com

P.   This Agreement is entered into as a good faith compromise among the Parties for the complete and final settlement of the Adversary Proceeding, the Proofs of Claim, and the Guarantee. By this settlement, no Party admits liability to any other Party in any respect or makes any admission as to factual or legal contentions relating to the matters settled herein.

Q.  The Parties acknowledge that they have had the opportunity to be represented by counsel during negotiations of this Agreement and to consult with their respective attorneys regarding its meaning and effect. The Parties agree that: (1) the terms and provisions of this Agreement are not to be construed more strictly against any of the Parties; and (2) it is their mutual intention that the terms and provisions of this Agreement be construed as having the plain meaning of the terms used herein.

R.  This Agreement constitutes the entire agreement among the Parties on the subjects addressed herein. This Agreement is executed without reliance upon any representations by any person or entity concerning the nature, cause, or extent of injuries or legal liability, or any other representations of any type or nature except as set forth herein. No contrary or supplementary oral agreement shall be admissible in a court to contradict, alter, supplement, or otherwise change the meaning of this Agreement. The Parties also acknowledge the contested and adversarial nature of the dispute regarding the Payments and stipulate that in executing this Agreement they are not relying on any representations by any other Party or its agents, representatives, or attorneys with regard to the: (1) facts underlying the dispute; (2) the subject matter or effect of this Agreement; and (3) any other facts or issues which might be deemed material to the decision to enter into this Agreement, other than as specifically set forth in this Agreement.

S.  This Agreement may be amended only by written agreement signed by each of the Parties, and any alleged breach of this Agreement may be waived only by a written waiver signed by the Party granting the waiver. This Agreement and any such amendments or waivers of breach may be executed either directly by the Parties, or on their behalf by authorized counsel.

T.  If any term or provision of this Agreement shall be determined to be unenforceable, invalid, or illegal in any respect, the unenforceability, invalidity, or illegality shall not affect any other term or provision of this Agreement, but this Agreement shall be construed as if such unenforceable, invalid, or illegal term or provision had never been contained herein.

U.  This Agreement may be executed in any number of counterparts each of which, when executed and delivered, shall be deemed an original and all of which together shall constitute but one and the same agreement. Signatures obtained by facsimile or email in .pdf format shall be deemed to be original signatures.

V.  In the event it is necessary for any of the Parties to institute an action or file a motion to interpret or enforce this Agreement, or to preclude a purported violation hereof, the prevailing party in such action shall be entitled to reimbursement of his/her/its reasonable attorneys' fees, costs, and expenses.

W.  This Agreement is to be governed by the law of the State of Nevada. The Nevada Bankruptcy Court shall retain exclusive jurisdiction over the interpretation and enforcement of this Agreement, as well as any disputes that may arise between the Parties relating to this Agreement, and the Parties consent to the exclusive jurisdiction of the Nevada Bankruptcy Court for these purposes.

X.  Except as expressly stated herein, each Party warrants, represents, and agrees that he/she/it: (1) has not assigned, subrogated, pledged, or transferred to any person, firm, partnership, corporation, or other entity whatsoever any of the claims, counterclaims, actions, demands, or causes of action to be released pursuant to the releases set forth in this Agreement; and (2) upon entry of the Approval Orders, is fully authorized to enter into this Agreement without the consent of any third-parties.  Specifically, each person signing the Agreement represents and warrants that upon obtaining entry of the Approval Orders, he/she/it has been authorized and empowered to sign this Agreement on behalf of the Party the person purports to represent and that this Agreement is lawful and binding obligations of the Party on whose behalf the person is signing.

Y.  This Agreement will inure to the benefit of and will be binding upon the Parties and their respective heirs, executors, successors, assigns, grantees, administrators, executors, and trustees.

[signature pages follow]

DATED:  November  18 , 2009                    DATED: November _____, 2009

USA INVESTMENT PARTNERS, LLC              RICHARD ASHBY

By: _____             _____
    Lisa M. Poulin, in her capacity
    as the Chapter 11 Trustee of USA
    Investment Partners, LLC

DEANNA G. ASHBY                          FIESTA DEVELOPMENT COMPANY, INC.

_____         By: _____

                                         Its:_____

ASHBY FINANCIAL COMPANY , INC.           RICHARD CRAIG ASHBY IRREVOCABLE
                                         TRUST

By: _____             By:_____

Its:_____             Its:_____

DEIRDRE ASHBY IRREVOCABLE TRUST          BRADLEY ASHBY IRREVOCABLE TRUST

By:_____              By:_____

Its:_____             Its:_____

JUSTIN ASHBY IRREVOCABLE TRUST           JABRAL INVESTMENTS, LLC

By:_____              By:_____

Its:_____             Its:_____

ASHBY DEVELOPMENT COMPANY, INC.          BUTTERFIELD DEVELOPMENT
                                         COMPANY, INC.

By:_____              By:_____

Its:_____             Its:_____

15

DATED: November ___, 2009

DATED: November 19th, 2009

USA INVESTMENT PARTNERS, LLC

RICHARD ASHBY

By: _____
    Lisa M. Poulin, in her capacity
    as the Chapter 11 Trustee of USA
    Investment Partners, LLC

DEANNA G. ASHBY

FIESTA DEVELOPMENT COMPANY, INC.

By: _____

Its: _____PRESIDENT_____

ASHBY FINANCIAL COMPANY, INC.

RICHARD CRAIG ASHBY IRREVOCABLE
TRUST

By: _____

Its: _____

By: _____

Its: _____TRUSTEE_____

DEIRDRE ASHBY IRREVOCABLE TRUST

BRADLEY ASHBY IRREVOCABLE TRUST

By: _____

Its: _____TRUSTEE_____

By: _____

Its: _____TRUSTEE_____

JUSTIN ASHBY IRREVOCABLE TRUST

JABRAL INVESTMENTS, LLC

By: _____

Its: _____

By: _____

Its: _____

ASHBY DEVELOPMENT COMPANY, INC.

BUTTERFIELD DEVELOPMENT
COMPANY, INC.

By: _____

Its: _____President_____

By: _____

Its: _____President_____

DATED: November ___, 2009                    DATED: November ____, 2009

USA INVESTMENT PARTNERS, LLC                 RICHARD ASHBY


By: _____              _____
    Lisa M. Poulin, in her capacity
    as the Chapter 11 Trustee of USA
    Investment Partners, LLC

DEANNA G. ASHBY                              FIESTA DEVELOPMENT COMPANY, INC.


_____                  By: _____

                                             Its: _____

ASHBY FINANCIAL COMPANY , INC.               RICHARD CRAIG ASHBY IRREVOCABLE
                                             TRUST

By: _____              By: _____

Its: _____             Its: _____

DEIRDRE ASHBY IRREVOCABLE TRUST              BRADLEY ASHBY IRREVOCABLE TRUST


By: _____              By: _____

Its: _____             Its: _____


JUSTIN ASHBY IRREVOCABLE TRUST               JABRAL INVESTMENTS, LLC


By: *William R Lucas*                         By: _____

Its: *Trustee*                                Its: _____


ASHBY DEVELOPMENT COMPANY, INC.              BUTTERFIELD DEVELOPMENT
                                             COMPANY, INC.

By: _____              By: _____

Its: _____             Its: _____


101202-039/773453_6.doc                           15

DATED: November ___, 2009                    DATED: November ____, 2009

USA INVESTMENT PARTNERS, LLC                 RICHARD ASHBY

By: _____                _____
    Lisa M. Poulin, in her capacity
    as the Chapter 11 Trustee of USA
    Investment Partners, LLC

DEANNA G. ASHBY                              FIESTA DEVELOPMENT COMPANY, INC.


_____                    By: _____

                                             Its: _____

ASHBY FINANCIAL COMPANY , INC.               RICHARD CRAIG ASHBY IRREVOCABLE
                                             TRUST

By: _____                By: _____

Its: _____               Its: _____

DEIRDRE ASHBY IRREVOCABLE TRUST              BRADLEY ASHBY IRREVOCABLE TRUST


By: _____                By: _____

Its: _____               Its: _____


JUSTIN ASHBY IRREVOCABLE TRUST               JABRAL INVESTMENTS, LLC


By: _____                By: _____

Its: _____               Its: _MANAGER_____


ASHBY DEVELOPMENT COMPANY, INC.              BUTTERFIELD DEVELOPMENT
                                             COMPANY, INC.

By: _____                By: _____

Its: _____               Its: _____

101202-039/773453_6.doc                15

DEIRDRE ASHBY IRREVOCABLE TRUST

By: _Beate M Olah_

Its: _TRUSTEE_

JUSTIN ASHBY IRREVOCABLE TRUST

By: _____

Its: _____

ASHBY DEVELOPMENT COMPANY, INC.

By: _Justo K Ash_

Its: _President_

ASHBY USA, LLC

By: _Justo K Ash_

Its: _President_

TEN-NINETY, LTD.

By: _____

Its: _____

LUCAS FAMILY TRUST

By: _____

Its: _____

OAK MESA INVESTORS, LLC

By: _____

Its: _____

RICHARD CRAIG ASHBY IRREVOCABLE TRUST

By: _Beate M Olah_

Its: _TRUSTEE_

BRADLEY ASHBY IRREVOCABLE TRUST

By: _Beate M Olah_

Its: _TRUSTEE_

JABRAL INVESTMENTS, LLC

By: _____

Its: _____

BUTTERFIELD DEVELOPMENT COMPANY, INC.

By: _Justo K Ash_

Its: _President_

LAWRENCE E. REDMAN

_____

RANDOM DEVELOPMENTS, LLC

By: _Richard O Ashby_

Its: _PRESIDENT_

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/792962.doc

2

DEIRDRE ASHBY IRREVOCABLE TRUST

By:_____

Its:_____

JUSTIN ASHBY IRREVOCABLE TRUST

By: _William R Lucas_

Its: _Trustee_

ASHBY DEVELOPMENT COMPANY, INC.

By:_____

Its:_____

ASHBY USA, LLC

By:_____

Its:_____

TEN-NINETY, LTD.

By:_____

Its:_____

LUCAS FAMILY TRUST

By: _William R Lucas_

Its: _Trustee_

OAK MESA INVESTORS, LLC

By:_____

Its:_____


RICHARD CRAIG ASHBY IRREVOCABLE TRUST

By:_____

Its:_____

BRADLEY ASHBY IRREVOCABLE TRUST

By:_____

Its:_____

JABRAL INVESTMENTS, LLC

By:_____

Its:_____

BUTTERFIELD DEVELOPMENT COMPANY, INC.

By:_____

Its:_____

LAWRENCE E. REDMAN

_____

RANDOM DEVELOPMENTS, LLC

By:_____

Its:_____

Jordan Silver
Attorneys At Law
Ninth Floor
880 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/792962.doc

DEIRDRE ASHBY IRREVOCABLE TRUST

By: _Beta M Oloh_

Its: _TRUSTEE_

JUSTIN ASHBY IRREVOCABLE TRUST

By: _____

Its: _____

ASHBY DEVELOPMENT COMPANY, INC.

By: _Justo K Ash_

Its: _President_

ASHBY USA, LLC

By: _Justo K Ash_

Its: _President_

TEN-NINETY, LTD.

By: _Richard H. Ashby_

Its: _SECRETARY_

LUCAS FAMILY TRUST

By: _____

Its: _____

OAK MESA INVESTORS, LLC

By: _Richard K. Ashby_

Its: _____

RICHARD CRAIG ASHBY IRREVOCABLE TRUST

By: _Beta M Oloh_

Its: _TRUSTEE_

BRADLEY ASHBY IRREVOCABLE TRUST

By: _Beta M Oloh_

Its: _TRUSTEE_

JABRAL INVESTMENTS, LLC

By: _____

Its: _____

BUTTERFIELD DEVELOPMENT COMPANY, INC.

By: _Justo K Ash_

Its: _President_

LAWRENCE E. REDMAN

_____

RANDOM DEVELOPMENTS, LLC

By: _Richard Ashby_

Its: _PRESIDENT_

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/792962.doc

DEIRDRE ASHBY IRREVOCABLE TRUST

By:_____

Its:_____

JUSTIN ASHBY IRREVOCABLE TRUST

By:_____

Its:_____

ASHBY DEVELOPMENT COMPANY, INC.

By:_____

Its:_____

ASHBY USA, LLC

By:_____

Its:_____

TEN-NINETY, LTD.

By:_____

Its:_____

LUCAS FAMILY TRUST

By:_____

Its:_____

OAK MESA INVESTORS, LLC

By:_____

Its:_____

RICHARD CRAIG ASHBY IRREVOCABLE TRUST

By:_____

Its:_____

BRADLEY ASHBY IRREVOCABLE TRUST

By:_____

Its:_____

JABRAL INVESTMENTS, LLC

By: _Lawrence E Redman_

Its: _Manager_

BUTTERFIELD DEVELOPMENT COMPANY, INC.

By:_____

Its:_____

LAWRENCE E. REDMAN

_Lawrence E Redman_

RANDOM DEVELOPMENTS, LLC

By:_____

Its:_____

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/792962.doc

2

ASHBY USA, LLC                          LAWRENCE E. REDMAN

By: _____          _____

Its: _____President_____


TEN-NINETY, LTD.                        LUCAS FAMILY TRUST

By: _____          By: _____

Its: _____         Its: _____


RANDOM DEVELOPMENTS, LLC                OAK MESA INVESTORS, LLC

By: _____          By: _____

Its: _____PRESIDENT_____      Its: _____

101202-039/773453_6.doc                 16

ASHBY USA, LLC                          LAWRENCE E. REDMAN

By: _____            _____

Its: _____President_____


TEN-NINETY, LTD.                        LUCAS FAMILY TRUST

By: _____            By: _____

Its: _____SECRETARY_____           Its: _____


RANDOM DEVELOPMENTS, LLC                OAK MESA INVESTORS, LLC

By: _____            By: _____

Its: _____PRESIDENT_____           Its: _____


101202-039/773453_6.doc                16

ASHBY USA, LLC                          LAWRENCE E. REDMAN

By:_____              _____

Its:_____  _____


TEN-NINETY, LTD.                        LUCAS FAMILY TRUST

By:_____              By: _William R Lucas_____

Its:_____  _____               Its: _Trustee_____


RANDOM DEVELOPMENTS, LLC                OAK MESA INVESTORS, LLC

By:_____              By: _____

Its:_____             Its: _____


101202-039/773453_6.doc          16

ASHBY USA, LLC                        LAWRENCE E. REDMAN

By:_____          _____

Its:_____


TEN-NINETY, LTD.                     LUCAS FAMILY TRUST


By:_____         By:_____

Its:_____         Its:_____


RANDOM DEVELOPMENTS, LLC             OAK MESA INVESTORS, LLC


By:_____         By:_____

Its:_____         Its:_____

# EXHIBIT B

B 10 (Official Form 10) (04/07)

| UNITED STATES BANKRUPTCY COURT _____ | DISTRICT OF NEVADA | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>USA INVESTMENT PARTNERS, LLC. | Case Number<br>BK-S-07-11821-LBR | |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>LAWRENCE E. REDMAN | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | |
|---|---|---|
| Name and address where notices should be sent:<br>Lawrence E. Redman<br>470 E. Harrison Street<br>Corona, CA 92879<br><br>Telephone number: (951) 898-1692 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |
| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends a previously filed claim, dated: | |

| 1. Basis for Claim | | |
|---|---|---|
| ☐ Goods sold | ☐ Personal injury/wrongful death | ☐ Wages, salaries, and compensation (fill out below) |
| ☐ Services performed | ☐ Taxes | Last four digits of your SS #: _____<br>Unpaid compensation for services performed |
| ☒ Money loaned | ☒ Other See Attachment 1<br>Retiree benefits as defined in 11 U.S.C. § 1114(a) | From _____ to _____<br>(date)          (date) |

| 2. Date debt was incurred:<br>12/26/02 | 3. If court judgment, date obtained: |
|---|---|

4. Classification of Claim. Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time the case was filed.
See reverse side for important explanations.

**Unsecured Nonpriority Claim** $ See Attachment 1

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim**

☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority $ _____

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a) (1) (A) or (a) (1) (B).

☐ Wages, salaries, or commissions (up to $10,950),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a) (4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a) (5).

**Secured Claim**

☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate          ☐ Other Member Interest
☐ Motor Vehicle

Value of Collateral: $ Unknown

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a) (7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a) (8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a) (_____).

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

| 5. Total Amount of Claim at Time Case Filed: | $ See Attachment 1 | | | See Attachment 1 |
|---|---|---|---|---|
| | (unsecured) | (secured) | (priority) | (total) |

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

| 6. Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| 7. Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. | |
| 8. Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | |

| Date<br>9-10-07 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney if any):<br>Lawrence E. Redman |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

American LegalNet, Inc.
www.FormsWorkflow.com

PROOF OF CLAIM FOR LAWRENCE E. REDMAN
U.S. BANKRUPTCY COURT, DISTRICT OF NEVADA
CASE NO. 07-11821

Attachment 1

Section 1, Basis for Claim—"Other"

- Breach of Obligation under Operating Agreement
- Principal and Interest on Loan plus any default interest, late fees or other charges, if any due on the Loan(s)
- Misrepresentation, fraud non-disclosure, concealment, bad faith, fraudulent inducements, unjust enrichment and/or violations of law by USAIP.

Section 5.  Total Amount of Claim at Time Case Filed:

- See Attached Schedule of Claim

Section 7. Supporting Documents Summary

- Promissory Note-$4,150,000 dated 12/26/02
- Deed of Trust dated 12/26/02
- Guaranty dated 1/20/03
- Loan Extension agreement dated 7/28/04
- Loan Extension agreement dated 12/08/05
- Loan Statements
- Correspondence regarding loan

**Capital Land Investors / Ten-Ninety, Ltd.**
**Principal and Regular Compounded Interest on $4,150,000 Note**
**At April 3, 2007**

| | |
|---|---|
| Principal Due | $ 4,150,000.00 |
| Regular Compounded Interest Through 4/3/07 | 2,609,605.57 |
| Total Principal and Regular Compounded Interest Due 4/3/07 | $ 6,759,605.57 |

Additional Charges: Default interest, late fees or other charges, if any due on the Loan(s)
and the 20% Preferred Return and 10% Re-Allocated Distribution under the
(applicable LLC) Operating Agreement. Recoupment and setoff of all of these
amounts are asserted against the USAIP Member Distribution. Additional unknown
amounts are claimed for misrepresentation, fraud, non-disclosure, concealment,
bad faith, fraudulent inducements, unjust enrichment and/or violations of law by USAIP.

# **EXHIBIT C**

1    GORDON SILVER
     GERALD M. GORDON, ESQ.                          E-FILED ON: 11-19-09
2    Nevada Bar No. 229
     E-mail: ggordon@gordonsilver.com
3    GREGORY E. GARMAN, ESQ.
     Nevada Bar No. 6654
4    E-mail: ggarman@gordonsilver.com
     TALITHA B. GRAY, ESQ.
5    Nevada Bar No. 9040
     E-mail: tgray@gordonsilver.com
6    3960 Howard Hughes Pkwy., 9th Floor
     Las Vegas, Nevada 89169
7    Telephone (702) 796-5555
     Facsimile (702) 369-2666
8    Attorneys for Lisa Poulin, Trustee for
     USA Investment Partners, LLC

9

                    **UNITED STATES BANKRUPTCY COURT**
10
                       **FOR THE DISTRICT OF NEVADA**
11

12   | In re: | Case No.: 07-11821-LBR |
     |        | Chapter 11 |
13   | USA INVESTMENT PARTNERS, LLC, | |
     |        | Adv No.: 09-1129-LBR |
14   | Debtor. | |
     |        | Date: December 18, 2009 |
15   |        | Time: 9:30 a.m. |

16   **MOTION SEEKING THE APPROVAL OF THE SETTLEMENT AGREEMENT WITH
     THE FIESTA PARTIES**
17
              Lisa M. Poulin, the Chapter 11 trustee ("Trustee") for USA Investment Partners, LLC
18
     ("Debtor"), by and through her counsel, the law firm of Gordon Silver, hereby submits her
19
     <u>Motion Seeking The Approval Of The Settlement Agreement With The Fiesta Parties</u> (the
20
     "Motion"), thereby seeking entry of an order approving that certain Settlement Agreement And
21
     Release Of Claims (the "Settlement Agreement") by and between Debtor, on the one hand, and
22
     Richard K. Ashby ("R. Ashby"), Deanna G. Ashby ("D. Ashby"), Ashby Financial Company,
23
     Inc. ("Ashby Financial"), the Richard Craig Ashby Irrevocable Trust ("R. Ashby Trust"), the
24
     Deirdre Ashby Irrevocable Trust ("D. Ashby Trust"), the Bradley Ashby Irrevocable Trust ("B.
25
     Ashby Trust"), the Justin Ashby Irrevocable Trust ("J. Ashby Trust"), Jabral Investments, LLC
26
     ("Jabral Investments"), Ashby Development Company, Inc. ("Ashby Development"), Butterfield
27
     Development Company, Inc. ("Butterfield"), Ashby USA, LLC ("Ashby USA"), Fiesta
28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/793087.doc                              1

1    Development Company, Inc. ("Fiesta Development"), Random Developments, LLC

2    ("Random"), Lawrence E. Redman ("L. Redman"), the Lucas Family Trust (the "L. Family

3    Trust"), Ten-Ninety, Ltd. ("Ten-Ninety"), and Oak Mesa Investors, LLC ("Oak Mesa"), on the

4    other.  R. Ashby, D. Ashby, Ashby Financial, the R. Ashby Trust, the D. Ashby Trust, the J.

5    Ashby Trust, the B. Ashby Trust, Jabral Investments, Ashby Development, Butterfield, Ashby

6    USA, Fiesta Development, Random, L. Redman, L. Family Trust, Ten-Ninety, and Oak Mesa

7    may be referred to herein collectively as the "Fiesta Parties."  The Fiesta Parties and Debtor may

8    be referred to herein collectively as the "Parties" and individually as a "Party."

9        This Motion is made and based on the points and authorities listed herein, Rule[1] 9019, the

10   Declaration Of Lisa M. Poulin In Support Of The Motion Seeking The Approval Of The

11   Settlement Agreement With The Fiesta Parties (the "Poulin Declaration"), filed concurrently

12   herewith, the pleadings, papers, and other records on file with the clerk of the above-captioned

13   Court, judicial notice of which is hereby respectfully requested, and any argument of counsel

14   entertained by the Court at the time of the hearing of the Motion.

## I.
## PERTINENT FACTS

**A.    The Commencement Of The Bankruptcy Case And Trustee's Appointment.**

1.    On April 4, 2007 ("Petition Date") USA Capital Diversified Trust Deed Fund,
LLC ("DTDF"), the USACM Liquidating Trust, and Alabruj Investments, LLC filed an
involuntary Chapter 11 petition against Debtor, thereby commencing bankruptcy case number
BK-S-07-11821-LBR (the "USAIP Bankruptcy Case") also pending before this Court.  See
docket no. 1.  Two days after the commencement of the USAIP Bankruptcy Case, on April 6,
2007, the Court appointed Trustee as Debtor's interim Chapter 11 trustee.  See docket nos. 13
and 14.  Thereafter, on May 9, 2007, an order for relief was entered in the USAIP Bankruptcy
Case, with Trustee becoming Debtor's permanent Chapter 11 trustee.  See docket no. 101.

---

[1] Unless otherwise expressly stated herein, all references to Chapters or Sections shall refer to 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and all Rule references shall refer to the Federal Rules of Bankruptcy Procedure, 1001-9036.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/793087.doc

2

2.     Debtor is a Nevada limited liability company that prepetition primarily served as a holding company for a number of entities, the vast majority of which were engaged in land acquisition and real estate development. See Poulin Declaration ¶ 4.

**B.    The Fiesta Projects.**

3.     On the Petition Date, Debtor, together with certain of the Fiesta Parties, were engaged in the development of three real estate projects located in California referred to as the Roripaugh Project, the Stoneridge Project, and the Oak Mesa Project. See id. ¶ 5.

**1.    The Roripaugh Project.**

4.     Ashby USA is a California limited liability company managed by Ashby Development, whose members are Ashby Development - 40%, Butterfield - 10%, and Debtor - 50%. On the Petition Date, Ashby USA was involved in the development of Roripaugh Ranch, which was a development in Temecula, California comprised of approximately 804 acres, which had been approved for 2,015 dwelling units, 110 square feet of retail, a 12-acre elementary school site, a 20-acre middle school site, a 19.7-acre sports park, a 4.8-acre neighborhood park, a fire station, 202.7 acres of open space, flood control improvements to Santa Gertrudes Creek and Long Valley Wash, and on-site and off-site infrastructure improvements (the "RR Property"). See id. ¶ 6.[2]

5.     On the Petition Date, the RR Property was encumbered by liens in excess of $115,000,000, which debt is currently in default. Due in significant part to the collapse of the real estate market, as well as the City of Temecula's refusal to issue bonds allegedly as a result of nondisclosures relating to the commencement of USA Commercial Mortgage Company's bankruptcy case, Ashby USA has been unable to date to obtain financing or to otherwise restructure its debt in furtherance of completing the Roripaugh Ranch Project. See id. ¶ 7.

---

[2] In the interest of brevity, that portion of the Trustee's second status report discussing the Roripaugh Ranch Project is incorporated herein by this reference. See Chapter 11 Trustee's Second Statement Pursuant To 11 U.S.C. § 1106(a)(3) And (4) (the "Second Trustee Report"), at pp. 54-55, docket no. 461.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/793087.doc

3

## 2. **The Stoneridge Project.**

6.     On the Petition Date, Capital Land Investors, LLC ("CLI") and Random were involved in the development of the Stoneridge Estates, which was an approximately 687-acre development in Perris, California with the planned development for approximately 2,200 lots (the "Stoneridge Property"). This project was structured such that CLI owned the foregoing real property and Random functioned as the developer. The Stoneridge Property was encumbered by a direct lender loan that was serviced by Compass Financial ("Compass"), which loan, as of February 28, 2007, was in interest default with outstanding principal of $10M and outstanding interest of approximately $4.057M. This property further served as security in a sum not to exceed $44M for the Ohio Savings Bank loan on the Roripaugh Ranch Project. Despite CLI, Random, and Trustee's extensive efforts to market and sell the Stoneridge Property in an effort to realize value for equity, due to the collapse of the real estate market, such efforts were unsuccessful and Compass ultimately foreclosed on the Stoneridge Property, thereby rendering CLI and Random valueless. See id. ¶ 8.[3]

## 3. **The Oak Mesa Project.**

7.     On the Petition Date, Oak Mesa was involved with Buffalo Land Development Company, LLC ("Buffalo Development") in the development of Mesa Verde Estates, which was comprised of approximately 1,500 acres in Calimesa, California approved for up to 3,450 residential units (the "Oak Mesa Property"). This project was structured such that Oak Mesa owned the Oak Mesa Property and Buffalo Development functioned as the developer. On the Petition Date, the Oak Mesa Property was encumbered by a direct lender loan serviced by Compass, which loan was in interest default. Despite Oak Mesa, Buffalo Development, and Trustee's efforts to market and sell the Oak Mesa Property for a sum in excess of the secured debt, such efforts were precluded by the collapse of the real estate market. Compass

---

[3]  In the interest of brevity, that portion of the Trustee's second status report discussing the Stoneridge Project is incorporated herein by this reference. See Second Trustee Report, at pp. 56-57, docket no. 461.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/793087.doc

subsequently foreclosed on the Oak Mesa Property, thereby rendering Oak Mesa and Buffalo Development valueless. See id. ¶ 9.[4]

**C.    The Fiesta Parties' Proofs Of Claim.[5]**

9.     The Court established the bar date for filing proofs of claim or interests as September 11, 2007 (the "Bar Date"). See docket no. 254. Prior to the Bar Date, the Fiesta Parties filed the following proofs of claim, which proofs of claim relate to the Roripaugh Ranch Project, the Stoneridge Project, and the Oak Mesa Project.

**1.    Proof of claim nos. 64, 73, 77, 81, and 85.**

10.     On or about September 10, 2007, Jabral Investments filed proof of claim no. 64 ("Claim No. 64"), the R. Ashby Trust filed proof of claim no. 73 ("Claim No. 73") , the D. Ashby Trust filed proof of claim no. 77 ("Claim No. 77"), the B. Ashby Trust filed proof of claim no. 81 ("Claim No. 81"), and the J. Ashby Trust filed proof of claim no. 85 ("Claim No. 85," and collectively with Claim Nos. 64, 73, 77, and 81, the "CLI Capital Contribution Claims").

11.     Claim No. 64 asserts a secured claim in the amount of $177,391.18, plus additional charges. Claim Nos. 73, 77, 81, and 85 each asserts a secured claim in the amount of $44,347.83, plus additional charges. The stated CLI Capital Contribution Claims are premised on Debtor's alleged obligation under CLI's operating agreement to tender capital contributions. The CLI Capital Contribution Claims also assert that any money due under such claims is subject to recoupment and setoff against any distribution tendered by CLI on account of Debtor's membership interest in CLI.

**2.    Proof of claim nos. 66, 74, 78, 82, and 86.**

12.     On or about September 10, 2007, Jabral Investments filed proof of claim no. 66 ("Claim No. 66"), the R. Ashby Trust filed proof of claim no. 74 ("Claim No. 74"), the D. Ashby Trust filed proof of claim no. 78 ("Claim No. 78"), the B. Ashby Trust filed proof of claim no.

---

[4] In the interest of brevity, that portion of the Trustee's second status report discussing the Oak Mesa Project is incorporated herein by this reference. See Second Trustee Report, at pp. 57-58, docket no. 461.

[5] For ease of reference, copies of the Proofs of Claim, which Proofs of Claim are all available on the Court's Claims Register, are attached hereto as Exhibits "1" - "52."

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/793087.doc

5

1  82 ("Claim No. 82"), and the J. Ashby Trust filed proof of claim no. 86 ("Claim No. 86," and

2  collectively with Claim Nos. 66, 74, 78, and 82, the "CLI Expense Payments Claims").

3        13.    Claim No. 66 asserts a secured claim in the amount of $93,000, plus additional

4  charges. Claim Nos. 74, 78, 82, and 86 each assert a secured claim in the amount of $10,750.00,

5  plus additional charges. The CLI Expense Payments Claims are premised on Debtor's alleged

6  obligation under CLI's operating agreement to pay a portion of CLI's expenses. The CLI

7  Expense Payments Claims also assert that any money due under such claims is subject to

8  recoupment and setoff against any distribution tendered by CLI on account of Debtor's

9  membership interest in CLI.

10        **3.**    **Proof of claim nos. 89, 90, 97, 98, and 112 through 116.**

11        14.    On or about September 10, 2007, R. Ashby filed proof of claim no. 89 ("Claim

12  No. 89"), L. Redman filed proof of claim no. 90 ("Claim No. 90"), Ten-Ninety filed proof of

13  claim no. 97 ("Claim No. 97"), the L. Family Trust filed proof of claim no. 98 ("Claim No. 98"),

14  Jabral Investments filed proof of claim no. 112 ("Claim No. 112"), the R. Ashby Trust filed

15  proof of claim no. 113 ("Claim No. 113"), the D. Ashby Trust filed proof of claim no. 114

16  ("Claim No. 114"), the J. Ashby Trust filed proof of claim no. 115 ("Claim No. 115"), and the B.

17  Ashby Trust filed proof of claim no. 116 ("Claim No. 116," and collectively with Claim Nos. 89,

18  90, 97, 98, 112, 113, 114, and 115, the "CLI $4,150,000 Promissory Note Claims").

19        15.    Each of the respective CLI $4,150,000 Promissory Note Claims asserts a secured

20  claim in the amount of $6,759,605.57 for money loaned. The CLI $4,150,000 Promissory Note

21  Claims are based on Debtor's alleged obligation under CLI's operating agreement to repay a

22  promissory note in the principal amount of $4,150,000. The CLI $4,150,000 Promissory Note

23  Claims also assert that any money due under such claims is subject to recoupment and setoff

24  against any distribution tendered by CLI on account of Debtor's membership interest in CLI.

25        **4.**    **Proofs of claim nos. 91 through 96.**

26        16.    On or about September 10, 2007, the R. Ashby Trust filed proof of claim no. 91

27  ("Claim No. 91"), the D. Ashby Trust filed proof of claim no. 92 ("Claim No. 92"), the J. Ashby

28  Trust filed proof of claim no. 93 ("Claim No. 93"), the B. Ashby Trust filed proof of claim no.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/793087.doc

6

1   94 ("Claim No. 94"), Random filed proof of claim no. 95  ("Claim No. 95"), and Fiesta

2   Development filed proof of claim no. 96 ("Claim No. 96," and collectively with Claim Nos. 91,

3   92, 93, 94, and 95, the "CLI $10,000,000 Promissory Note Claims").

4          17.    Each of the respective CLI $10,000,000 Promissory Note Claims asserts a secured

5   claim in the amount of $14,230,675.39 for money loaned.  The CLI $10,000,000 Promissory

6   Note Claims are premised on Debtor's alleged obligation under CLI's operating agreement to

7   repay a promissory note due and owing by CLI in the principal amount of $10,000,000.  The CLI

8   $10,000,000 Promissory Note Claims also assert that any money due under the CLI $10,000,000

9   Promissory Note Claims are subject to recoupment and setoff against any distribution tendered

10   by CLI on account of Debtor's membership interest in CLI.

11      **5.**      **Proof of claim nos. 106 though 110.**

12          18.    On or about September 10, 2007, Jabral Investments filed proof of claim no. 106

13   ("Claim No. 106"), the R. Ashby Trust filed proof of claim no. 107 ("Claim No. 107"), the J.

14   Ashby Trust filed proof of claim no. 108 ("Claim No. 108"), the D. Ashby Trust filed proof of

15   claim no. 109 ("Claim No. 109"), the B. Ashby Trust filed proof of claim no. 110 ("Claim No.

16   110," and collectively with Claim Nos. 106, 107, 108, and 109, the "Additional CLI $10,000,000

17   Promissory Note Claims").

18          19.    Claim No. 106 asserts a secured claim in the amount of $7,115,337.71.  Claim

19   Nos. 107 through 110 each assert a secured claim in the amount of $1,778,834.42.  The

20   Additional CLI $10,000,000 Promissory Note Claims are premised on Debtor's alleged

21   obligation under CLI's operating agreement to repay a promissory note due and owing by CLI in

22   the principal amount of $10,000.  The Additional CLI $10,000,000 Promissory Note Claims also

23   assert that any money due under such claims is subject to recoupment and setoff against any

24   distribution tendered on account of Debtor's membership interest.

25      **6.**      **Proof of claim nos. 67, 75, 79, 83, and 87.**

26          20.    On or about September 10, 2007, Jabral Investments filed proof of claim no. 67

27   ("Claim No. 67"), the R. Ashby Trust filed proof of claim no. 75 ("Claim No. 75"), the D. Ashby

28   Trust filed proof of claim no. 79 ("Claim No. 79"), the B. Ashby Trust filed proof of claim no.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/793087.doc

83 ("Claim No. 83"), and the J. Ashby Trust filed proof of claim no. 87 ("Claim No. 87," and collectively with Claim Nos. 67, 75, 79, and 83, the "Oak Mesa Capital Contribution Claims").

21.    Claim No. 67 asserts a secured claim in the amount of $42,205.37, plus additional charges. Claim Nos. 75, 79, 83, and 87 each assert a secured claim in the amount of $10,551.37, plus additional charges. The Oak Mesa Capital Contribution Claims are premised on Debtor's alleged obligation under Oak Mesa's operating agreement to tender capital contributions. The Oak Mesa Capital Contribution Claims also assert that any money due under such claims is subject to recoupment and setoff against any distribution tendered by Oak Mesa on account of Debtor's membership interest in Oak Mesa.

**7.    Proof of claim nos. 68, 76, 80, 84, and 88.**

22.    On or about September 10, 2007, Jabral Investments filed proof of claim no. 68 ("Claim No. 68"), the R. Ashby Trust filed proof of claim no. 76 ("Claim No. 76"), the D. Ashby Trust filed proof of claim no. 80 ("Claim No. 80"), the B. Ashby Trust filed proof of claim no. 84 ("Claim No. 84"), and the J. Ashby Trust filed proof of claim no. 88 ("Claim No. 88," and collectively with Claim Nos. 68, 76, 80, and 84, the "Oak Mesa Expense Payments Claims").

23.    Claim No. 68 asserts a secured claim in the amount of $40,000, plus additional charges. Claim Nos. 76, 80, 84, and 88 each assert a secured claim in the amount of $10,000, plus additional charges. The Oak Mesa Expense Payments Claims are premised on Debtor's alleged obligation under Oak Mesa's operating agreement to pay a portion of Oak Mesa's expenses. The Oak Mesa Expense Payments Claims also assert that any money due under such claims is subject to recoupment and setoff against any distribution tendered by Oak Mesa on account of Debtor's membership interest in Oak Mesa.

**8.    Proof of claim nos. 101 though 105.**

24.    On or about September 10, 2007, Jabral Investments filed proof of claim no. 101 ("Claim No. 101"), the R. Ashby Trust filed proof of claim no. 102 ("Claim No. 102"), the D. Ashby Trust filed proof of claim no. 103 ("Claim No. 103"), the J. Ashby Trust filed proof of claim no. 104 ("Claim No. 104") and the B. Ashby Trust filed proof of claim no. 105 ("Claim

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/793087.doc

8

1    No. 105," and collectively with Claim Nos. 101, 102, 103, and 104, the "Oak Mesa "$20,500,00

2    Promissory Note Claims").

3          25.     Claim No. 101 asserts a secured claim in the amount of $13,742,596.06, plus

4    additional interest. Claim Nos. 102 through 105 each assert a secured claim of $3,435,649.01,

5    plus additional interest. The Oak Mesa $20,500,00 Promissory Note Claims are premised on

6    Debtor's alleged obligation under Oak Mesa's operating agreement to repay a promissory note

7    due and owing by Oak Mesa in the principal amount of $20,500,000. The Oak Mesa $20,500,00

8    Promissory Note Claims also asserts that any money due under such claims is subject to

9    recoupment and setoff against any distribution tendered on account of Debtor's membership

10   interest in Oak Mesa.

11        **9.**    **Proof of claim no. 99.**

12         26.     On or about September 10, 2007, Ashby Development and Butterfield filed proof

13   of claim no. 99 ("Claim No. 99") asserting a secured claim in the amount of $19,221,555.06.

14   Claim No. 99 is premised on Debtor's alleged breach of its alleged obligation under Ashby

15   USA's operating agreement. Claim No. 99 also asserts that any money due under Claim No. 99

16   is subject to recoupment and setoff against any distribution tendered by Ashby USA on account

17   of Debtor's membership interest in Ashby USA.

18        **10.**   **Proof of claim no. 100.**

19         27.     On or about September 10, 2007, Ashby USA filed proof of claim no. 100

20   ("Claim No. 100"), asserting a secured claim in the amount of $2,090,035. Claim No. 100 is

21   premised on Debtor's alleged obligation under Ashby USA's operating agreement to tender

22   capital contributions and to pay a portion of Ashby USA's expenses. Claim No. 100 also asserts

23   that any money due under Claim No. 100 is subject to recoupment and setoff against any

24   distribution tendered by Ashby USA on account of Debtor's membership interest in Ashby USA.

25        **11.**   **Proof of claim no. 69.**

26         28.     On or about September 12, 2007, Fiesta Development filed proof of claim no. 69

27   ("Claim No. 69") asserting a secured claim in the amount of $1,090,057.07. Claim No. 69 is

28   premised on Debtor's alleged obligation under Random's operating agreement to tender capital

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/793087.doc

9

1  contributions. Claim No. 69 also asserts that any money due under Claim No. 69 is subject to

2  recoupment and setoff against any distribution tendered by Random on account of Debtor's

3  membership interest in Random.

4          **12.**     **Proof of claim no. 70.**

5          29.     On or about September 11, 2007, Fiesta Development filed proof of claim no. 70

6  ("Claim No. 70"), asserting a secured claim in the amount of $59,859.85. Claim No. 70 is

7  premised on Debtor's alleged obligation under Random's operating agreement to pay a portion

8  of Random's expenses. Claim No. 70 also asserts that any money due under Claim No. 70 is

9  subject to recoupment and setoff against any distribution tendered by Random on account of

10 Debtor's membership interest in Random.

11         **13.**     **Proof of Claim No. 71.**

12         30.     On or about September 11, 2007, Fiesta Development filed proof of claim no. 71

13 ("Claim No. 71"), asserting a secured claim in the amount of $3,463,207.41. Claim No. 71 is

14 premised on Debtor's alleged obligation under Buffalo Development's operating agreement to

15 tender capital contributions. Claim No. 71 also asserts that any money due under Claim No. 71

16 is subject to recoupment and setoff against any distribution tendered by Buffalo Development on

17 account of Debtor's membership interest in Buffalo Development.

18         **14.**     **Proof of claim no. 72.**

19         31.     On or about September 11, 2007, Fiesta Development filed proof of claim no. 72

20 ("Claim No. 72"), asserting a secured claim in the amount of $257,411.32. Claim No. 72 is

21 premised on Debtor's alleged obligation under Buffalo Development's operating agreement to

22 pay a portion of Buffalo Development's expenses. Claim No. 72 also asserts that any money due

23 under Claim No. 72 is subject to recoupment and setoff against any distribution tendered by

24 Buffalo Development on account of Debtor's membership interest in Buffalo Development.

25         **15.**     **Proof of claim no. 111.**

26         32.     On or about September 1, 2007, Oak Mesa filed proof of claim No. 111 ("Claim

27 No. 111," and collectively with the CLI Capital Contribution Claims, the CLI Expense Payments

28 Claims, the CLI $4,150,000 Promissory Note Claims, the CLI $10,000,000.00 Promissory Note

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/793087.doc

10

1   Claims, the Additional CLI $10,000,000 Promissory Note Claims, the Oak Mesa Capital

2   Contribution Claims, the Oak Mesa Expense Payments Claims, the Oak Mesa $20,500,00

3   Promissory Note Claims, Claim No. 69, Claim No. 70, Claim No. 71, Claim No. 72, Claim No.

4   99, and Claim No. 100, the "Proofs of Claims"), asserting a secured claim in the amount of

5   $27,485,192.10.

6        33.    Claim No. 111 is premised on Debtor's alleged obligation under Buffalo

7   Development's operating agreement to repay a promissory note due and owing by Buffalo

8   Development in the principal amount of $20,500,000. Claim No. 111 also asserts that any

9   money due under such claims is subject to recoupment and setoff against any distribution

10  tendered on account of Debtor's membership interest in Buffalo Development.

11       34.    Every Proof of Claim additionally states that additional unknown amounts are

12  claimed for misrepresentation, fraud, non-disclosure, concealment, bad faith, fraudulent

13  inducement, unjust enrichment, and/or violations of law by Debtor.

14  **D.    The Ashby USA Note And Guarantee.**

15       35.    On or about May 1, 2001, Debtor provided Ashby USA with a loan in the

16  principal sum of $4,250,000 (the "Loan"). See Poulin Declaration ¶ 11.

17       36.    As consideration for the Loan, on or about May 1, 2001, Ashby USA executed

18  and delivered to Debtor that certain Promissory Note Secured By Deed Of Trust in the principal

19  sum of $4,250,000, together with interest at the rate of fourteen and one half percent (14.5%) per

20  annum from May 1, 2001, all due and payable on or before March 21, 2003 (the "Note"). See id.

21       37.    Concurrently with the execution of the Note, Ashby USA also executed that

22  certain Deed Of Trust recorded on or about March 21, 2002 as Document No. 2002-0143547 in

23  the Official Records of Riverside County, State of California (the "Deed Of Trust"). See id.

24       38.    On or about March 12, 2002, R. Ashby, Ashby Development, and Butterfield

25  executed and delivered a guarantee to Debtor (the "Guarantee"), thereby guaranteeing repayment

26  of the Loan. The Guarantee additionally provided for joint and several liability of R. Ashby,

27  Ashby Development, and Butterfield for all of the obligations under the Guarantee. See id. ¶ 12.

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/793087.doc

11

39. On or about September 30, 2005, Debtor, R. Ashby, Ashby USA, Ashby Development, and Butterfield entered into that certain First Amendment To Loan Documents (the "First Amended Note," and together with the Note, the "Amended Note"), which, among other things: (1) increased the amount of the Note from $4,250,000.00 to $9,186,227.01; (2) established the accrued interest on the Note as of September 30, 2006 as $2,394,024.66; (3) extended the maturity date of the Note from March 21, 2002 to December 31, 2007; and (4) reaffirmed that the Guarantee remained in full force and effect. See id. ¶ 13.

40. Concurrently with the execution of the Amended Note, Ashby USA executed that certain First Amendment To Deed Of Trust (together with the Deed Of Trust, the "Amended Deed of Trust"), thereby amending the Deed Of Trust to increase the amount secured thereby from $4,250,000 to $9,186,227.01, plus all accrued and accruing interest and fees. See id. ¶ 14.

41. Trustee is in the process of finalizing an agreement for the sale of the Amended Note and Amended Deed of Trust, as well as Debtor's membership interest in Ashby USA, which agreement is subject to over-bid at an auction that will be held before this Court. See id. ¶ 15.

E.    **The Adversary Proceeding.**

42. On or about May 9, 2009, Poulin filed her complaint (the "Complaint") against R. Ashby, D. Ashby, Fiesta Development, and Ashby Financial (collectively, the "Adversary Defendants"), thereby commencing adversary proceeding No. 09-1129-LBR (the "Adversary Proceeding"), also pending before this Court. See id. ¶ 16; see also Complaint, docket no. 1, in adv. no. 09-1129.

43. Through the Complaint, Poulin alleged that during 2004 through 2007, Debtor paid the Adversary Defendants the aggregate sum of $1,392,250.67 (the "Payments"). Poulin has sought the avoidance and recovery of the Payments pursuant to 11 U.S.C. §§ 544, 547, 548, 550, and/or NRS 112.180, and has further sought damages in connection with unjust enrichment and money had and received causes of action (collectively, the "Adversary Claims"). See Poulin Declaration ¶ 17; see also Complaint, docket no. 1, in adv. no. 09-1129.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/793087.doc

12

44.    The Adversary Defendants dispute the allegations set forth in the Complaint and have raised defenses to the Adversary Claims. See id. ¶ 18.

45.    In order to minimize the cost and expense of litigation, as well as the extensive time that must be dedicated to litigating Debtor's respective disputes with the Fiesta Parties and in view of the risk inherent in proceeding to trial, the parties have engaged in settlement negotiations to resolve their respective disputes. These settlement discussions, which have been at arms-length and in good faith, have culminated in the Settlement Agreement. See id. ¶ 19.

46.    Accordingly, by way of this Motion, approval of the Settlement Agreement is sought, which Settlement Agreement provides in pertinent part as follows:

A.    On the Effective Date (as defined herein), L. Redman shall have an allowed general unsecured claim in the USAIP Bankruptcy Case in the sum of $3,000,000, which allowed general unsecured claim shall be treated and paid through a confirmed plan of reorganization consistent with all other allowed general unsecured claims filed in the USAIP Bankruptcy Case (the "L. Redman Allowed Claim").[6]

B.    On the Effective Date (as defined herein), the Judgment attached hereto as Exhibit "A" shall be submitted to and entered by the Nevada Bankruptcy Court against Ashby Development in the amount of $9,186,227.01 (the "Stipulated Judgment").

C.    Upon the Effective Date (as defined herein), with the express reservation of all rights relating to the repayment of and/or collection on the Stipulated Judgment, Debtor hereby fully and completely releases and forever discharges each of the Fiesta Parties except Ashby USA from any and all claims, causes of action, demands, liabilities, obligations, rights, injuries, expenses, damages, and losses, whether known or unknown, contingent or non-contingent, patent or latent, which Debtor now owns or holds, or at any time heretofore owned or held, or which it may otherwise have (past, present, and future). For the avoidance of doubt, the releases provided by Debtor through this Agreement expressly exclude Ashby USA.

D.    Upon the Effective Date (as defined herein), with the express reservation of the L. Redman Allowed Claim, the Fiesta Parties hereby fully and completely release and forever discharge Poulin and Debtor and all of their officers, directors, employees, agents, attorneys, partners, members, representatives, shareholders, insurers, successors, and assigns

---

[6]  The L. Redman Allowed Claim solely provides L. Redman with a general unsecured claim on account of Claim No. 90, which unsecured, nonpriority claim is solely allowed in the amount of $3,000,000.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/793087.doc                    13

from any and all claims, causes of action, demands, liabilities, obligations, rights, injuries, expenses, damages, and losses, whether known or unknown, contingent or non-contingent, patent or latent, which the Fiesta Parties now own or hold, or at any time heretofore owned or held, or which they may otherwise have (past, present, and future).

E.     Upon Effective Date (as defined herein), the Proofs of Claim now or hereafter filed by the Fiesta Parties in the USAIP Bankruptcy Case seeking any monetary reimbursement, damages, or any other monetary compensation of any kind, and any non-monetary compensation of any kind are hereby withdrawn with prejudice. The Fiesta Parties forever release and discharge any and all claims, causes of action, demands, liabilities, obligations, rights, injuries, expenses, damages, and losses, whether known or unknown, contingent or non-contingent, patent or latent, which the Fiesta Parties, and each of them, now have, may now claim to have, or may hereinafter claim to have against Debtor and/or Poulin, including their officers, directors, employees, agents, attorneys, partners, members, representatives, shareholders, insurers, successors, and assigns.

F.     The releases set forth in this Agreement shall not alter any obligation owed by Ashby Development with regard to the Stipulated Judgment and/or Debtor's ability to pursue the collection on the Stipulated Judgment under applicable law.

G.     The releases set forth in this Agreement shall not alter any obligation or liability owed by Ashby USA on or in connection with the Note, the Amended Note, the Deed of Trust, and/or the Amended Deed of Trust.

H.     Further, the releases shall not alter Debtor's membership interest in Ashby USA or its rights relating to or arising from such membership interest.

I.     The releases set forth in this Agreement shall not alter L. Redman's rights provided under this Agreement with regard to the L. Redman Allowed Claim.

J.     As used herein, "Effective Date" means the first business day that is eleven (11) days after: (1) the entry of an order by the Nevada Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure authorizing Debtor to enter into the Agreement (the "USAIP Approval Order"); and (2) the entry of an order by the United States Bankruptcy Court for the Central District of California in Bankruptcy Case No. 2:08-21925-ER pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure authorizing L. Redman to enter into the Agreement (the "L. Redman Approval Order," and together with the USAIP Approval Order, the "Approval Orders").

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/793087.doc

14

K.    Poulin shall file a motion seeking the entry of the USAIP Approval Order on or before November 20, 2009, which motion shall be set for hearing on or before December 31, 2009.

L.    L. Redman shall file a motion seeking the entry of the L. Redman Approval Order on or before December 4, 2009, which motion shall be set for hearing on or before January 22, 2010.

M.    Within five (5) business days after the Effective Date, Poulin will submit to the Nevada Bankruptcy Court that certain Stipulation And Order To Dismiss Adversary Proceeding in the form attached hereto as Exhibit "B," thereby resulting in the dismissal of the Adversary Proceeding.

N.    Within five (5) business days of the Effective Date, Poulin will submit to the Nevada Bankruptcy Court that certain Notice Of Withdrawal Of Proofs Of Claim in the form attached hereto as Exhibit "C," thereby further effectuating the withdrawal of the Proofs of Claim in the USAIP Bankruptcy Case with prejudice.

See Settlement Agreement, attached as Exhibit "A" to the Poulin Declaration.

## II.
## LEGAL ARGUMENT

Compromise and settlement agreements have long been an inherent component of the bankruptcy process. See Protective Comm. for Index Stockholders of TMT Trailer Ferry v. Anderson, 390 U.S. 414, 424 (1958) (citing Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)). The approval of compromises or settlements in bankruptcy proceedings is generally governed by Rule 9019(a), which provides the following:

(a) Compromise. On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

Pursuant to Rule 9019(a), compromises are favored in bankruptcy; therefore, the decision of the bankruptcy judge to approve or disapprove the compromise of the parties rests in his or her sound discretion. See In re Stein, 236 B.R. 34, 37 (Bankr. D. Or. 1999). The law favors compromise "as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise." In re A&C Properties, 784 F.2d 1377, 1381

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/793087.doc

15

1    (9th Cir. 1986).    Public policy favors pretrial compromises because litigation "can occupy a

2    court's docket for years on end, depleting resources of the parties and the taxpayers while

3    rendering meaningful relief elusive." In re Grau, 267 B.R. 896, 899 (Bankr. S.D.Fla 2001),

4    quoting Matter of Munford, Inc., 97 F.3d 449, 455 (11th Cir. 1996).

5        The United States Supreme Court has expressed that a bankruptcy settlement must be fair

6    and equitable. See Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v.

7    Anderson, 390 U.S. 414 (1968).    The Ninth Circuit Court of Appeals has enunciated that "in

8    order to determine whether a proposed settlement is fair and equitable, the bankruptcy court must

9    consider four factors: (a) the probability of success in the litigation; (b) the difficulties, if any, to

10    be encountered in the matter of collection; (c) the complexity of the litigation involved, and the

11    expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the

12    creditors and a proper deference to their reasonable views in the premises." See In re Stein, 236

13    B.R. at 37; see also In re A&C Properties, 784 F.2d at 1381; Schmitt v. Ulrich, 215 B.R. 417,

14    421 (B.A.P. 9th Cir. 1997).    The debtor is not necessarily required to satisfy each of these factors

15    as long as the factors as a whole favor approving the settlement.    See In re Pacific Gas and

16    Electric Co., 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004); In re WCI Cable, Inc., 282 B.R. 457,

17    473-74 (Bankr. D. Or. 2002).

18        However, the settlement does *not* have to be the best the debtor could have possibly

19    obtained; rather, the settlement must only fall "within the reasonable range of litigation

20    possibilities." See In re Adelphia Comm. Corp., 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005)

21    (citing In re Penn Cent. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979) ("Indeed, a court may

22    approve a settlement even if it believes that the Trustee ultimately would be successful." Id.).

23        There is a range of reasonableness with respect to a settlement—a range which

24    recognizes the uncertainties of law and fact in any particular case and the concomitant risks and

25    costs necessarily inherent in taking any litigation to completion—and the judge will not be

26    reversed if the appellate court concludes that the settlement lies with that range. See id. (citing

27    Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972)).    The bankruptcy court "need not conduct

28    an independent investigation into the reasonableness of the settlement but must only 'canvass the

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/793087.doc

16

1    issues and see whether the settlement falls below the lowest point in the range of

2    reasonableness.'" See id. (citing In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983)); see

3    also Ars Brook, LLC v. Jalbert (In re Servisense.com, Inc.), 382 F.3d 68, 71-72 (1st Cir. 2004);

4    In re Energy Cooperative, Inc., 886 F.2d 921, 929 (7th Cir. 1989); New Concept Housing, Inc. v.

5    Poindexter et al. (In re New Concept Housing, Inc.), 951 F.2d 932, 938 (8th Cir. 1991).   The

6    Settlement Agreement surpasses this standard and are fair and reasonable and in the best interest

7    of Debtor's creditors and estate.  See Poulin Declaration ¶ 29.

8    **A.        The Probability Of Success In The Litigation Favors Settlement.**

9         As evident from the foregoing factual recitation, there are an extensive number of issues

10   and claims being resolved by this Settlement Agreement.   With regard to the Proofs of Claim,

11   although Trustee believes that the majority of the Proofs of Claim have no validity, particularly

12   the CLI $10,000,000.00 Promissory Note Claims the Oak Mesa $20,500,000 Promissory Note

13   Claims, which seek to obligate Debtor to repay obligations owed by CLI and Oak Mesa to USA

14   Commercial Mortgage Company (and subsequently Compass) as the servicer of certain loans

15   issued to CLI and Oak Mesa, there is no certainty at this early stage that claim objections filed by

16   Trustee would be sustained.  See Poulin Declaration ¶ 20.  For instance, through Claim No. 99,

17   Ashby Development and Butterfield have asserted a secured claim for in excess of $19 million

18   relating to Debtor's alleged breaches under Ashby USA's operating agreement, such as the

19   commencement of USA Commercial Mortgage Company's bankruptcy case, which breaches

20   they contend ultimately negatively impacted the Roripaugh Ranch Project.  See id.  Although

21   Trustee adamantly disputes such contentions, there is no certainty that this Court could not find

22   Debtor liable for some or all of the asserted damages.  See id.  The Proofs of Claim each

23   additionally assert claims for misrepresentation, fraud, non-disclosure, concealment, bad faith,

24   fraudulent inducement, unjust enrichment, and/or violations of law by Debtor; there is no

25   guarantee that Trustee would be able to defeat these claims, the litigation of which would

26   necessarily be very costly, both in terms of time and expense.  See id.

27        With regard to Claim No. 90, which claim asserts a *secured* claim in the amount of

28   $6,759,605.57 for money loaned, together with accruing interest, after extensive analysis and

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/793087.doc

17

1   negotiations with L. Redman and the remaining Fiesta Parties, Trustee believes that although

2   Trustee has defenses to Claim No. 90, if fully litigated, L. Redman may be able to establish the

3   validity of an unsecured claim. See id. ¶ 21. As such, in light of the minimal anticipated

4   distribution, L. Redman and Trustee have agreed to resolve Claim No. 90 by providing L.

5   Redman with the Allowed L. Redman Claim - an allowed *unsecured* claim in the sum of

6   $3,000,000. See id. Thus, the Settlement Agreement provides for the withdrawal of the Proofs

7   of Claim which assert *secured* claims in excess of $200 million, with the sole exception of the

8   Allowed L. Redman Claim.

9        In exchange for the withdrawal of the Proofs of Claim and the entry of the Stipulated

10  Judgment against Ashby Development, the Settlement Agreement also provides for the dismissal

11  of the Adversary Proceeding and the release of the Guarantee. After filing the Complaint,

12  Trustee engaged in informal discovery with the Ashby Defendants who provided numerous

13  factual and legal defenses to the claims asserted in the Complaint. See id. ¶ 22. Provided such

14  asserted defenses and the evidence provided in support thereof, there is no certainty that Trustee

15  would prevail in the Adversary Proceeding. See id. Even were Trustee to prevail in the

16  Adversary Proceeding and recover all or a portion of the sum of $1,392,250.67, beyond the

17  collection concerns discussed below, such recovery may effectively be diminished by the

18  ultimate distribution on account of any allowed proofs of claim.

19       Although Trustee is confident in the validity of the Guarantee, there are disputes as to the

20  calculation of the accrued interest on the Note, as well as concerns that Trustee may ultimately

21  be required to incur the expense of seeking to collect from the collateral prior to pursuing the

22  guarantors. See id. ¶ 23. Provided that there is no certainly that Trustee would prevail in

23  defeating all of the Proofs of Claim, in litigating the claims in the Adversary Proceeding, and in

24  pursing the Guarantee, the first A&C Properties' factor - the probability of success- certainly

25  favors settlement, particularly in light of the time and expense that would be incurred and the

26  collection issues discussed below.

27

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/793087.doc

18

**B.**   **The Complexity Of The Litigation Involved, And The Expense, Inconvenience, And Delay Necessarily Attending It, As Well As The Collection Issues All Favor Settlement.**

As evident from the foregoing discussion, the litigation of the claims asserted in the Proofs of Claim, the Adversary Proceeding, and the Guarantee would be extensive and costly. See id. ¶ 24. As these matters are all in their initial stages, with formal discovery having not yet been commenced, it is improbable that absent a settlement, a resolution could be reached in less than a year and a half, particularly if a jury demand is made. See id. As the Proofs of Claim assert secured claims, Trustee could then be precluded from filing a plan of reorganization and tendering any distribution until the resolution of such claims. Such delay and consumption of judicial resources strongly favors approval of the Settlement Agreement.

Beyond the delay, it would be extremely costly to try the numerous claims set forth in the Proofs of Claim and the Adversary Proceeding given the number of parties involved, the complexity of the facts underlying the claims, and the fact that many, if not all, of the claims involve issues that may not be adjudicated on summary judgment. See id. ¶ 25. Further, as some of the transfers set forth in the Complaint extend from 2004 to 2007, there is no presumption of insolvency. Thus, the Parties would bear the additional expense of retaining experts, on among other issues, insolvency for the period of 2004 through 2007. See id. Such delay and expense favor a prompt global settlement as is set forth in the Settlement Agreement.

Beyond the delay and costs favoring settlement, the Ashby Defendants and the guarantors contend that they would be unable to satisfy any substantial judgment entered against them. See id. ¶ 26. Consistent therewith, Trustee is cognizant that R. Ashby and certain of the other Ashby Defendants are already subject to extensive judgments against them and that there are numerous lawsuits pending seeking multi-million dollar judgments against R. Ashby, among others. Further, Trustee has also been advised that certain of the Ashby Defendants have engaged bankruptcy counsel and are contemplating seeking bankruptcy relief in the near future. See id. Provided the delay and expense of litigating all of the issues resolved by the Settlement Agreement and the likelihood that Trustee could not collect on any judgment obtained, the second and third A&C Properties' factors weigh heavily in favor of settlement.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/793087.doc

19

## C.    <u>The Paramount Interest Of The Creditors Favors Settlement.</u>

The fourth A&C Properties' factor that the Court must consider in deciding whether to approve a proposed compromise - the paramount interest of creditors - generally "reflects not only the desire of creditors to obtain the maximum possible recovery but also their competing desire that that recovery occur in the least amount of time." <u>In re Marples</u>, 266 B.R. 202, 207 (Bankr. D. Idaho 2001). Trustee contends that the probability of success is outweighed by the costs and inherent delays to be incurred in litigating the disputes resolved by the Settlement Agreement, as well as the difficulties of collection. <u>See id.</u> ¶ 27.

Further, the Settlement Agreement has been structured such that Trustee may continue her efforts to sell the Amended Note and Amended Deed of Trust, as well as Debtor's membership interest in Ashby USA, thereby liquidating this asset for distribution to Debtor's creditors. The interested purchasers have all advised that the addition of the Guarantee to the sale would not increase the contemplated purchase price. As such, the resolution of the Guarantee is irrelevant to Trustee's efforts to obtain the greatest possible value for Debtor's interest in the Amended Note. <u>See id.</u> ¶ 28.

After a thorough evaluation of all available information, Trustee has determined that approval of the Settlement Agreement is fair and equitable and in the best interest of Debtor's creditors. <u>See</u> Poulin Declaration ¶ 29.

WHEREFORE, Trustee respectfully requests that this Court grant this Motion, thereby approving the Settlement Agreement and for such other and further relief as the Court deems just and proper.

DATED this 19th day of November, 2009.

GORDON SILVER

By: _____
GERALD M. GORDON, ESQ.
GREGORY E. GARMAN, ESQ.
TALITHA B. GRAY, ESQ.
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Attorneys for Lisa Poulin, Trustee for
USA Investment Partners, LLC

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-039/793087.doc

20

| In re:<br>Redman, Lawrence Eugene and Redman, Joy Ann,<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER: 2:08-21925-ER |
| --- | --- |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 11th Floor, Los Angeles, CA  90067**

A true and correct copy of the foregoing document described ***DEBTORS' NOTICE OF MOTION AND MOTION SEEKING APPROVAL OF THE SETTLEMENT AGREEMENT WITH CHAPTER 11 TRUSTEE OF USA INVESTMENT PARTNERS, LLC; DECLARATION OF LAWRENCE E. REDMAN IN SUPPORT THEREOF*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 4, 2010** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

<div align="right">☒ Service information continued on attached page</div>

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **January 4, 2010** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

<div align="right">☒ Service information continued on attached page</div>

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 4, 2010** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

Hand Delivery
Honorable Ernest M. Robles
United States Bankruptcy Court
255 E. Temple Street, Suite 1560
Los Angeles, CA 90012

<div align="right">☒ Service information continued on attached page</div>

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 4, 2010 | Myra Kulick | /s/ Myra Kulick |
| --- | --- | --- |
| Date | Type Name | Signature |

| In re:<br>Redman, Lawrence Eugene and Redman, Joy Ann,<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER: 2:08-21925-ER |
| --- | --- |

## I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

Marc Andrews on behalf of Creditor Wells Fargo Bank, National Association
sandra.g.mcmasters@wellsfargo.com

Stanley E Goldich on behalf of Debtor Lawrence Redman
sgoldich@pszjlaw.com

David B Golubchik on behalf of Petitioning Creditor Compass FP Corp
dbg@lnbrb.com

Lawrence J Hilton on behalf of Creditor IMH Secured Loan Fund, LLC
lhilton@hewittoneil.com, pgarnica@hewittoneil.com

Sheri Kanesaka on behalf of Creditor FB Holdings, LLC
skanesaka@mrllp.com, jjacobs@mrllp.com;fbaig@mrllp.com;scasselberry@mrllp.com;fbaig@mrllp.com

Ron Maroko on behalf of U.S. Trustee United States Trustee (LA)
ron.maroko@usdoj.gov

Leonard M Shulman on behalf of Interested Party Courtesy NEF
lshulman@shbllp.com

Randye B. Soref on behalf of Creditor PFF BANK & TRUST
rsoref@buchalter.com, IFS_filing@buchalter.com

Derrick Talerico on behalf of Creditor Diversified Pacific Opportunity Fund I, LLC
dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

David J Williams on behalf of Creditor First Bank
dwilliams@mrllp.com

Katherine M Windler on behalf of Creditor Asset Resolution, LLC
katherine.windler@bryancave.com

## II.  SERVED BY U.S. MAIL

*Please see attached service list*

In re Redman
Master Mailing List (not included in 2002)

Ashby Financial
3751 Nimble Circle
Huntington Beach, CA 92649

Asset Resolution, LLC
333 7th Ave, 3rd Floor
New York, NY 10001

Bernice James, Tax Collector
105 E Anapamu St
Room 109
Santa Barbara, CA 93102

Comerica Bank
PO Box 10229
Van Nuys, CA 91410-0229

Creative Communities
598 N. Pageant Dr., #E
Orange, CA 92869

Deanna W. Ashby
3751 Nimble Circle
Huntington Beach, CA 92649

Employment Development Department
Bankruptcy Group
PO Box 826880
Sacramento, CA 94280

FB Holdings, LLC
c/o First Bank
16900 Goldenwest St
Attn: Liz Van De Vanter, Senior VP
Huntington Beach, CA 92647

Fiesta Development
5642 Research Drive
Huntington Beach, CA 92649

Fiesta Terra Vista II, LLC
5642 Research Drive
Huntington Beach, CA 92649

Franchise Tax Board
Attention Bankruptcy
PO Box 2952
Sacramento, CA 95812

IndyMac Bank
1 Banting
Irvine, CA 92618

IndyMacBank
PO Box 78826
Phoenix, AZ 85062-8826

Internal Revenue Service
PO Box 21126
Philadelphia, PA 19114

John R. Terwilliger, VP Workout Dir
IndyMac Mortgage Services
PO Box 211028
Chula Vista, CA 91921

Kubota Credit
PO Box 0559
Carol Stream, IL 60132-0559

L&J Redman Living Trust
269 Argonne Avenue
Long Beach, CA 90803

Lawrence Hilton, Esq.
Attys for IMH
O'Neil LLP
19900 Macarthur Blvd., Suite 1050
Irvine, CA 92612

Los Angeles County Tax Collector
225 North Hill Street
Los Angeles, CA 90012

R&D Land Investors
3751 Nimble Circle
Huntington Beach, CA 92649

R&R Land Investors
470 E. Harrison
Corona, CA 92879

R. and D. Ashby Living Trust
3751 Nimble Circle
Huntington Beach, CA 92649

Richard K. Ashby
3751 Nimble Circle
Huntington Beach, CA 92649

Wells Fargo Bank
PO Box 54780
Los Angeles, CA 90054-0780

**In re Redman**
**Case No. 08-21925-ER**
**2002 List**

United States Trustee
Bruce Schildkraut
Office of the U.S. Trustee
725 S Figueroa St Ste 2600
Los Angeles, CA 90017

Attorneys for Original Petitioning Creditors
Beaumont Partners and Marcie Signorelli
David B. Golubchik, Esq.
Leven, Neale, Bender, Rankin & Brill
10250 Constellation Blvd., Ste.1700
Los Angeles, CA 90067

Attorneys for Original Petitioning Creditor, Compass FP
Corp,
Steven H. Winick/Ori Katz
Sheppard, Mullin, et al.
Four Embarcadero Center, 17th Flr.
San Francisco, CA 94111

Attorneys for Original Petitioning Creditor, Compass FP
Corp,
Figuerola Peruvians, LLC v. NAPHA
c/o Neville Asherson, Esq.
Asherson Klein and Darbinian
9150 Wilshire Blvd., Ste. 210
Beverly Hills, CA 90212

Attorneys for Richard Ashby
Helen R. Frazer, Esq.
Atkinson, Andelson, et al.
12800 Center Court Dr., Suite 300
Cerritos, CA 90703

Attorneys for Richard Ashby
John J. Kendrick, Jr,
Kendrick, Jackson & Kearl
2603 Main St Ste 700
Irvine, CA 92614

Investors Mortgage Holdings
4900 N. Scottsdale Road, Suite 5000
Scottsdale, AZ 85251

**20 Largest Unsecured Creditors**

IMH Special Asset NT 166, LLC
c/o IMH Secured Loan Fund, LLC
Attn:  Shane C. Albers
P.O. Box 910
Scottsdale, AZ 85252-0910

Attorney for Investors Mortgage Holdings
Alisa Lacey, Esq.
Stinson Morrison Hecker LLP
1850 N Central Ave, Suite 2100
Phoenix, AZ 85004

Attorneys for IMH
John McVey, Esq.
McVey Law Firm, PLLC
P.O. Box 5360
Scottsdale, AZ 85261

Bank Midwest N.A.
John Baxter, Sr. V.P.
1111 Main St., Suite 1600
Kansas City, MO 64105

IndyMac Venture, LLC
c/o IndyMac Mortgage Services
Attn: Homebuilder Division
888 East Walnut St
Pasadena, CA 91101

Attorney for IndyMac Venture, LLC
Jeffrey D. Hermann, Esq.
Orrick Herrington & Sutcliffe
777 S Figueroa St., Ste 3200
Los Angeles, CA 90017

US Bank National Association
9467 Milliken Ave
Rancho Cucamonga, CA 91730

Attorney for US Bank National Association
Randye Soref
Buchalter Nemer
1000 Wilshire Blvd, Suite 1500
Los Angeles, CA 90017

Diversified Pacific Opportunity Fund
Attn: Matthew A Jordan
10621 Civic Center Dr
Rancho Cucamonga, CA 91701

Attorney for Diversified Pacific Opportunity Fund
Loeb & Loeb LLP
Lance N. Jurich, Esq.
10100 Santa Monica Blvd
Los Angeles, CA

Mark J. Saladino, Tax Collector
Los Angeles County Tax Collector
225 N. Hill St., Rm. 122
Los Angeles, CA 90012

Attorneys for Asset Resolution
Tracy Klestadt, Esq.
Klestadt & Winters LLP
292 Madison Ave., 17th Flr
New York, NY 10017

FB Holdings, LLC
Attn: Steven Casselberry
Michelm,an & Robinson, LLP
4 Hutton Center, Ste 300
Santa Ana, CA 92707

Beaumont Partners, LP
c/o Integrated Financial Associates, Inc.
Bill Dyer& Tom Lea
7785 W. Sahara Ave., Suite 100
Las Vegas, NV 89117

Gray1 CPB, LLC
Attn: William Hamlin
550 West C St, Ste 1470
San Diego, CA 92101

Attorney for Gray1 CPB, LLC
Jeffrey M. Shohet, Esq
DLA Piper US LLP
401 B St., Ste. 1700
San Diego, CA 92101

Insco Dico Bonding
17780 Fitch
Irvine, CA 92614

Ten-Ninety, Ltd.
598 Pagent Dr., #E
Orange, CA 92869

William W. Ashby
22442 Via Pajaro
Coto de Caza, CA 92679

Attorney for William W. Ashby
Lawrence H. Miller, Esq.
Cooksey, Toolen, Gage, Duffy & Woog
535 Anton Blvd., 10th Floor
Costa Mesa, CA 92626

Central Pacific Bank
16870 West Bernardo Drive
Suite 170
San Diego, CA 92127

Attorney for Central Pacific Bank
Michael Petersen, Esq.
Shulman Hodges & Bastian LLP
26632 Towne Centre Dr., Ste. 300
Foothill Ranch, CA 92610

**Requests for Special Notice**

Attorneys for GE Money Bank
Ramesh Singh, Esq.
Recovery Management Systems Corp.
25 SE 2nd Ave., Ste. 1120
Miami, FL 33131

Attorneys for Wells Fargo National Association
Marc Andrews
Office of the General Counsel
Wells Fargo & Company
21680 Gateway Center Drive, Suite 280
Diamond Bar, California 91765-2435

Attorneys for Asset Resolution LLC
Bryan Cave
Attn: Katherine M. Windler, Esq.
120 Broadway, Suite 300
Santa Monica, California  90401-2386